IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION

| | |
|---|---|
| S.J. as Parent, Conservator, and Next Friend of N.J., | |
| Plaintiff, | |
| v. | 2:24-CV-168-Z-BR |
| PERRYTON INDEPENDENT SCHOOL DISTRICT, et al., | |
| Defendants. | |

## MEMORANDUM OPINION AND ORDER

Before the Court is Defendant Perryton Independent School District's ("PISD") Motion to Dismiss Plaintiff's Complaint ("Motion") (ECF No. 10), filed September 9, 2024. Plaintiff responded on September 30, 2024. ECF No. 21. Defendant replied on October 14, 2024. ECF No. 23. Having reviewed the briefing and relevant law, the Court **DENIES** the Motion.

### BACKGROUND

PISD hired Cole Underwood as an assistant football coach for the 2022–2023 school year and promoted him to Athletic Director for the 2023–2024 school year. ECF No. 21 at 6. During his time at PISD, Mr. Underwood engaged in inappropriate relationships and interactions with minor female students. *Id.* at 6–7; ECF No. 1 at 10–11. Mr. Underwood eventually focused efforts on 15-year-old N.J as early as the fall semester of 2023. ECF No. 21 at 7; ECF No. 1 at 10. Mr. Underwood hosted N.J. in his school office to discuss non-school topics such as N.J.'s personal issues with her parents and Mr. Underwood's deteriorating relationship with his wife. ECF No. 1 at 10, 15. Later that semester, Mr. Underwood continued to escalate his relationship with N.J. through contacting N.J. on her phone after school hours. *Id.* at 11. These contacts included phone calls lasting over six hours, Snapchat

1

communications, other social media contact, and text messaging. *Id.* Mr. Underwood also freely used a school-required communications platform to cultivate his relationship with N.J. *Id.*

Through the communications, Mr. Underwood told N.J. that he loved her, called her "wifey," and eventually began sexual encounters with her at school. *Id.* These sexual encounters began in February 2024 and ended near Mr. Underwood's arrest in April 2024. *Id.* at 12. Mr. Underwood would "cuddle" N.J. while disrobed among other "sexual acts." *Id.* at 12, 17. In Mr. Underwood's criminal proceeding, he admits to having sex with N.J. over ten times. No. 2:24-CR-045, ECF No. 36 at 4; *see Cinel v. Connick*, 15 F.3d 1338, 1343 n.6 (5th Cir. 1994) ("In deciding a 12(b)(6) motion to dismiss, a court may permissibly refer to matters of public record."). Numerous teachers, parents, coaches, students, and community members noticed, discussed, and reported Mr. Underwood's behavior to little avail. ECF No. 1 at 13–19; ECF No. 21 at 17–18, 21. On April 25, 2024, local law enforcement arrested Mr. Underwood and charged him with sexual assault of a minor child. ECF No. 1 at 19. And on June 4, 2024, federal law enforcement arrested Mr. Underwood. *Id.* at 20; No. 2:24-CR-045, ECF No. 36 at 6.

Plaintiff filed suit on August 9, 2024. ECF No. 1. Plaintiff asserts causes of action under 42 U.S.C. Section 1983, Title IX, 18 U.S.C. Section 2251(a), and state tort claims. *Id.* at 21–29. Plaintiff's Section 1983 claim asserts PISD violated N.J.'s constitutional rights to due process and equal protection under the Fourteenth Amendment. *Id.* at 21. Plaintiff's Title IX claim asserts discrimination on the basis of sex. Defendant PISD filed this Motion for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6).

### LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) permits courts to dismiss suits if the plaintiff fails to state a claim upon which relief may be granted. To survive a Rule 12(b)(6) motion to dismiss,

"a complaint must contain sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim for relief is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference" that the defendant is liable. *Iqbal*, 556 U.S. at 678. While a complaint "does not need detailed factual allegations," the facts alleged "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. The suit need not probably succeed, but it must have "more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678.

The Court uses its "judicial experience and common sense" to evaluate whether a complaint holds a plausible claim of relief. *Id.* at 679. At this stage, the Court construes well-pled facts in the complaint "as true and 'view[s] them in the light most favorable to the plaintiff.'" *Vardeman v. City of Houston*, 55 F.4th 1045, 1050 (5th Cir. 2022) (quoting *Walker v. Beaumont Indep. Sch. Dist.*, 938 F.3d 724, 735 (5th Cir. 2019) (alteration in original)). But the Court need not accept a plaintiff's conclusory allegations and legal conclusions as true. *Iqbal*, 556 U.S. at 679. Motions to dismiss are "viewed with disfavor" and "rarely granted" in the Fifth Circuit. *Harrington v. State Farm Fire & Cas. Co.*, 563 F.3d 141, 147 (5th Cir. 2009).

