**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS**

| | | |
|---|---|---|
| 1) **S.J., as parent, Conservator, and Next Friend of N.J.,** | § § § § | |
| **Plaintiff,** | § § | |
| v. | § § § | |
| 2) **PERRYTON INDEPENDENT SCHOOL DISTRICT, and** | § § § § | |
| 3) **COLE UNDERWOOD, individually and in his official capacity as Athletic Director of Perryton ISD,** | § § § § § § § | **Case No. 2:24-CV-00168-Z** |
| **Defendants.** | § § | |

**PLAINTIFF'S MOTION FOR ADVERSE INFERENCE
JURY INSTRUCTION BASED ON SPOILATION OF
CRITICAL EVIDENCE AND BRIEF IN SUPPORT**

Plaintiff, S.J., as parent, Conservator, and Next Friend of N.J. ("Plaintiff" or "Victim"), and for its *Motion for Adverse Inference Jury Instruction Based on Spoliation of Critical Evidence* ("Plaintiff's *Motion*"), alleges and states:

**STATEMENT OF RELEVANT FACTS**

1. On May 6, 2024, Plaintiff's counsel issued a *Preservation of Evidence Notice* to Perryton Independent School District ("PISD" or "Defendant"). (Ex. 1, App. at pp. 2-4).

2. On May 7, 2024, Defendant's counsel acknowledged receipt of Plaintiff's *Preservation of Evidence Notice* on behalf of PISD. (Ex. 2, App. at p. 6).

3. On May 9, 2024, PISD Superintendent, Gerg Brown ("Brown"), sent a mass email to PISD employees, including PISD Middle School Principal, Sandi Wheeler ("Wheeler"), acknowledging the *Preservation of Evidence Notice* and instructing, *inter alia*, to "Hold on to

1

anything that you have that is related to Cole and the minor student in the allegation (text messages, emails in your personal email account, notes, pictures, etc…) and don't delete it." (Ex. 3, App. at p. 8)[1].

4.    On June 11, 2024, Brown sent an identical mass email regarding the *Preservation of Evidence Notice* received. (Ex. 4, App. at p. 10).

5.    On June 24, 2024, Brown sent a follow up mass email, as a reply all to his June 11, 2024 email, instructing employees not to have any contact with any attorneys "without checking with me first." (Ex. 5, App. at p. 12).

6.    On August 9, 2024, Plaintiff filed its *Complaint*.

7.    On November 21, 2024, Plaintiff issued its *First Interrogatories, Requests for Production of Documents, and Requests for Admission to Defendant*. (Ex. 6, App. at pp. 15-38).

8.    Therein, at Request for Production No. 8, Plaintiff requested, *inter alia*, that Defendant produce "any and all communications between Underwood and PISD since September 1, 2022." ((Ex. 6, App. at p. 29).

9.    "PISD" was defined in Plaintiff's *First Interrogatories, Requests for Production of Documents, and Requests for Admission to Defendant* to include, *inter alia*, "any of its agents, employees, …" (Ex. 6, App. at p. 16).

10.    On December 4, 2024, Brown sent a mass email to PISD employees again acknowledging the *Preservation of Evidence Notice* and further acknowledging Plaintiff's *First Interrogatories, Requests for Production of Documents, and Requests for Admission to Defendant*, and instructing, *inter alia*:

---

[1] While these "mass" emails are not directly addressed to Wheeler, it has been established that these were the same mass emails sent to Wheeler by Brown (as well as other PISD employees), and thus, there is no dispute that Wheeler received same.

a. "We have received a discovery request from them and so the time has come for us to begin to collect all of the documents, photos, screenshots, text conversations, etc….That pertains to the lawsuit." (Ex. 7, App. at p. 40).

b. "Please begin to copy all the documentation that you have that applies to Cole Underwood and [NJ] into the folder." (Ex. 7, App. at p. 40).

c. "Please upload everything that you have, even if you wonder if it's relevant." (Ex. 7, App. at p. 40).

d. "Our attorneys will be going through it before it becomes a part of the lawsuit and it could be a problem for us if we find out later that evidence exists that we didn't have when we collect. So, please upload everything." (Ex. 7, App. at p. 40).