ANALYSIS

**I. Section 1983**

The Court finds that Plaintiff has satisfied the burden at this stage to allege a Section 1983 claim. Section 1983 permits a plaintiff to bring an action when his constitutional or federal statutory rights are violated if the alleged violator is acting "under color of any statute, ordinance, regulation, custom, or usage" of a state. 42 U.S.C. § 1983. To avoid dismissal, a plaintiff must plead specific facts and claim a cognizable constitutional violation. *Mills v. Crim. Dist. Ct. No. 3*, 837 F.2d 677, 678 (5th Cir. 1988).

A municipality may be a "person" under Section 1983 and thus liable. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 (1978).

School districts are municipal entities under Section 1983. *Moore v. Willis Indep. Sch. Dist.*, 233 F.3d 871, 874 (5th Cir. 2000) ("A local government entity, such as a school district, may be held liable under [Section] 1983 for constitutional violations committed pursuant to a governmental policy or custom."). But it may not be held liable simply because one of its employees is a "tortfeasor." *Monell*, 436 U.S. at 691. The school district itself must be the wrongdoer. Thus, to hold a school district liable under *Monell*, a plaintiff "must plead facts that plausibly establish that '(1) an official policy (2) promulgated by the municipal policymaker (3) was the moving force behind the violation of a constitutional right.'" *St. Maron Props., L.L.C. v. City of Houston*, 78 F.4th 754, 760 (5th Cir. 2023) (quoting *Peña v. City of Rio Grande City*, 879 F.3d 613, 621 (5th Cir. 2018)).

### A. Constitutional Violation

As a threshold matter under Section 1983, a plaintiff must allege "two elements: first, that they were deprived of a right or interest secured by the Constitution and laws of the United States, and second, that the deprivation occurred under color of state law." *Doe v. Rains Cnty. Indep. Sch. Dist.*, 66 F.3d 1402, 1406 (5th Cir. 1995).

Plaintiff pleads that PISD violated N.J.'s right to bodily integrity under the Due Process Clause of the Fourteenth Amendment and her equal protection rights under the same amendment. ECF No. 21 at 13–15. Plaintiff argues that Mr. Underwood's repeated sexual assault of N.J. as a school official violated N.J.'s right to bodily integrity. PISD responds that Plaintiff failed to allege sufficient facts to lay out a violation of either clause because they do not tie those violations to school district action. ECF No. 11 at 11–13.

But whether N.J. suffered a violation of her constitutional rights and whether that violation is attributable to the school district are separate questions. The Fifth Circuit has unequivocally held that children at school have an interest in their bodily integrity and that a school employee's sexual abuse of that child violates that right. *See Doe v. Taylor Indep. Sch. Dist.*, 15 F.3d 443, 451–52 (5th Cir. 1994). *Taylor* held that a child suffers deprivation "of a liberty interest recognized under the substantive due process component of the Fourteenth Amendment" any time "a state actor sexually abuses a schoolchild." *Id.* at 451 ("It is incontrovertible that bodily integrity is necessarily violated when a state actor sexually abuses a schoolchild . . . ."). PISD does not dispute that Mr. Underwood grievously abused N.J. Nor does it dispute that such conduct occurred on school property, sometimes during school hours, and because of Mr. Underwood's position at PISD. Thus, Plaintiff has alleged facts showing Mr. Underwood was acting under color of state law. *Id.* at 452 n.4 ("[I]f a 'real nexus' exists between the activity out of which the violation occurs and the teacher's duties and obligations as a teacher, then the teacher's conduct is taken under color of state law.").

Plaintiff also claims deprivations of the Equal Protection Clause of the Fourteenth Amendment. But Plaintiff, like the plaintiff in *Taylor*, does not allege that he could recover greater damages for the equal protection claim than he could for the due process claim. *Id.* at 458. Nor does Plaintiff explain how the Equal Protection claim would substantively change the *Monell* analysis for the school district's liability. Because Plaintiff has sufficiently alleged facts making out a due process violation, the Court need not address whether Plaintiff did the same for the equal protection claim. For Section 19983, it is enough to allege a deprivation of a constitutional right. *See A.W. v. Humble Indep. Sch. Dist.*, 25 F. Supp. 3d 973, 998–99 (S.D. Tex. 2014), *aff'd sub nom. King-White v. Humble Indep. Sch. Dist.*, 803 F.3d 754 (5th Cir. 2015); *Doe v. Beaumont I.S.D.*, 8 F. Supp. 2d 596, 613 (E.D. Tex. 1998). Plaintiff has sufficiently alleged a deprivation of a constitutional right. The remaining question is whether