11. Thereafter, on December 20, 2024, and in response to Plaintiff's Request for Production No. 4, Defendant produced certain responsive text messages between Wheeler and Defendant, Cole Underwood ("Underwood"), identified as Bates Nos. PISD 00577 – PISD 00673. (Ex. 8, App. at pp. 42-139)[2].

12. The Wheeler and Underwood text messages span from on or about December 3, 2023 – April 24, 2024. (Ex. 8, App. at pp. 42-139).

13. A review of the Wheeler and Underwood text messages reveals several concerning facts:

---

[2] All text messages between Wheeler and Underwood were produced as the entire production is essential to understanding the amount of text messages that are missing. A review of the text messages in whole reveals significant periods are missing, text threads are cut off, and the text messages have been manipulated, all as admitted by Wheeler in her deposition.

a. That certain periods of text messages are missing from the text thread and text threads are cut off, so as to indicate they had been previously deleted, which Wheeler later admitted to. As a specific example, there are no text messages predating December 3, 2023, there are no text messages from January 2, 2024 – January 7, 2024, and there are no text messages from January 20, 2024 – February 20, 2024. Examples of missing periods of text messages between Wheeler and Underwood appear throughout the production. (Ex. 8, App. at pp. 42-139).

b. Wheeler was Underwood's confidant, regularly telling him about things she has discovered behind closed doors or in conversations Underwood was not privy too. (Ex. 8, App. at pp. 54-56, 60-61, 68, 75, 85-91).

c. Wheeler disclosed to Underwood, *inter alia*, that she and High School Principal, Tori Little ("Little"), had received a formal complaint about an inappropriate relationship between Underwood and NJ from Gruver High School Principal, Delma Haberthur, and that Little was not going to tell Brown. (Ex. 8, App. at pp. 105-109).

d. Wheeler and Underwood discuss keeping their conversations between themselves and deleting certain text messages. Further, on the eve of his arrest, Wheeler exclaims to Underwood, "I'm always going to take your side. If we don't protect each other, we don't have anything." (Ex. 8, App. at pp. 123-124).

14. On September 24, 2025, Plaintiff conducted the deposition of Wheeler, and discovered the following facts:

a. Throughout the Wheeler and Underwood text messages, there are text messages that are missing that Wheeler took it upon herself to delete based on what she apparently felt was relevant. (Ex. 9, App. at pp. 149-152, 164-165, 170).

b. Wheeler's determination to delete certain text messages came after Brown sent the mass emails instructing Wheeler to preserve evidence and then to subsequently compile all text messages for discovery production regardless of relevancy. (Ex. 9, App. at pp. 150-152, 170).

c. Wheeler understands and confirms that it's a "huge problem" that she deleted certain text messages based on what she thought was relevant. (Ex. 9, App. at pp. 152-153).

d. Wheeler was not supervised by anyone with respect to the production of her text messages nor was she provided any assistance. (Ex. 9, App. at pp. 170, 178).

e. Wheeler agrees that there are text messages with Underwood that predate December 3, 2023 and that she is no longer in possess of them. (Ex. 9, App. at pp. 153-154).

f. Wheeler disclosed information to Underwood that Underwood was not privy to, and vice versa. (Ex. 9, App. at pp. 155, 160, 173, 174).

g. Wheeler and Underwood regularly discussed allegations made against Underwood concerning his inappropriate relationship with NJ. (Ex. 9, App. at p. 163).

h.   Wheeler failed to disclose a number of reports she received regarding an inappropriate relationship between Underwood and NJ. (Ex. 9, App. at pp. 156-177).

i.   Wheeler and Underwood conspired to delete text messages. (Ex. 9, App. at p. 147).

j.   Wheeler and Underwood had inappropriate text messages. (Ex. 9, App. at p. 146).

k.   Wheeler was Underwood's "confidant." (Ex. 9, App. at p. 145).

l.   Wheeler and PISD are liable for what occurred to NJ. (Ex. 9, App. at pp. 143-144, 147-148).

15.   On September 23, 2025, Plaintiff conducted a deposition of Brown, and Brown testified that Wheeler breached PISD's trust and that she was a "confidant" with Underwood that would disclose information to Underwood that Underwood was not privy to. (Ex. 10, App. at p. 182).