Plaintiff has sufficiently alleged facts to hold PISD liable for Mr. Underwood's deprivation of N.J.'s rights. To do so, Plaintiff must allege facts that "the district's final policymaker acted with deliberate indifference in maintaining an unconstitutional policy that caused the plaintiff's injury." *Doe v. Edgewood Indep. Sch. Dist.*, 964 F.3d 351, 364–65 (5th Cir. 2020).

### B. Official Policy or Custom

The first element of *Monell* liability is that the Plaintiff must allege facts sufficient to plausibly show the constitutional deprivation arose from an official policy or custom of the school district. An official policy can be shown by (1) an explicit policy statement, ordinance, regulation, or decision officially adopted or promulgated; or (2) a custom that is the "persistent, widespread practice" of the school district and is "so common and well settled" that it "fairly represents" school district policy. *Pineda v. City of Houston*, 291 F.3d 325, 328 (5th Cir. 2002) (footnote omitted); *see also St. Maron Props.*, 78 F.4th at 760. To be a custom, harms must come from more than just random acts or isolated incidents. *See Fraire v. City of Arlington*, 957 F.2d 1268, 1278 (5th Cir. 1992). Instead, a plaintiff must allege a pattern of behavior with "prior incidents." *McConney v. City of Houston*, 863 F.2d 1180, 1184 (5th Cir. 1989). Plaintiff must allege "factual allegations sufficient to allow a reasonable inference that there was a pattern of misconduct involving similar acts." *A.W. v. Humble Indep. Sch. Dist.*, 25 F. Supp. 3d 973, 1001 (S.D. Tex. 2014) (citing *Zarnow v. City of Wichita Falls*, 614 F.3d 161, 169 (5th Cir. 2010)). Such pattern of behavior "requires similarity and specificity" to the harm a plaintiff alleges. *Peterson v. City of Fort Worth*, 588 F.3d 838, 851 (5th Cir. 2009).

On their own, if Mr. Underwood's abuse were the only instance of sexual abuse at PISD, Plaintiff's allegations would be insufficient. One teacher's sexual abuse against one student is alone not enough to say there was a custom or policy at the school district that permitted the abuse of students. *See McConney v. City of Houston*, 863 F.2d 1180, 1184 (5th Cir. 1989) (a pattern requires "sufficiently

numerous prior incidents"). But Plaintiff notes Mr. Underwood's abuse is not the only instance of alleged abuse at PISD. Instead, PISD "has a recent history of sexual harassment and sexual abuse claims." ECF No. 1 at 9. Appallingly, within "the last three . . . years, at least three . . . separate claims have been made concerning sexual harassment or sexual abuse of students at [PISD] by employees of [PISD]." *Id.* While Mr. Underwood's abuse of N.J. proceeded, others brought complaints against PISD for sexual assault, child pornography, and Title IX violations. *Id.* PISD settled a sexual abuse case in the same month Mr. Underwood's abuse of N.J. reached its apex. *Id.* In those other instances, Plaintiff alleges that PISD's failures to implement its own policies were at fault.

Plaintiff declares a litany of policies and customs were moving forces behind N.J.'s abuse. *See Id.* at 23. These can be loosely grouped into a custom of failing to enforce its own policies and a custom of failing to adequately train PISD's employees that amount to a deliberate indifference to N.J.'s constitutional rights.

First, Plaintiff alleges PISD failed to train its employees on its policies. PISD has official policies prohibiting the sexual harassment of students and flatly barring any relationships between teachers and students. *Id.* at 5–7. Further, PISD has a policy prohibiting direct electronic or telephonic communication with students. *Id.* at 7. Plaintiff alleges that PISD had a custom of failing to enforce or train on these policies. Plaintiff supports these allegations by noting that several teachers and coaches were unaware of PISD's policies. Two coaches were "unaware" of "policies and procedures for how teacher[s] and coaches are expected to treat and interact with students." *Id.* at 8. One teacher claimed PISD had no "policies and procedures for how teacher[s] and coaches are expected to treat and interact with students." *Id.* The same teacher merely said she just signed a form saying the policies existed elsewhere. *Id.* And a former "high-level" administrator at PISD knew policies or procedures existed but testified "it's one of those things you don't even read. You just sign it because you have to be there."