16.   On February 17, 2026, Plaintiff conduct a continued deposition of Brown, and discovered the following facts:

a.   With regard to Wheeler's deletion of text messages with Underwood, he directed Wheeler to try to retrieve them and also issued a written reprimand to her for deleting the text messages when she was instructed to turn over every communication with Underwood, regardless of the content. (Ex. 11, App. at p. 186).

b.   Wheeler cannot recover the deleted text messages and Brown has done nothing to follow up on that alleged fact. (Ex. 11, App. at p. 187).

17.     To date, Defendant has not produced any supplemental text messages between Wheeler and Underwood.

**ARGUMENT & AUTHORITIES**

It is well established that "[f]ederal courts possess certain inherent powers, not conferred by rule or statute, to manage their own affairs so as to achieve the orderly and expeditious disposition of cases. That authority includes the ability to fashion an appropriate sanction for conduct which abuses the judicial process." *Goodyear Tire & Rubber Co. v. Haeger*, 581 U.S. 101, 107, 137 S. Ct. 1178, 1186, 197 L. Ed. 2d 585 (2017) (internal quotations and citations omitted). See also *Matter of Highland Capital Mgmt., L.P.*, 105 F.4th 830, 839 (5th Cir. 2024) (quoting *Goodyear*) ("Federal courts possess certain 'inherent powers,' not conferred by rule or statute, 'to manage their own affairs so as to achieve the orderly and expeditious disposition of cases'").

Evidence spoilation is "the destruction or the significant and meaningful alteration of evidence" and when a party raises said issue, "a court may give an adverse-inference instruction or sanction the party that altered or destroyed evidence upon a showing of bad faith." *United States v. Martinez*, 131 F.4th 294, 315 (5th Cir. 2025) (internal quotations and citations omitted).

A spoliation claim has three elements: "(1) the spoliating party must have controlled the evidence and been under an obligation to preserve it at the time of destruction; (2) the evidence must have been intentionally destroyed; and (3) the moving party must show that the spoliating party acted in bad faith." *Coastal Bridge Co., L.L.C. v. Heatec, Inc.*, 833 Fed. Appx. 565, 574 (5th Cir. 2020). Generally, bad faith means the "destruction for the purpose of hiding adverse evidence." *Martinez*, 131 F.4th 294, 315 (5th Cir. 2025) (internal quotations and citations omitted). In deciding bad faith, the Court must review the "***circumstances of the act***." *Vick v. Texas Emp. Comm'n*, 514 F.2d 734, 737 (5th Cir. 1975) (emphasis added). While a Court is not automatically required to

7

"draw an inference of bad faith simply because documents are destroyed," a party "would have []
a stronger argument for spoliation [if they could] prove that the documents were destroyed after
[the spoliator] had notice of their relevance to [their] claim." *Russell v. Univ. of Texas of Permian
Basin*, 234 F. App'x 195, 208 (5th Cir. 2007).

First, Wheeler controlled the evidence and had an obligation to preserve. Her deposition
testimony establishes that they were her text messages, which she compiled and deleted of her own
volition. Further, Wheeler was under an obligation to preserve and produce all of her text messages
with Underwood, as she was on notice of Plaintiff's *Preservation of Evidence Notice* and Plaintiff's
*First Interrogatories, Requests for Production of Documents, and Requests for Admission to
Defendant*, both of which were directed at her by her supervisor, Brown, who failed to supervise
her preservation or production.

Second, Wheeler's deposition testimony undisputedly establishes that she intentionally
destroyed the evidence after being directed on multiple occasions by Brown not to.

Finally, Wheeler clearly acted in bad faith. It is clear from Wheeler's testimony that she
deleted certain messages with Underwood so that Plaintiff's counsel would not receive them and
to protect herself and/or Underwood. This is further confirmed by the fact that her deletion came
after repeated instructions from Brown over a several-month period not to delete any text messages
and to produce all text messages *even if* there was a question of relevance, thereby putting Wheeler
on notice of potential relevance prior to her deletion on multiple occasions. These instructions
from Brown came both before and after this lawsuit was filed. Interestingly, this is not new conduct
for Wheeler, who also discussed the deletion of text messages with Underwood himself days before
his arrest and their intent to "protect" each other.