*Id.* And PISD teachers and staff "routinely contact students directly using common telephonic applications" in violation of PISD policy. *Id.*

Second, Plaintiff further alleges that PISD had a custom of failing to enforce or investigate reported policy violations. Despite having sexual abuse and direct teacher-to-student communication policies in place, PISD routinely ignored reported violations of those policies. Plaintiff recounts a long list of complaints lodged with PISD about Mr. Underwood's relationship with N.J. and other female students. Members of the community, parents of other students, and a local church minister all reported to PISD administration that "Underwood appeared to be having an inappropriate relationship with" N.J. *Id.* at 15. Once teachers, coaches, students, and community members had warned PISD about Mr. Underwood's behavior, PISD issued a directive ("Directive") to Mr. Underwood to not be alone with N.J. *Id.* at 16. However, as Plaintiff notes, PISD failed to implement its policies against Mr. Underwood despite his repeated violations. After PISD issued its Directive to Mr. Underwood, an administrator at a different school district filed a formal complaint with PISD's high school and middle school principal against Mr. Underwood. *Id.* at 17. This administrator had received several reports, and personally witnessed, inappropriate behavior between Mr. Underwood and N.J. *Id.* at 18. The administrator relayed all this information to PISD, including Mr. Underwood's direct violation of PISD's Directive to not be alone with N.J. *Id.* PISD again allegedly failed to act on the report and implement its own policies prohibiting inappropriate relationships, direct electronic or telephonic communication, or enforce its own Directive prohibiting Mr. Underwood from being alone with N.J. *Id.* (noting PISD only responded that they already knew about Mr. Underwood's activities).

These factual allegations are sufficient to allege a custom of failing to train on or implement policies preventing sexual abuse when paired with allegations that other instances of sexual abuse and harassment have occurred in the last three years allegedly due to similar failures. Courts discard claims

8

when only one instance of sexual abuse occurred. *See J.T. v. Uplift Educ.*, 679 F. Supp. 3d 540 (N.D. Tex. 2023); *Humble*, 25 F. Supp. 3d at 1001–02. But when a plaintiff can allege facts "capable of proving that there were other incidents of teacher-student sexual misconduct" then he may survive a dismissal motion. *Humble*, 25 F. Supp. 3d. at 1001; *Uplift*, 679 F. Supp. 3d at 561 (granting summary judgment to a defendant when the plaintiff did "not produce[] evidence that any other teacher . . . sexually abused his or her students").

If, at this early stage, Plaintiff produces evidence "to support the reasonable finding that tolerance of sexual abuse is the expected, accepted practice" then dismissal is not warranted. *Uplift*, 679 F. Supp. 3d at 561. Plaintiff puts forth evidence that PISD has a "well settled" custom of failing to properly train staff on PISD's policies. *Pineda*, 291 F.3d at 328. Plaintiff also puts forth evidence that PISD has a custom of failing to implement its own policies against sexual abuse. PISD levels little argument against the existence of the customs themselves. It only briefly notes that a custom must be persistent and widespread before summarily noting that Plaintiff's allegations fail that standard. ECF No. 11 at 9–11. PISD's feeble attempt to counter Plaintiff's allegations does not prevail at this stage.

### C. Policymaker and Moving Force

Plaintiff must of course allege the remaining *Monell* elements. The second element is that the custom or policy is promulgated by the policymaker. *St. Maron Props.*, 78 F.4th at 760. "A policy or custom is official only 'when it results from the decision or acquiescence of the municipal officer or body with final policymaking authority over the subject matter of the offending policy.'" *Peterson*, 588 F.3d at 847 (quoting *Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701, 737 (1989)). The policymaker may constructively know of the policy if not actually. *See Moore v. LaSalle Mgmt. Co., L.L.C.*, 41 F.4th 493, 511 (5th Cir. 2022). A policymaker constructively knows of the policy only if the "violations were so

persistent and widespread that they were the subject of prolonged public discussion." *Pineda*, 291 F.3d at 330 (quoting *Bennett v. City of Slidell*, 728 F.2d 762, 768 (5th Cir. 1984) (en banc)).