Even Wheeler herself admits that it's a "huge problem" that she deleted the text messages, and Plaintiff could not agree more. Unfortunately, Defendant and/or Brown did nothing to supervise Wheeler's production of her text messages with Underwood and Defendant. As a result, a significant number of text messages have been deleted and are no longer available because Wheeler, of her own volition, decided about what she felt was relevant or not relevant, all in contradiction with Brown's blatant instructions to the contrary. Wheeler herself said it best when asked how Plaintiff's counsel would ever know if Underwood made disclosures to her in text messages about NJ that she failed to report: "You wouldn't." ((Ex. 9, App. at p. 165).

Moreover, if there is any question as to the severity of Wheeler's conduct with respect to her deletion of text messages with Underwood, those additional circumstances cited herein further reinforce a finding of bad faith. For example, Wheeler's intention to protect herself and PISD runs parallel with her admissions that both she, as a PISD administrator, and PISD, ultimately bear liability in this case, which is what she is going to tell the jury. Moreover, Wheeler was Underwood's confidant, and they often exchanged privy and confidential information, a fact which Brown even acknowledges. Further, Wheeler and Underwood regularly discussed those allegations made against Underwood regarding an inappropriate relationship with NJ, and Wheeler repeatedly admitted that she received a plethora of reports concerning Underwood and NJ that she failed to report to Brown or anyone else, including a report from an administrator in another school district, all in violation of PISD's policies. Wheeler also admits that her text messages with Underwood were inappropriate. Finally, Brown testified that Wheeler received a written reprimand for her deletion of text messages with Underwood, thereby reinforcing the severity of her conduct and Defendant's acknowledgement of it.

For the reasons discussed above, Plaintiff respectfully submits that the only reasonable inference that one can draw from Wheeler and Defendant's failure to preserve the original text messages – evidence which is critical to this case – is that Wheeler, who is an administrator for Defendant, did not want the Court or the jury to see those text messages and assess for themselves the facts and circumstances of the alleged facts and liability of Defendant at issue. Therefore, the Court should allow and adopt an Adverse Inference Jury Instruction that Wheeler deleted certain text messages with Underwood because they contained evidence unfavorable to Defendant. Specifically, Plaintiff requests the following jury instruction be given:

> Spoliation of evidence occurs when evidence relevant to a lawsuit is destroyed and the party requesting the evidence is adversely affected in proving its claim. The Plaintiff bears the burden of proving spoliation.
> The willful destruction, suppression, alteration, or fabrication of evidence by Defendant's administrator, Sandi Wheeler, gives rise to the presumption that the text messages between Sandi Wheeler, and Defendant, Cole Underwood, if produced, would be injurious to the one who has, and thus, hindered the investigation of the facts.
> If you find that Defendant's administrator, Sandi Wheeler, committed spoliation of evidence, then you must find that the failure to produce the requested evidence raises the presumption that, if produced, it would have been harmful to Defendant and favorable to Plaintiff.

## CERTIFICATE OF CONFERENCE

Pursuant to Local Civil Rule 7.1(a) and (b), Plaintiff advises the Court that a conference was held on March 26, 2026 between Plaintiff's counsel, Tyler L. Gentry, and Defendant's counsel, Slater Elza, and that Defendant's counsel indicated its opposition to Plaintiff's *Motion*. However, no reasoning was offered by Defendant's counsel for said opposition.

**WHEREFORE**, premises considered, Plaintiff respectfully requests that this Court enter an Order allowing and adopting Plaintiff's Adverse Inference Jury Instruction consistent with Plaintiff's position stated herein, and that Plaintiff be awarded any other and further relief the Court deems just and equitable.

10

Respectfully submitted,

/s/ *Tyler. L. Gentry*
Tyler L. Gentry, OBA No. 32400
Kyle Goodwin, OBA No. 17036 and
SBN 24117975
GOODWIN / LEWIS / CASON / GENTRY
420 NW 6th St., 2nd FL
Oklahoma City, OK 73102
P: (405) 900-5700
tgentry@goodwinlewis.com
kgoodwin@goodwinlewis.com

and

MAYFIELD HEINRICH RAHLFS
WEABER & PARSONS, LLP
Brian P. Heinrich, SBN 09382320
320 S. Polk, Suite 1000
Amarillo, Texas 79101
(806) 242-0152 – Telephone
(806) 242-0159 – Fax
brian@mhrwp.com

***Attorneys for Plaintiff***

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the above and foregoing document was served on all parties of record via the Court's Electronic Filing System on the 27th day of March 2026.

/s/ *Tyler. L. Gentry*
Tyler L. Gentry