State law governs what body or official has "final policymaking authority." *Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701, 737 (1989) (internal quotations omitted). In Texas, the Board of Trustees is the relevant policymaker for a school district. TEX. EDUC. CODE ANN. § 11.151(b) ("The trustees as a body corporate have the exclusive power and duty to govern and oversee the management of the public schools of the district."). They have "exclusive policymaking authority under Texas law." *Rivera v. Houston Indep. Sch. Dist.*, 349 F.3d 244, 247 (5th Cir. 2003). PISD argues that because the Complaint does not specifically reference the Board of Trustees, Plaintiff's Section 1983 claim must be dismissed. ECF No. 11 at 9. Plaintiff counters that Mr. Underwood was a policymaker and that he sufficiently alleged that PISD was a policymaker. ECF No. 1 at 22; ECF No. 21 at 11. Plaintiff does not sufficiently allege that the Board of Trustees delegated any of its policymaking authority to Mr. Underwood. *See Rivera*, 349 F.3d at 248 ("The [Plaintiff] cite[s] no official document or edict where the Board delegated any of its policymaking authority . . . .").

But Plaintiff sufficiently alleges PISD was the policymaker even if he does not specifically state the Board of Trustees was the body ultimately responsible. Other courts have held that simply alleging the school district as the policymaker is sufficient. *See Doe v. Beaumont Indep. Sch. Dist.*, 615 F. Supp. 3d 471, 496 (E.D. Tex. 2022) ("[T]he plaintiffs have sufficiently alleged a policymaker under *Monell* — the Beaumont Independent School District."). And the Fifth Circuit itself has disavowed the need for deep specificity to name a policymaker. *See Groden v. City of Dallas*, 826 F.3d 280, 283–84 (5th Cir. 2016) ("[T]he specific identity of the policymaker is a legal question that need not be pled . . . ."). PISD is wrong that Plaintiff needed to specifically plead the Board of Trustees was the policymaker.

The final *Monell* element requires alleging the policy or custom is the moving force behind the constitutional violation. *St. Maron Props.*, 78 F.4th at 760. A plaintiff must allege "that the municipal action was taken with the requisite degree of culpability and must demonstrate a direct causal link between the municipal action and the deprivation of federal rights." *Bd. of the Cnty. Comm'rs v. Brown*, 520 U.S. 397, 404 (1997). The degree of culpability the plaintiff needs to allege is at least "deliberate indifference to the risk that a violation of a particular constitutional or statutory right will follow" the policymakers' decisions if there is no per se unconstitutional policy. *Id.* at 411, 404. Deliberate indifference requires showing "a pattern of similar violations" that come from a policy or custom "that is so clearly inadequate as to be 'obviously likely to result in a constitutional violation.'" *Burge v. St. Tammany Par.*, 336 F.3d 363, 370 (5th Cir. 2003) (quoting *Thompson v. Upshur Cnty.*, 245 F.3d 447, 459 (5th Cir. 2001)). Plaintiff argues a per se unconstitutional policy is present here. ECF No. 12. But none of PISD's policies are per se unconstitutional. Thus, Plaintiff must demonstrate that PISD acted with deliberate indifference to the likelihood that PISD's failure to train its staff and failure to implement its own policies would violate N.J.'s rights.

Plaintiff sufficiently alleges deliberate indifference on the part of PISD. An entire section of Plaintiff's Complaint is dedicated to documenting PISD's knowledge of Mr. Underwood and N.J.'s relationship. ECF No. 1 at 13–19. These facts include repeated complaints to school officials about Mr. Underwood's behavior toward N.J. and other female students. Teachers, coaches, members of the community, and parents all noticed the inappropriate behavior. And another school administrator from a different district lodged a formal complaint against Mr. Underwood with two PISD principals. These complaints included allegations that Mr. Underwood was violating school policies, including direct electronic communication with N.J., being alone with her, and engaging in an inappropriate relationship with her. But PISD took little action in response to these notifications. Instead, it permitted Mr.

Underwood to continue his duties and to meet with N.J. alone on school grounds despite specific notice that he was doing so in violation of PISD's Directive.

As explained, these allegations alone would not be sufficient to constitute deliberate indifference. But they are enough to allege deliberate indifference when paired with Plaintiff's alleged facts that PISD has had several other cases of sexual harassment or abuse due to the same failings it exhibits here. *Peterson v. City of Fort Worth*, 588 F.3d 838, 851 (5th Cir. 2009) ("The failure to train can amount to a policy if there is deliberate indifference to an obvious need for training where citizens are likely to lose their constitutional rights."). Once credible allegations of sexual abuse arose in PISD, the Board of Trustees could and should have taken strong deliberate action to train its employees on how to prevent and avoid such depravity. It could and should have taken steps to ensure that the policies it did have in place were strictly followed. But even when litigation was levied against it for its failures, the Board of Trustees took no action to prevent future degeneracy. An "obvious need for training" arose. *Peterson*, 588 F.3d at 851. And PISD's inexcusable failure to remedy the abuse of its students amounts to sufficiently alleged deliberate indifference that the same predatory abuse may happen again. Rather than ensure its policies were implemented and staff knew them, PISD hired Mr. Underwood despite his reputation for inappropriate behavior. ECF No. 1 at 4 ("While employed by [Amarillo High School], Underwood received complaints about his behavior and on at least one occasion was placed on temporary administrative leave due to the allegations of an inappropriate relationship and contact with a minor female student.").

PISD only argues in response that the *Board of Trustees* had no idea about all the sexual abuse occurring at PISD. It argues that the Complaint is "void of any allegation that the Perryton ISD Board of Trustees had any knowledge about any of Underwood's interactions with students." ECF No. 11 at 10 (emphasis in original). But the Board of Trustees certainly must have known of the previous sexual

abuse allegations at PISD. The allegations were litigated. ECF No. 1 at 9. And Plaintiff certainly alleged sufficient facts to infer that the Board of Trustees knew about Mr. Underwood's conduct as well. ECF No. 23 at 17–18. The Court finds it unreasonable that the Board of Trustees knew nothing when there were multiple complaints filed against Mr. Underwood with PISD administrators and he had a well-known, well-earned reputation among PISD staff, coaches, students, and parents as a sexual predator. The Court agrees with Plaintiff that PISD's "attempt to isolate the purported 'knowledge' held by [the] board of trustees from almost everyone else in the Texas panhandle is ludicrous." *Id.* at 17.

PISD had a history of sexual abuse stemming from its unexplained failure to train and implement its own policies. In response, the Board of Trustees did nothing and continued the status quo. Such lethargy constitutes deliberate indifference to the likelihood that future abuse would occur. *See Sneed v. Austin Indep. Sch. Dist.*, 487 F. Supp. 3d 584, 595 (W.D. Tex. 2020) (noting deliberate indifference occurs when constitutional rights are violated often enough that "it can be inferred from the pattern of violations 'that the need for further training must have been plainly obvious'") (quoting *Littell v. Houston Indep. Sch. Dist.*, 894 F.3d 616, 624 (5th Cir. 2018)). N.J.'s victimization plausibly arose from PISD's decision to enculturate and customize inaction to allegations of sexual predation. If PISD ensured its policies were implemented, N.J.'s victimization likely would not have occurred or would have been lessened — particularly in the two months following the complaints when Mr. Underwood's abuse reached its worst. ECF No. 1 at 17 (noting the majority of N.J.'s abuse occurred *after* PISD was aware of Mr. Underwood's inappropriate behavior but did little to address it).

For these reasons, Plaintiff sufficiently alleges facts that plausibly show a policy or custom was in place which PISD actually or constructively knew about — and said policy or custom was the moving force behind the abuse of N.J. At this stage, Plaintiff's Section 1983 claim may proceed. PISD's Motion is **DENIED** as to Plaintiff's Section 1983 claim.

## II. Title IX

Title IX provides that "[n]o person ... shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance." 20 U.S.C. § 1681(a). Title IX is enforceable through an implied private right of action. *See Cannon v. Univ. of Chi.*, 440 U.S. 677 (1979). Money damages can be recovered under this implied right of action. *See Franklin v. Gwinnett Cnty. Pub. Schs.*, 503 U.S. 60 (1992). But a school district itself must be responsible for the discrimination and not merely an employee. *See Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274, 290–91 (1998). Thus, a school district may be liable for a teacher's sexual abuse of a student if the district has "actual knowledge of discrimination in [the district's] programs and fails adequately to respond." *Gebser*, 524 U.S. at 290. To show that, a plaintiff must plead facts sufficient to plausibly show that "(1) a school district employee with supervisory power over the offending teacher (2) had actual notice of the abuse and (3) responded with deliberate indifference." *King v. Conroe Indep. Sch. Dist.*, 289 F. App'x 1, 4 n.3 (5th Cir. 2007). Plaintiff succeeds in pleading sufficient facts to plausibly show each element.

### A. Official with Actual Notice

The first two elements of a facial Title IX claim require showing a school district employee with supervisory power over the abuser had actual notice of the abuse. *Id.* Actual notice by a school employee "is a question of fact." *Doe ex rel. Doe v. Dallas Indep. Sch. Dist.*, 220 F.3d 380, 384 (5th Cir. 2000). The school board itself need not have actual knowledge of the abuse. *See Rosa H. v. San Elizario Indep. Sch. Dist.*, 106 F.3d 648, 660 (5th Cir. 1997) ("[T]o impose liability only where the board itself knows of a student's sexual harassment at the hands of a teacher would make the private cause of action nearly meaningless."). Rather, the "relevant question is whether

the [school] official's actual knowledge of sexual abuse is *functionally equivalent* to the school district's actual knowledge." *Id.*

Thus, a school official with "authority to take corrective action to end [the] . . . abuse of students" must have notice. *Doe v. Dallas*, 220 F.3d at 384; *Gebser*, 524 U.S. at 290 ("An 'appropriate person' . . . is, at a minimum, an official of the [district] with authority to take corrective action to end the discrimination."). The Fifth Circuit has not delineated an exhaustive list of officials who satisfy this requirement. *Doe v. Dallas*, 220 F.3d at 384 (noting no court "has decided which individuals must have known of allegations of sexual abuse in order to support a finding that the school district had actual notice of discrimination"); *Rosa H.*, 106 F.3d at 660 (holding employees "in the chain of command . . . to monitor the conduct of other employees [and] . . . remedy the wrongdoing themselves" suffice). But it has held that assistant principals can qualify. *See M.E. v. Alvin Indep. Sch. Dist.*, 840 F. App'x 773, 776 (5th Cir. 2020) ("Plaintiffs must show that someone like [the] Assistant Principal . . . had the required knowledge."). Actual notice is sufficient when the official has "either actual knowledge of the precise instance of abuse giving rise to the case at hand, or actual knowledge of [a] substantial risk that such abuse would occur." *Humble*, 25 F. Supp. 3d at 992 (citing *Rosa H.*, 106 F.3d at 652–53 (notice met when a "school district actually knew that there was a substantial risk that sexual abuse would occur")).

Plaintiff sufficiently pled that a school official with authority to take corrective action had actual notice of a substantial risk that Mr. Underwood was abusing or would abuse N.J. Plaintiff pleads PISD had notice that Mr. Underwood engaged in inappropriate sexual conduct while employed with Amarillo ISD before being hired at PISD. ECF No. 21 at 15. This, alone, would be insufficient. But Plaintiff continues and alleges that "students, parents, teachers, and coaches complained to Perryton ISD administrators about Underwood's inappropriate sexual relationship

15

with Victim." ECF No. 21 at 21 (citing ECF No. 1 at 13–16). In fact, PISD nearly admits its own actual knowledge. PISD issued a formal Directive to Mr. Underwood to not be alone with female students following the complaints lodged against him. *Id.* By issuing the Directive, PISD tacitly admitted that an official with the "authority to take corrective action" had "actual notice of [a] substantial risk" that Mr. Underwood would engage in sexual abuse. *Doe v. Dallas*, 220 F.3d at 384; *Rosa H.*, 106 F.3d at 653. An inference may be fairly drawn that PISD would not have issued the Directive without clearance from supervisory officials — and would not have issued it had there not been a substantial risk that abuse would occur without it.

But that is not all Plaintiff alleges. In March 2024, an administrator at a different school formally reported sexual misconduct between Mr. Underwood and N.J. to the PISD high school and middle school principals. ECF No. 1 at 17–18. The report included "her observations of inappropriate sexual misconduct, reported observations of pictorial evidence depicting inappropriate sexual misconduct, and reported observations of Underwood and Victim spending significant time alone in Underwood's office on school grounds and during school hours" in direct violation of PISD's Directive to Mr. Underwood. ECF No. 21 at 22. A principal has supervisory authority to take corrective action, that principal knew of the allegations by the other administrator, and those allegations raised a substantial risk that sexual abuse would occur. Taken together, Plaintiff alleges plainly sufficient facts to plausibly establish these first two elements of a Title IX claim and let the "question of fact" continue. *Doe v. Dallas*, 220 F.3d at 384 (citing *Farmer v. Brennan*, 511 U.S. 825, 842 (1994)).

### B. Deliberate Indifference

Plaintiff sufficiently pled facts that plausibly show PISD acted with deliberate indifference toward Mr. Underwood's sexual predation against N.J. A school district that had actual knowledge may

be liable if it was deliberately indifferent to the abuse. *See Ramos v. Webb Consol. Indep. Sch. Dist.*, 724 F. App'x 338, 339–40 (5th Cir. 2018). A school district can refute arguments it deliberately acted indifferently by reasonably responding to the risk of harm, even if its response fails. *Ramos*, 724 F. App'x at 340 (citing *Doe v. Dallas*, 220 F.3d at 384). To satisfy deliberate indifference, a school district's response must be "clearly unreasonable in light of the known circumstances." *Davis ex rel. LaShonda D. v. Monroe Cnty. Bd. of Educ.*, 526 U.S. 629, 648 (1999). But whether the district's response was clearly unreasonable or not depends heavily on the case's facts. *Doe v. Dallas*, 220 F.3d at 384.

As discussed, PISD administrators received several complaints of Mr. Underwood's inappropriate conduct. In response, PISD issued a Directive that Mr. Underwood not be alone with N.J. or other female students. But when the administrator at another school district reported continuing inappropriate conduct, including Mr. Underwood directly violating the Directive, PISD only said there was an "ongoing investigation." ECF No. 21 at 23. PISD still does not claim it took any action for two months following the administrator's report to the PISD principals. Instead, after the other administrator specifically reported that Mr. Underwood continued to engage in sexually inappropriate behavior and violated PISD's Directive, PISD did nothing for two months while Mr. Underwood sexually abused N.J. time and again.

That is sufficient to allege PISD's deliberate indifference. A school district does not have to be perfect in its response. *See I.F. v. Lewisville Indep. Sch. Dist.*, 915 F.3d 360, 369 (5th Cir. 2019) ("[N]egligent delays, botched investigations of complaints due to the ineptitude of investigators, or responses that most reasonable persons could have improved upon do not equate to deliberate indifference.") (quoting *I.F. v. Lewisville Indep. Sch. Dist.*, No. 4:14-CV-359, 2017 WL 11630560, at *4 (E.D. Tex. Jan. 23, 2017)); *Sanches v. Carrollton-Farmers Branch Indep. Sch. Dist.*, 647 F.3d 156,

170 (5th Cir. 2011) ("Title IX does not require flawless investigations or perfect solutions."). And after the record is developed further, PISD certainly may not have acted with deliberate indifference. Plaintiff's allegations that PISD did nothing for two months in response to complaints that Mr. Underwood was blatantly violating PISD's Directive and continuing to engage in inappropriate sexual conduct with N.J. is sufficient to allege deliberate indifference — at least at this stage, considering the deeply factual nature of the inquiry. PISD points out that deliberate indifference "is a decision not to act on a report." *King v. S. Methodist Univ.*, No. 3:14-CV-3391, 2015 WL 12723026, at *3 (N.D. Tex. Apr. 27, 2015). PISD is correct. Its decision not to act in response to a formal complaint of escalating inappropriate activity between Mr. Underwood and N.J. means Plaintiff has sufficiently pled this element of a Title IX claim. Accordingly, PSD's Motion is **DENIED** as to Plaintiff's Title IX claim.

### III. Other Claims

Finally, PISD's Motion seems to seek dismissal for "all claims asserted against" PISD. ECF No. 10 at 2. Its brief seeks the same. ECF No. 11 at 18. But PISD's brief only argues for dismissal of Plaintiff's Section 1983 claim and Title IX claim. *Id.* at 8–17. PISD makes no mention of Plaintiff's other claims. A party forfeits an issue if they raise it but then inadequately argue it. *Energium Holding LLC v. Ascension MyHealth Urgent Care*, No. 3:21-cv-2951, 2023 WL 9181590, at *2 (N.D. Tex. Dec. 22, 2023). A party inadequately briefs an argument if it does not "offer any supporting argument or citation to authority" or "identify relevant legal standards" nor any "relevant Fifth Circuit cases." *JTB Tools & Oilfield Servs., L.L.C. v. United States*, 831 F.3d 597, 601 (5th Cir. 2016) (quotation omitted); *Magee v. Life Ins. Co. of N. Am.*, 261 F. Supp. 2d 738, 748 n.10 (S.D. Tex. 2003) ("By analogy, failure to brief an argument in the district court waives that argument in that court."). PISD offers not a word of argument on Plaintiff's other claims nor legal standards or Fifth Circuit cases. Therefore, PISD's Motion is **DENIED** as to the complaint's third, fourth, and fifth causes of action. *See Moore as next*

*friend of Z.S. v. Clarksdale Mun. Sch. Dist.*, No. 4:22-cv-42, 2022 WL 17420383, at *7 (N.D. Miss. Dec. 5, 2022) (denying a motion to dismiss for claims that movant "failed to adequately brief").

CONCLUSION

Accordingly, the Court **DENIES** Defendant's Motion to Dismiss.

**SO ORDERED.**

November 27, 2024

_____
MATTHEW J. KACSMARYK
UNITED STATES DISTRICT JUDGE