**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF TEXAS**
**AMARILLO DIVISION**

| | | |
|---|---|---|
| S.J., as Parent, Conservator, and Next Friend of N.J., | § § § | |
| Plaintiff, | § § | |
| v. | § § | |
| PERRYTON INDEPENDENT SCHOOL DISTRICT, and | § § § | CASE NO. 2:24-cv-00168-Z |
| COLE UNDERWOOD, Individually and in his official capacity as Athletic Director of Perryton ISD, | § § § § § § | |
| Defendants. | § § | |

**BRIEF IN SUPPORT OF**
**DEFENDANT PERRYTON INDEPENDENT SCHOOL DISTRICT'S**
**MOTION FOR SUMMARY JUDGMENT**

Slater C. Elza
State Bar No. 24000747
slater.elza@uwlaw.com
Fred A. Stormer
State Bar No. 24013579
fred.stormer@uwlaw.com
**UNDERWOOD LAW FIRM P.C.**
P.O. Box 9158
Amarillo, TX 79105
Tel: (806) 376-5613
Fax: (806) 379-0316

Janet Sobey Bubert
State Bar No. 24036281
janet.bubert@uwlaw.com
**UNDERWOOD LAW FIRM, P.C.**
600 Bailey Avenue
Suite 200
Fort Worth, TX  76107
Tel: (817) 885-7529
Fax: (817) 439-9922

ATTORNEYS FOR DEFENDANT,
PERRYTON INDEPENDENT SCHOOL DISTRICT

**TABLE OF CONTENTS**

Table of Contents..................................................................................................... i

Table of Authorities .............................................................................................. iii

Index of Exhibits .................................................................................................. viii

I.    PROCEDURAL HISTORY...............................................................................1

II.   FACTUAL BACKGROUND ............................................................................2

III.  SUMMARY JUDGMENT STANDARD .........................................................10

IV.   SUMMARY OF THE ARGUMENT ...............................................................10

V.    ARGUMENTS & AUTHORITIES ..................................................................12

      A.  Plaintiff's Section 1983 claim against Defendant Perryton ISD fails as a
          matter of law ...........................................................................................12

          1.  Plaintiff cannot establish an unconstitutional policy based on a widespread
              practice or custom ..........................................................................13

          2.  Plaintiff cannot establish deliberate indifference by Perryton ISD .......................15

          3.  Plaintiff cannot establish liability under Section 1983
              as the result of negligent hiring practices ...............................................19

          4.  Plaintiff cannot establish liability under Section 1983
              based on the theory of state-created danger...........................................21

      B.  Plaintiff's Title IX claim against Defendant Perryton ISD fails as a matter of law ....21

          1.  A District employee with supervisory authority....................................22

          2.  Actual notice of abuse.....................................................................23

          3.  Perryton ISD did not act with deliberate indifference ...........................26

      C.  Defendant Perryton ISD is entitled to summary judgment on Plaintiff's claim
          for damages .............................................................................................27

1. As a matter of law, Plaintiff cannot recover punitive or exemplary damages from Defendant Perryton ISD ..................................................................28

2. As a matter of law, Plaintiff cannot recover any damages from Defendant Perryton ISD related to emotional distress under Title IX ...................................28

3. An award of compensatory damages under Section 1983 must be based on concrete evidence ..............................................................................................29

D. Plaintiff's claims against Defendant Underwood in his official capacity are actions against the District and fail as a matter of law ...........................................................30

1. Plaintiff cannot establish any element of 18 U.S.C. 2251(a) against Perryton ISD as a matter of law .........................................................................................31

2. Perryton ISD is immune from tort claims against Defendant Underwood in his official capacity as a matter of law ....................................................................32

PRAYER...................................................................................................................................34

# TABLE OF AUTHORITIES

Page(s)

<u>Cases</u>

*Alegria v. State of Texas*,
Civ. A. No. G-06-0212, 2007 WL 3256586 (S.D. Tex. 2007) ................................................. 24

*Anderson v. Liberty Lobby, Inc.*,
477 U.S. 242 (1986) ................................................................................................................. 11

*Barr v. Bernhard*,
562 S.W.2d 844 (Tex. 1978) .................................................................................................... 32

*Bates v. Dallas Indep. Sch. Dist.*,
952 S.W.2d 543 (Tex. App.—Dallas 1997, writ denied) .......................................................... 33

*Board of Comm'rs of Bryan County v. Brown*,
520 U.S. 397 (1997) ........................................................................................................... 22, 27

*Brown v. City of Houston*,
337 F.3d 539 (5th Cir. 2003) .................................................................................................... 11

*Brown v. Houston Indep. Sch. Dist.*,
763 F.Supp. 905 (S.D. Tex. 1991) ........................................................................................... 33

*Campbell v. Dundee Community Sch.*,
661 F.Appx. 884 (6th Cir. 2016) .............................................................................................. 24

*Carey v. Piphus*,
435 U.S. 247 (1978) ................................................................................................................. 29

*Celotex v. Catrett*,
477 U.S. 317 (1986) ................................................................................................................. 10

*City of Gladewater v. Pike*,
727 S.W.2d 514 (Tex. 1987) .................................................................................................... 33

*City of Newport v. Fact Concerts*,
453 U.S. 247 (1981) ................................................................................................................. 28

*Cummings v. Premier Rehab Keller, P.L.L.C.*,
596 U.S. 212 (2022) ................................................................................................................. 29

*Dallas Cnty. Mental Health & Mental Retardation v. Bossley,*
968 S.W.2d 339 (Tex.1998) ........................................................................................ 32

*Davis v. Monroe County Sch. Bd.,*
526 U.S. 629 (1999) ........................................................................................ 24, 27, 28

*Doe ex rel. Doe v. Dallas Indep. Sch. Dist.,*
No. CIV.A.3:01-CV-1092-R, 2002 WL 1592694 (N.D. Tex. 2002) ........................................ 13

*Doe v. Dallas Indep. Sch. Dist,*
153 F.3d 211 (5th Cir.1998) ................................................................ 12, 19, 26, 27

*Doe v. Edgewood Indep. Sch. Dist.,*
964 F.3d 351 (5th Cir. 2020) ................................................................ 12, 15, 19, 20

*Doe v. Katy Indep. Sch. Dist.,*
427 F. Supp. 3d 870 (S.D. Tex. 2019) ........................................................................ 28

*Doe v. Northside Indep. Sch. Dist.,*
884 F.Supp.2d 485 (W.D. Tex. 2012) .......................................................................... 24

*Doe v. St. Francis Sch. Dist.,*
694 F.3d 869 (7th Cir. 2012) .................................................................................... 24

*Eason v. Thaler,*
73 F.3d 1322 (5th Cir. 1996) .................................................................................... 11

*Familias Unidas v. Briscoe,*
619 F.2d 391 (5th Cir.1980) ...................................................................................... 31

*Fisher v. Moore,*
73 F.4th 367 (5th Cir. 2023) ...................................................................................... 21

*Foster v. McLeod Indep. Sch. Dist.,*
Civ. A. No. 5:08CV71, 2009 WL 175154 (E.D. Tex.) .............................................. 16

*Franklin v. Gwinnett Cnty. Public Schools,*
112 S. Ct. 1028 (1992) .............................................................................................. 28

*Gebser v. Lago Vista Indep. Sch. Dist.,*
524 U.S. 274 (1998) ............................................................................................ passim

*Hatcher v. City of Grand Prairie,*
Civ. A. No. 3:14-cv-432-M, 2014 WL 3893907 (N.D. Tex.) ..................................... 32

*Iraheta v. Linebarger Goggan Blair & Sampson, L.L.P.*,
  734 F. Appx. 216 (5th Cir. 2018) ................................................................................... 32

*J.T. v. Uplift Educ.*,
  679 F. Supp. 3d 540 (N.D. Tex. 2023) ........................................................................... 16

*Jenkins v. Methodist Hospitals of Dallas*,
  478 F.3d 255 (5th Cir. 2007) ......................................................................................... 11

*K.B. v. Daleville City Bd. of Educ*,
  536 F. Appx. 959 ........................................................................................................... 24

*Kentucky v. Graham*,
  473 U.S. 159 (1985) ....................................................................................................... 31

*King v. Conroe Indep. Sch. Dist.*,
  289 F. Appx. 1 (5th Cir. 2007) ...................................................................................... 22

*Kings v. Texas*,
  3:10-CV-2114-K-BE, 2011 WL 271923 (N.D. Tex.) ..................................................... 32

*LeLeaux v. Hampshire-Fannett Indep. School Dist.*,
  835 S.W.2d 49 (Tex. 1992) ........................................................................................... 32

*Los Fresnos Consol. ISD v. Rivas*,
  Civ. A. No. 13-04-168-CV, 2005 WL 1981494 (Tex. App.— Corpus Christi 2005, pet.
  denied) ............................................................................................................................ 33

*McConney v. City of Houston*,
  863 F.2d 1180 (5th Cir. 1989) ................................................................................. 13, 15

*McGowan v. S. Methodist Univ.*,
  715 F. Supp. 3d 937 (N.D. Tex. 2024) ..................................................................... 28, 29

*Meadowbriar Home for Children, Inc. v. Gunn*,
  81 F.3d 521 (5th Cir.1996) ............................................................................................ 12

*Memphis Cmty. Sch. Dist. v. Stachura*,
  477 U.S. 299 (1986) ....................................................................................................... 29

*Migra v. Warren City Sch. Dist. Bd. of Educ.*,
  465 U.S. 75 (1984) ......................................................................................................... 31

*Pembaur v. Cincinnati*,
  475 U.S. 469 (1986) ....................................................................................................... 12

*Peterson v. City of Fort Worth*,
    588 F.3d 838 (5th Cir. 2009)......................................................................... 13, 15

*Pineda v. City of Houston*,
    291 F.3d 325 (5th Cir. 2002)......................................................................... 12, 32

*Piotrowski v. City of Houston*,
    237 F.3d 567 (5th Cir. 2001)............................................................................... 12

*Rosa H v. San Elizario Indep. Sch. Dist.*,
    106 F.3d 648 (5th Cir.1997)...................................................................... 22, 23, 24

*Rost ex rel. K.C. v. Steamboat Springs RE-2 Sch. Dist.*,
    511 F.3d 1114 (10th Cir. 2008)........................................................................... 27

*Salazar v. S. San Antonio Indep. Sch. Dist.*,
    953 F.3d 273 (5th Cir. 2017)............................................................................... 23

*Sanches v. Carrollton-Farmers Branch Indep. Sch. Dist.*,
    647 F.3d 156 (5th Cir. 2011)............................................................................... 27

*Springboards to Education, Inc. v. Houston Indep. Sch. Dist.*,
    Civ. A. No. H-16-2625, 2017 WL 7201938 (S.D. Tex. 2017) ................................................. 32

*Stern v. Hinds County, Miss.*,
    436 F.Appx. 381 (5th Cir.2011)............................................................................... 28

*Tooke v. City of Mexia*,
    197 S.W.3d 325 (Tex. 2006)............................................................................... 33

*Travis v. City of Grand Prairie,*
    654 F.Appx. 161 (5th Cir. 2016)............................................................................... 33

*Umoren v. Plano Ind. Sch. Dist.*,
    457 F.Appx. 422 (5th Cir. 2012)............................................................................... 34

*United States v. Rider*,
    94 F.4th 445 (5th Cir. 2024)............................................................................... 31

*Walker v. Beaumont Indep. Sch. Dist.*,
    938 F.3d 724 (5th Cir. 2019)............................................................................... 32

U.S. Constitution

Art. I, § 8 ................................................................................................................................. 28
Fifth Amendment…………………………………………………………………………...2
Fourteenth Amendment…………………………………………………………………..2

Statutes

18 U.S.C. § 2251(a) ...................................................................................................... ii, 2, 30, 31
20 U.S.C. § 1681(a) ......................................................................................................... 21
42 U.S.C. § 1983 ............................................................................................................... 2
Tex. Civ. Prac. & Rem. Code §101.021 ..................................................................... 33
Tex. Civ. Prac. & Rem. Code §101.051 ..................................................................... 33

Rules

Fed. R. Civ. P. 56(a) ....................................................................................................... 10

Regulations

19 Texas Admin. Code §249.3(51) .......................................................................... viii

## INDEX OF EXHIBITS

In support of its Motion for Summary Judgment, Defendant Perryton ISD respectfully refers the Court to the live pleadings and the following summary judgment evidence, which is included in the Appendix to this Brief and incorporated into the Brief in support of Defendant Perryton ISD's Motion for Summary Judgment:

| Exhibit | Document | Page |
|---------|----------|------|
| A. | Affidavit of Greg Brown | 001 |
| | Exhibit 1 – Underwood Employment Contracts | 008 |
| | Exhibit 2 – "Best Duo" screenshot | 016 |
| | Exhibit 3 – 19 Texas Admin. Code §249.3(51) | 017 |
| | Exhibit 4 – Social Media Screenshot | 023 |
| | Exhibit 5 – SJ text to Defendant Underwood | 024 |
| | Exhibit 6 – SJ March 4, 2024 email to District Administration | 025 |
| | Exhibit 7 – March 4, 2024 Directive to Underwood | 026 |
| | Exhibit 8 – Notice of Paid Leave | 028 |
| | Exhibit 9 – SBEC Report and Confirmation | 029 |
| | Exhibit 10 – Defendant Underwood's Resignation | 032 |
| B. | Perryton ISD Board Policies in effect during 2023-24 School Year | 033 |
| | DBAA(LOCAL) | 033 |
| | DFBA(LOCAL) | 034 |
| | DH(LEGAL), (LOCAL) and (EXHIBIT) | 035 |
| | DHB(LEGAL) | 047 |
| | FFF(LEGAL) and (LOCAL) | 053 |
| | FFG(LOCAL) and (EXHIBIT) | 056 |
| | FFH(LEGAL) and (LOCAL) | 061 |
| C. | Excerpts from Perryton ISD Employee Handbook, 2023-24 School Year | 088 |
| D. | Excerpts from Perryton ISD Student Handbook and Student Code of Conduct, 2023-24 School Year | 107 |
| E. | Subpoena to Amarillo ISD and Responsive Documents (Pltf 000280-418) | 121 |

| Exhibit | Document | Page |
|---|---|---|
| F. | Excerpts from Plaintiff SJ Deposition Transcript | 260 |
| G. | Plaintiff's Deposition Exhibits 3 and 13 | 272 |
| H. | Excerpts from Greg Brown Deposition Transcript | 329 |
| I. | Excerpts from Casey Arruda Deposition Transcript | 355 |
| J. | Excerpts from Tori Little Deposition Transcript | 363 |
| K. | Excerpts from Duce Cooper Deposition Transcript | 372 |
| L. | Excerpts from James Mireles Deposition Transcript | 377 |
| M. | Order Granting the Plaintiff's Motion to Dismiss Defendant Ragan Watson, *D.K. v. [], M.S., J.C., Ragan Watson, and Perryton Independent School District*, Case No. 2:23-CV-25 | 382 |
| N. | Plaintiff's Initial Disclosures | 383 |
| O. | Plaintiff's Responses to Interrogatories Nos. 3, 8 and 17 | 392 |
| P. | Documents from Plaintiff's Responses to RFPs (Pltf. Bates Nos. 196-219; 278) | 401 |
| Q. | Records from *USA v. Underwood*, Case No. 2:24-cr-00045-Z-BR | 426 |
| R. | Excerpts from N.J. Deposition Transcript | 432 |

**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF TEXAS**
**AMARILLO DIVISION**

| | | |
|---|---|---|
| **S.J., as Parent, Conservator,** | § | |
| **and Next Friend of N.J.,** | § | |
| | § | |
| **Plaintiff,** | § | |
| **v.** | § | |
| | § | |
| **PERRYTON INDEPENDENT** | § | **CASE NO. 2:24-cv-00168-Z** |
| **SCHOOL DISTRICT, and** | § | |
| | § | |
| **COLE UNDERWOOD,** | § | |
| **Individually and in his official** | § | |
| **capacity as Athletic Director of** | § | |
| **Perryton ISD,** | § | |
| | § | |
| **Defendants.** | § | |

---

**BRIEF IN SUPPORT OF**
**DEFENDANT PERRYTON INDEPENDENT SCHOOL DISTRICT'S**
**MOTION FOR SUMMARY JUDGMENT**

---

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW Perryton Independent School District ("Perryton ISD" or "District"), and files this brief in support of its Motion for Summary Judgment. In support thereof, Defendant would show the following:

## I.   PROCEDURAL HISTORY

Plaintiff filed suit as next friend of N.J. on August 9, 2024 ("Complaint"). *See* ECF No. 1. Plaintiff's Complaint alleges claims against Perryton ISD and former District employee, Cole Underwood, individually and in his official capacity as athletic director of Perryton ISD ("Defendant Underwood"). Plaintiff's claims arise from the unlawful sexual abuse of N.J. by

Defendant Underwood, who was convicted on federal felony charges of enticement and attempted enticement of a minor. Appx. 425 (Records from *U.S.A. v. Underwood* at PISD-002). Plaintiff's Complaint asserts causes of action against Defendant Perryton ISD (1) under 42 U.S.C. § 1983 ("Section 1983") for violations of N.J.'s right to due process and equal protection under the Fifth and Fourteenth Amendments to the U.S. Constitution; and (2) for violations of Title IX of the Education Amendments Act of 1972 ("Title IX"). *Id.* at 21-26. The Complaint also asserts causes of action against Defendant Underwood for violations of 18 U.S.C. § 2251(a), gross negligence, and intentional infliction of emotional distress. *Id.* at 27-29.

In accordance with the First Amended Scheduling Order adopted by the Court, Plaintiff and Defendant Perryton ISD have engaged in extensive discovery. The discovery period has now expired. Plaintiff has had sufficient time to produce evidence in support of his claims through the discovery process.

## II.    FACTUAL BACKGROUND

1.    Defendant Underwood began working for the Perryton ISD as a Certified Classroom Teacher/Coach at the start of the 2022-2023 school year and was made the Head Football Coach/Athletic Director for the 2023-2024 school year just before Superintendent Greg Brown started working for the District.  Appx. 002 (Brown Affidavit at ¶3).

2.    Prior to being employed by Perryton ISD, Defendant Underwood was continuously employed by Amarillo ISD as a Professional Educator/Coach at Amarillo High School from the 2017-2018 school year through the 2021-2022 school year.  Appx. 182-195 (Amarillo ISD Subpoena Response at Pltf. 341-354).

3.    Plaintiff and Defendant Underwood were friends, and during the 2023-2024 school year, they communicated frequently with each other and socialized together during Perryton High

School Basketball games and outside of school, until the time Defendant Underwood's sexual relationship with N.J. was discovered. Appx. 272-320 (Text Messages between Plaintiff and Underwood at Pltf. 126-173).

4.    At various times during the fall semester, multiple Perryton ISD coaches and faculty reported seeing N.J. in Defendant Underwood's office during the school day with the door open and heard comments from students community members that the relationship between Defendant Underwood and N.J. was unprofessional. Appx. 357-361 (Arruda Deposition Transcript at 30:5-15; 36:21-37:2; 38:1-39:8).

5.    N.J. testified that around November of 2023, she would meet Defendant Underwood in his office two-three times per week for about ten-fifteen minutes for mentoring sessions to discuss her Child Protective Services case related to her stepfather touching her in a romantic way.    Appx. 435 (N.J. Deposition Transcript at 9:12-11:11).    N.J. denied any inappropriate discussions were occurring between her and Defendant Underwood until there was a change in the tone and tenor of his communications in late December of 2023.  *Id*. at 12:2-5. But N.J. testified that she had a mentoring relationship with Defendant Underwood until basketball season ended in February, 2024.  Appx. 447 (N.J. Deposition Transcript 46:19-47:5).

6.    In December 2023, High School Principal Tori Little reported hearing rumors that the community was concerned about Underwood and N.J. having an inappropriate relationship and being too close. Appx. 364-368 (Little Deposition Transcript at 16:1 to 20:15). Principal Little and the Perryton High School counselor Randi Cunningham met with Plaintiff in Ms. Cunningham's office because Plaintiff reported he was upset about the rumors of an improper relationship between N.J. and Defendant Underwood, and he wanted the rumors to stop. Appx. 367-368 (Little Deposition Transcript at 19:20-20:15); Appx. 267-268  (S.J. Deposition Transcript

at 85:6-86:6). During this visit, Plaintiff reported that N.J. had experienced a lot of loss the year before, that Defendant Underwood was supporting N.J. and finally that Defendant Underwood was N.J.'s confidant. Appx. 368-369 (Little Deposition Transcript at 19:20 to 20:15). Ms. Little and Ms. Cunnigham addressed concerns that Defendant Underwood was spending a lot of time with N.J. and she would develop an attachment to him. *Id.* Principal Little recommended that Plaintiff address these concerns with N.J. and check her phone. Appx. 370 (Little Deposition Transcript at 31:6-21); Appx. 263 (S.J. Deposition Transcript at 58:10-25).

7.     After meeting with Principal Little, Plaintiff stated he confronted N.J. and checked her phone for any communications with Defendant Underwood but did not find any. Appx. 263-265 (S.J. Deposition Transcript at 58:10 to 60:11). Plaintiff followed up with Defendant Underwood, and also with N.J., in January of 2024 to confirm that Defendant Underwood and N.J. were not meeting alone. *Id.* N.J. denied that she was meeting with Defendant Underwood alone. Appx. 269 (S.J. Deposition Transcript at 122:12-24).

8.     On or about December 9, 2023, community member Kevin Cummings reported to Superintendent Brown that N.J. posted a collage of various photos of her and Defendant Underwood on social media with the caption "Best Duo," along with a flame emoji embedded in the collage. Appx. 002 (Brown Affidavit at ¶5; Brown Affidavit Exhibit 4); Appx. 338 (Brown Deposition Transcript at 120:18-21). Mr. Cummings advised that the relationship between Defendant Underwood and N.J. appeared too personal to him, but he did not report Defendant Underwood and N.J. were involved in a relationship that was romantic or sexual in nature. Appx. 002 (Brown Affidavit at ¶5). Superintendent Brown had not heard any concerns about the relationship between Defendant Underwood and N.J. before this report from Mr. Cummings. *Id.*

9. Superintendent Brown reported to Board President Wes Beal that Superintendent Brown was investigating the concern reported by Mr. Cummings. Superintendent Brown noted that all of the pictures in the collage were in public and what he considered "typical" photos for a high school social media post. *Id*. at ¶6. N.J.'s High School counselor also met with N.J. to discuss the collage and her relationship with Defendant Underwood but testified that there had been no inappropriate physical contact between her and Defendant Underwood, and he had not crossed a line as being romantic or flirting. Appx. 439-441, 445-446 (N.J. Deposition Transcript at 14:20-16:17, 43:16-44:3).

10. Superintendent Brown questioned Defendant Underwood about the collage and his relationship with N.J the next day. *Id.* at ¶7. Defendant Underwood denied any inappropriate romantic relationship with N.J., reported that he was friends with Plaintiff, and that he was assisting N.J. with personal problems surrounding the divorce and custody battle between Plaintiff and N.J.'s mother. *Id.* Superintendent Brown directed Defendant Underwood not to be alone with N.J. and not allow himself to be in any photos with N.J. *Id.* Superintendent Brown spoke with Principal Tori Little about Mr. Cummings' concerns and Superintendent Brown's conversation with Defendant Underwood. *Id.* Ms. Little reported to Superintendent Brown that she had also met with Plaintiff about rumors of Defendant Underwood and N.J. having a personal relationship. *Id.*; *see also* Appx. 369 (Little Deposition Transcript at 20:1-15). Ms. Little stated that Plaintiff had told her that Defendant Underwood was a family friend who was supporting N.J. during a difficult personal time, and that there was nothing to the rumors. Appx. 003 (Brown Affidavit at ¶7); Appx. 369-370 (Little Deposition Transcript at 20:1-15; 31:6-21). Given the context of Defendant Underwood's confirmed friendship with Plaintiff and his connection to Plaintiff's family, considering the collage photos were taken in public places, and weighing the lack of other

factors that tend to evidence romantic intent, Superintendent did not think the reported interactions between Defendant Underwood and N.J. were consistent with solicitation of a romantic relationship by Defendant Underwood.  Appx. 003 (Brown Affidavit at ¶7).

11.    On December 26, 2023, Defendant Underwood advised Superintendent Brown that he was getting a divorce. Appx. 003 (Brown Affidavit at ¶8).  On January 8, 2024, Superintendent Brown asked Defendant Underwood if he was getting a divorce because of another woman and expressly asked Defendant Underwood if he was involved in a romantic relationship with N.J. Defendant Underwood denied being involved in a romantic relationship with N.J. or anyone else. *Id*.; *see also* Appx.344-345 (Brown Deposition Transcript at 188:2 – 189:18).

12.    On or about January 15, 2024, Superintendent Brown was notified by Tori Little of another picture on social media of Coach Underwood and N.J., in which they appeared to be alone in the gym. Appx. 004 (Brown Affidavit at ¶9).

13.    Superintendent Brown reviewed security video of the day when the photo was taken.  Appx. 004 (Brown Affidavit at ¶10).  The video showed other coaches and their children in the gym with Defendant Underwood and N.J.  *Id.*  He watched the video until he saw Defendant Underwood and N.J. leave the gym in opposite directions. *Id.*  Although Defendant Underwood and N.J. had not been alone, Superintendent Brown considered the photo on social media to be a violation of his verbal directive to Defendant Underwood. *Id.*

14.    Superintendent Brown met with Defendant Underwood about allowing himself to be photographed with N.J. and it being posted on social media. Appx. 004 (Brown Affidavit at ¶11). Superintendent Brown again questioned Defendant Underwood about the personal nature of his relationship with N.J. Defendant Underwood again denied any romantic relationship with N.J.,

and stated he is a family friend. *Id.* Superintendent Brown reiterated to Defendant Underwood not to be alone with N.J. or any other female student. *Id.*

15.    Sometime during February or early March, a student and his parents met with Superintendent Brown to discuss a complaint about the student's playing time in athletics. Appx. 004 (Brown Affidavit at ¶12). The parents' reported that Defendant Underwood showed favoritism towards N.J. and retaliated against their child because the child was involved in a prior relationship with N.J. *Id*; *see also* Appx. 351-353 (Brown Deposition Transcript at 287:2 to 289:17). The parents' comments about Defendant Underwood were repetitious of the information already received by Superintendent Brown. *Id.*

16.    Superintendent Brown did not hear any new concerns about the relationship between Defendant Underwood and N.J. until March 3, 2024, when Superintendent Brown was told that N.J. rode home alone to Perryton, Texas with Defendant Underwood from a track meet in Canyon, Texas. Appx. 004 (Brown Affidavit at ¶13).

17.    Superintendent Brown confronted Defendant Underwood, who confirmed that he drove N.J. from a track meet in Canyon, Texas to Perryton, Texas at the request of Plaintiff. Defendant Underwood showed Superintendent Brown text messages with Plaintiff requesting he (Underwood) drive N.J. back to Perryton. Appx. 005; 024 (Brown Affidavit at ¶14; Brown Affidavit Exhibit 5).

18.    On March 4, 2024, Plaintiff sent an email to Perryton ISD Administration confirming that he had requested that N.J. ride back to Perryton with Defendant Underwood and that he [Plaintiff] was supportive of Defendant Underwood being around N.J and of Defendant Underwood being Perryton ISD's Athletic Director. Appx. 005; 025 (Brown Affidavit at ¶15; Brown Affidavit Exhibit 6).

19.     On March 4, 2024, Superintendent Brown issued a written memorandum to Defendant Underwood, directing him, among other things, not be alone with any female student, particularly N.J, even if requested by Plaintiff.  Appx. 005; 026 (Brown Affidavit at ¶16; Brown Affidavit Exhibit 7).

20.     Superintendent Brown did not hear of any other concerns or reports involving Defendant Underwood and N.J. until mid-April, when community member Duce Cooper advised him multiple students had reported to him that something "wasn't right" between N.J. and Defendant Underwood.  Appx. 005 (Brown Affidavit at ¶17).  Superintendent Brown asked Mr. Cooper if he was aware of any specific details that would indicate Defendant Underwood was seeking or having a romantic relationship with N.J. *Id.* Mr. Cooper reported he was not. *Id.* Superintendent Brown asked Mr. Cooper if he could disclose the name of the students who reported concerns about Defendant Underwood and N.J so that Superintendent Brown could question them. *Id.*   Mr. Cooper stated he would not disclose the students who made the reports in confidence to him through his work as a local pastor. *Id.* Mr. Cooper stated he would inform those students they could talk with Superintendent Brown, and Mr. Cooper would try to provide Superintendent Brown with details of why students thought there was an improper relationship between Defendant Underwood and N.J.  *Id*.

21.     On Sunday April 21, 2024, Duce Cooper informed Superintendent Brown that Defendant Underwood and N.J.'s vehicles were parked at the school at the same time on Saturday, April 20. Appx. 006 (Brown Affidavit at ¶ 18); Appx. 375 (Cooper Deposition Transcript at 36:11 – 36:19); Appx. 346 (Brown Deposition Transcript at 192:16-20).  Later in the day on April 21, and again on the morning of April 22, Superintendent Brown reviewed security camera footage of Perryton High School.  The video confirmed that N.J. was alone with Defendant Underwood at

the school in Defendant Underwood's office on April 20, 2024, and on at least four other prior occasions. Appx. 006 (Brown Affidavit at ¶18); *see also* Appx. 347 (Brown Deposition Transcript at 197:22-24).

22.     On the afternoon of Monday, April 22, 2024, Superintendent Brown confronted Defendant Underwood about his visits alone with N.J. on school property.  Appx. 006 (Brown Affidavit at ¶19). Defendant Underwood initially denied he had been alone with N.J. but eventually admitted that they had been alone in his office when Superintendent Brown informed him about the video.  *Id*. He again denied having any type of improper relationship with N.J. and reported that they "were just talking." *Id*. Superintendent Brown immediately placed Defendant Underwood on leave at the conclusion of this meeting and contacted the Texas Department of Family and Protective Services, Child Protective Services and the Ochiltree County Sheriff to report this matter. *Id*.; Appx. 028 (Brown Affidavit Exhibit 8); *see also* Appx. 331 (Brown Deposition Transcript at 37:15-22).

23.     In April 2024, N.J. admitted to law enforcement officer Wayne Floyd that she and Defendant Underwood had sexual intercourse. Appx. 443 (N.J. Deposition Transcript 32:6-17). N.J. testified that she and Defendant Underwood had sexual intercourse at school on eight to ten occasions.  Appx. 444 (N.J. Deposition Transcript at 33:1-11).  Up to the point that she spoke with law enforcement, N.J. had never disclosed anything about the inappropriate sexual relationship with Defendant Underwood to anyone.  Appx. 443 (N.J. Deposition Transcript at 32:6-17).

24.     Defendant Underwood resigned from Perryton ISD on April 24, 2024.  Appx. 006; 032 (Brown Affidavit at ¶20; Brown Affidavit Exhibit 10).

25.      Defendant Underwood plead guilty on October 10, 2024, to Enticement and Attempted Enticement of a Minor, 18 U.S.C. § 2422(b). Appx. 427 (Records from *USA v.*

*Underwood*). He was sentenced to 30 years in federal prison. Appx. 428 (*Id.*).

### III.    SUMMARY JUDGMENT STANDARD

Summary judgment is warranted if a party establishes there is no genuine dispute about any material fact and the law entitles the party to judgment. Fed. R. Civ. P. 56(a); *Celotex v. Catrett*, 477 U.S. 317, 322-23 (1986). Summary judgment is proper when the pleadings, depositions, or other discovery show no genuine issue of material fact exists. Fed. R. Civ. P. 56(a). A defendant is entitled to summary judgment if any element of the cause of action cannot be proved or all elements of a defense are established by law. *Celotex*, 477 U.S. at 322. If a defendant disproves any element of the plaintiff's cause of action, then summary judgment is appropriate. *Id.*

The movant bears the initial burden of demonstrating the absence of a genuine issue of material fact in its motion. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). When the movant so demonstrates, "the plaintiff must present affirmative evidence in order to defeat a properly supported motion for summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 257 (1986). The non-movant may not rest upon allegations in her pleading but "must set forth specific facts showing that there is a genuine issue for trial." *Id.* at 256; *see also Eason v. Thaler*, 73 F.3d 1322, 1325 (5th Cir. 1996); *Brown v. City of Houston*, 337 F.3d 539, 541 (5th Cir. 2003). No genuine issue of material fact exists if the summary judgment evidence is such that no reasonable juror could find in favor of the nonmovant. *Jenkins v. Methodist Hospitals of Dallas*, 478 F.3d 255, 260 (5th Cir. 2007).

### IV. SUMMARY OF THE ARGUMENT

Defendant Cole Underwood was incarcerated for his criminal conduct following his arrest in April 2024. It is undisputed that N.J. should never have experienced any type of sexual abuse by a school employee. Perryton ISD administrators acknowledge N.J. was seen in Defendant

Underwood's office starting in the fall of 2023, and the door was always open. Perryton ISD administrators admit there were rumors beginning in December 2023, that "something was not right" between Defendant Underwood and N.J. The reports did not include any reference to sexual misconduct, and their investigation of the concerns did not reveal evidence of solicitation of a romantic relationship. Regardless, the District put measures in place to quell the rumors. The District's Superintendent instructed Defendant Underwood, verbally and then in writing, not to be alone with N.J. or any other female students. When the District's Superintendent learned Defendant Underwood ignored the written directive, he immediately placed Defendant Underwood on leave and contacted law enforcement and other appropriate agencies. Throughout the period from December 2023, and up to the day before Defendant Underwood's arrest, Plaintiff professed to Perryton ISD administrators his support for Defendant Underwood and his role as a mentor and source of support for N.J. Despite an inability to avoid Defendant Underwood's unlawful conduct, the District's actions were reasonable based on all the information available.

Plaintiff cannot prevail on his Section 1983 action because the evidence does not support a reasonable jury finding that Perryton ISD acted with deliberate indifference by adopting or maintaining an unconstitutional policy that served as the moving force behind Defendant Underwood's criminal conduct. Further, Plaintiff cannot prevail on his Title IX claim because he is not able to prove that an appropriate official with authority to institute corrective measures on Perryton ISD's behalf had actual knowledge of sexual misconduct and responded to that knowledge with deliberate indifference. Finally, Perryton ISD cannot be held liable for Plaintiff's claims against Underwood in his official capacity. Plaintiff has not raised and cannot support a Section 1983 claim for a violation of 18 U.S.C. § 2251(a); and the Court lacks subject matter jurisdiction to consider a tort claim against Perryton ISD.

## V. ARGUMENTS & AUTHORITIES

**A.    Plaintiff's Section 1983 claim against Defendant Perryton ISD fails as a matter of law.**

The liability standard under Section 1983 requires proof of three elements: a policymaker; an official policy; and a violation of constitutional rights whose 'moving force' is the policy or custom." *Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001). "The 'official policy' requirement was intended to distinguish acts of the municipality from acts of employees of the municipality and thereby make clear that municipal liability is limited to action for which the municipality is actually responsible." *Pembaur v. Cincinnati*, 475 U.S. 469, 479 (1986). "To that end, § 1983, like Title IX, does not impose liability on school districts for an employee's tort under a respondeat superior liability theory—but only for their own illegal acts." *Doe v. Edgewood Indep. Sch. Dist.*, 964 F.3d 351, 365 (5th Cir. 2020). To prevail against a public school district, a plaintiff must show that "the district's final policymaker acted with deliberate indifference in maintaining an unconstitutional policy that caused the plaintiff's injury." *Id* at 364-65.

To prevail on a Section 1983 claim, the Plaintiff must prove: 1) a policy or custom existed; 2) the governmental policy makers actually or constructively knew of its existence; 3) a constitutional violation occurred; and 4) the custom or policy served as the moving force behind the violation. *Meadowbriar Home for Children, Inc. v. Gunn*, 81 F.3d 521, 532 (5th Cir.1996). The policy element requires proof of (1) an explicit policy statement, ordinance, regulation, or decision officially adopted or promulgated; or (2) a custom that is the "persistent, widespread practice" of the school district and is "so common and well settled" that it "fairly represents" school district policy. *Pineda v. City of Houston*, 291 F.3d 325, 328 (5th Cir. 2002). The policymaking authority of the District is vested exclusively in its Board of Trustees. *Doe v. Dallas Indep. Sch. Dist*, 153 F.3d 211, 216 (5th Cir.1998).

**1.     Plaintiff cannot establish an unconstitutional policy based on a widespread practice or custom.**

It is undisputed that the Perryton ISD Board of Trustees adopted official policies prohibiting sexual harassment, sexual abuse, and inappropriate relationships between educators and students. *See* Appx. 033-087; 088-120 (Perryton ISD Board Policies; Excerpts from Employee Handbook; and, Excerpts from Student Handbook/Code of Conduct); *see also* ECF No. 28 at 7. These policies establish there was no official action taken by the District through its traditional policymaking procedures that caused the harm alleged by Plaintiff as a result of Defendant Underwood's unlawful behavior. Instead, Plaintiff alleges an unconstitutional policy exists based on a custom of the District permitting sexual abuse of students by school employees. ECF No. 1 at 21-24; ECF No. 28 at 6. The Complaint attempts to identify such a pattern by alleging three claims have been made within the last three years concerning sexual harassment or sexual abuse of students by Perryton ISD employees. ECF No. 1 at 9. Plaintiff is unable to produce evidence to support this allegation.

As acknowledged by the Court in this matter, an unconstitutional policy based on a custom or practice exists only if Plaintiff can establish a pattern of behavior with "prior incidents." *McConney v. City of Houston*, 863 F.2d 1180, 1184 (5th Cir. 1989). The pattern must be based on prior incidents with sufficient "similarity and specificity." *Peterson v. City of Fort Worth*, 588 F.3d 838, 851 (5th Cir. 2009). Plaintiff must prove the District's Board of Trustees allowed "a custom within the school district that led to, caused, or resulted in the deprivation of [his] daughter's constitutionally protected right." *Doe ex rel. Doe v. Dallas Indep. Sch. Dist.*, No. CIV.A.3:01-CV-1092-R, 2002 WL 1592694, at *4 (N.D. Tex. July 16, 2002).

Not only has Plaintiff failed to marshal any evidence as to the existence of such a custom, the summary judgment evidence establishes that the requisite pattern of sufficiently similar

incidents does not exist and there is no basis for a finding that the District's Board of Trustees allowed or tolerated an unconstitutional policy of sexual abuse of students by District employees. First, the only prior claim identified in the Complaint is a prior lawsuit styled as *D.K. v. [], M.S., J.C., Ragan Watson, and Perryton Independent School District*, Case No. 2:23-CV-25. ECF No. 1 at 9. Appx. 401-424 (Response to Requests for Production, Pltf 196-219). As acknowledged by Plaintiff, the case was resolved prior to a trial; therefore, no findings exist related to the veracity of any allegation raised within the lawsuit. More importantly, the plaintiff in *D.K.* did not allege that any Perryton ISD employee engaged in any conduct that constitutes sexual abuse or harassment of a child. The case alleged an incident of student-on-student harassment. Appx. 404-405 (*Id.* at Pltf 199-200). Prior District employee Ragan Watson was a named defendant due to a disputed allegation in the complaint that he witnessed the alleged harassment and failed to intervene. Appx. 405 (*Id.* at Pltf 200). The plaintiff dismissed Watson, the only Perryton ISD employee named in the suit. *See* Appx. 382- (Order Granting the Plaintiff's Motion to Dismiss Defendant Ragan Watson). Therefore, *D.K.*, the only claim cited by Plaintiff to support a custom, did not involve sufficiently similar behavior to the unlawful conduct of Defendant Underwood.

During the course of discovery in this matter, Plaintiff has identified <u>one</u> prior incident involving allegations of an inappropriate relationship between a District employee and a student during the last three years. On or around April 12, 2022, the District immediately notified law enforcement when it received information that a teacher, David Drew, was involved in an inappropriate relationship with a District student. Drew was arrested on April 14, 2022. *See* Appx. 321-328 (Plaintiff's Deposition Exhibit 13). The District's superintendent at the time, James Mireles, testified during a deposition in this matter that Mr. Drew was immediately suspended, and his employment was terminated. *See* Appx. 380 (Mireles Deposition Transcript at 28:2-13).

Plaintiff may attempt to rely on other incidents of employee misconduct that did not involve sexual abuse of a student.[1] However, other types of misconduct cannot be relied upon to establish the requisite pattern of past incidents necessary to identify a *de facto* unconstitutional policy. *See Peterson*, 588 F.3d at 851. No other incidents involving a District employee engaging in an inappropriate sexual relationship with a District student have been reported to Perryton ISD. One incident of an alleged inappropriate relationship with a District employee two years prior to the events at issue here – for which the District immediately responded by notifying law enforcement and terminating employment with the offending employee – is insufficient to establish that the Perryton ISD Board of Trustees tolerated a custom or practice of sexual abuse of students by District employees. *See McConney v. City of Houston*, 863 F.2d 1180, 1184 (5th Cir. 1989) (a pattern requires "sufficiently numerous prior incidents"). As a matter of law, Plaintiff cannot establish Perryton ISD acted with deliberate indifference in maintaining an unconstitutional policy that caused Plaintiff's injury. *See Edgewood Indep. Sch. Dist.*, 964 F.3d at 364-65.

**2.      Plaintiff cannot establish deliberate indifference by Perryton ISD.**

As explained above, no such pattern of past incidents can be established for this matter. The summary judgment evidence further establishes that the District did not act with deliberate indifference related to Defendant Underwood. "Deliberate indifference in this context does not mean a collection of sloppy, or even reckless, oversights; ***it means evidence showing an obvious,***

---

[1] Mireles testified at his deposition that he was aware of another incident investigated by the District in 2022, which involved a teacher, Andrew Lackey, buying flowers for a student. Appx. 379 (Mireles Deposition Transcript at 21:18-23). Mr. Lackey's conduct was recognized as unprofessional, but no unlawful conduct was alleged or identified during the District's investigation. Mr. Lackey resigned his position at the end of that school year. Additionally, the deposition testimony of Greg Brown identified a teacher who was placed on administrative leave immediately after law enforcement notified the District about an investigation to inappropriate social media messages from an IP address affiliated with the teacher's home address. Appx. 332-333 (Brown Deposition Transcript at 60:9-61:22). The District terminated the teacher's contract. *Id*. Later, the District learned no charges were pursued against the teacher due to insufficient evidence that the teacher engaged in unlawful conduct. *Id.*

*deliberate indifference to sexual abuse*. There is an analytical distinction between being deliberately indifferent as to one particular incident and having a 'policy' of always being deliberately indifferent to unconstitutional actions." *Foster v. McLeod Indep. Sch. Dist.,* Civ. A. No. 5:08CV71, 2009 WL 175154, at *16 (E.D. Tex. Jan. 23, 2009) (emphasis added).

The Court has recognized that Plaintiff survived Defendant Perryton ISD's Motion to Dismiss by making sufficient allegations of "a custom of failing to train on or implement policies preventing sexual abuse <u>when paired with</u> allegations that other instances of sexual abuse and harassment have occurred in the last three years allegedly due to similar failures. Courts discard claims when only one instance of sexual abuse occurred." ECF No. 28 (citing *J.T. v. Uplift Educ.*, 679 F. Supp. 3d 540 (N.D. Tex. 2023)). Therefore, the lack of a pattern of past incidents of similar conduct is sufficient to refute the existence of an unconstitutional policy. However, the summary judgment evidence further proves that the purported basis of such policy – the District's alleged deliberate indifference to a failure to enforce its own policies and failure to adequately train District employees – also cannot be established. Plaintiff cannot present any evidence showing that Perryton ISD acted with obvious, deliberate indifference to sexual abuse of a student, at the hands of a District employee.

During discovery, Perryton ISD has refuted Plaintiff's allegation that the District has a custom of failing to train its employees on District policies. Although the Complaint alleges an isolated number of unidentified employees were unaware of policies and procedures, the summary judgment evidence establishes District provided employees annual training on Title IX compliance and directed employees to review the Employee Handbook, which identifies the District's prohibition of harassment and abuse of students. Appx. 002 (Brown Affidavit at ⁋ 5). The District has also produced evidence that Defendant Underwood specifically received training on sexual

harassment prohibitions. *Id.*

Perryton ISD has also produced evidence to refute Plaintiff's allegations that the District failed to enforce or investigate reported policy violations. The summary judgment evidence establishes the investigatory steps taken by the District's superintendent related to allegations of unprofessional conduct by Defendant Underwood, as well as the progressive disciplinary steps taken in an effort to address Underwood's noncompliance with District policies and procedures. These actions included:

- Superintendent Brown received a report from community member Kevin Cummings on or about December 9, 2023, that N.J. posted a collage of various photos of her and Defendant Underwood on social media with the caption "Best Duo," along with a flame emoji embedded in the collage. Appx. 002; 023 (Brown Affidavit at ¶5; Affidavit Exhibit 4); Appx. 338 (Brown Deposition Transcript at 120:18-21). Mr. Cummings advised that the relationship between Defendant Underwood and N.J. appeared too personal to him, but he did not report Defendant Underwood and N.J. were involved in a relationship that was romantic or sexual in nature. Appx. 002 (Brown Affidavit at ¶5). Superintendent Brown had not heard any concerns about the relationship between Defendant Underwood and N.J. before this report from Mr. Cummings. *Id.*

- Superintendent Brown responded to the report by informing Board President Wes Beal that he was investigating the concern reported by Mr. Cummings. Superintendent Brown noted that all of the pictures in the collage were in public and what he considered "typical" photos for a high school social media post. *Id.* at ¶6. Superintendent Brown questioned Defendant Underwood about the collage and his relationship with N.J the next day. *Id.* at ¶7. Defendant Underwood denied any inappropriate romantic relationship with N.J., reported that he was friends with Plaintiff, and that he was assisting N.J. with personal problems surrounding the divorce and custody battle between Plaintiff and N.J.'s mother. *Id.* In an abundance of caution, Superintendent Brown directed Defendant Underwood not to be alone with N.J. and not to allow himself to be in any photos with N.J. *Id.* Superintendent Brown also spoke with Principal Tori Little about Mr. Cummings' concerns and Superintendent Brown's conversation with Defendant Underwood. *Id.* Ms. Little reported to Superintendent Brown that she had met with Plaintiff about rumors of Defendant Underwood and N.J. having a personal relationship. *Id.; see also* Appx. ___ (Little Deposition Transcript at 20:15). Ms. Little stated that Plaintiff told her that Defendant Underwood was a family friend who was supporting N.J. during a difficult personal time, and that there was nothing to the rumors. Appx. 003 (Brown Affidavit at ¶7); Appx. 369 (Little Deposition Transcript at 20:15).

- On or about January 15, 2024, Superintendent Brown was notified by Tori Little of another

picture on social media of Coach Underwood and N.J., in which they appeared to be alone in the gym. Appx. 004 (Brown Affidavit at ¶9). Superintendent Brown responded by reviewing security video of the day when the photo was taken. Appx. 004 (Brown Affidavit at ¶10). The video showed other coaches and their children in the gym with Defendant Underwood and N.J. *Id.* He watched the video until he saw Defendant Underwood and N.J. leave the gym in opposite directions. *Id.*

- Although Superintendent Brown confirmed Defendant Underwood and N.J. had not been alone in the gym, Superintendent Brown considered the photo on social media to be a violation of his verbal directive to Defendant Underwood. *Id.* Superintendent Brown met with Defendant Underwood about allowing himself to be photographed with N.J. and it being posted on social media. Appx. 004 (Brown Affidavit at ¶11). Superintendent Brown again questioned Defendant Underwood about the personal nature of his relationship with N.J.; Defendant Underwood again denied any romantic relationship with N.J., and stated he is a family friend. *Id.* Superintendent Brown reiterated to Defendant Underwood not to be alone with N.J. or any other female student. *Id.*

- Superintendent Brown did not hear any new concerns about the relationship between Defendant Underwood and N.J. until March 3, 2024, when Superintendent Brown was told that N.J. rode back home alone with Defendant Underwood from a track meet in Canyon, Texas. Appx. 004 (Brown Affidavit at ¶13). Superintendent Brown confronted Defendant Underwood, who confirmed that he drove N.J. home from the track meet at the request of Plaintiff. Defendant Underwood showed Superintendent Brown text messages from Plaintiff to Defendant Underwood requesting that Underwood drive N.J. back to Perryton. Appx. 004; 024 (Brown Affidavit at ¶13; Affidavit Exhibit 5).

- The next day, on March 4, 2024, Plaintiff sent an email to Perryton ISD Administration confirming that he had requested that N.J. ride back to Perryton with Defendant Underwood, that he was supportive of Defendant Underwood being around N.J, and that he supported Defendant Underwood being Perryton ISD's Athletic Director. Appx. 005; 025 (Brown Affidavit at ¶15; Affidavit Exhibit 6). Despite the assurances from Plaintiff, on March 4, 2024, Superintendent Brown issued a written memorandum to Defendant Underwood, directing him, among other things, not be alone with any female student, particularly N.J, even if requested by Plaintiff. Appx. 005; 025-027 (Brown Affidavit at ¶16; Affidavit Exhibits 6, 7).

- On Sunday April 21, 2024, Duce Cooper informed Superintendent Brown that Defendant Underwood and N.J.'s vehicles were parked at the school at the same time on Saturday, April 20. Appx. 006 (Brown Affidavit at ¶ 18); Appx. 374-375 (Cooper Deposition Transcript at 35:11-36:19); Appx. 346 (Brown Deposition Transcript at 192:16-20). Later that day and again on the morning of April 22, Superintendent Brown reviewed security camera footage of Perryton High School. The video confirmed that N.J. was alone with Defendant Underwood at the school in Defendant Underwood's office on April 20, and on at least four other prior occasions. Appx. 006 (Brown Affidavit at ¶18); *see also* Appx. 347 (Brown Deposition Transcript at 197:22-24).

Page 18

- On the afternoon of Monday, April 22, 2024, Superintendent Brown confronted Defendant Underwood about his visits alone with N.J. on school property. Appx. 006 (Brown Affidavit at ¶19). Defendant Underwood initially denied he had been alone with N.J. but eventually admitted that they had been alone in his office when Superintendent Brown informed him about the video. *Id*. He again denied having any type of improper relationship with N.J. and reported that they "were just talking." *Id.* Superintendent Brown immediately placed Defendant Underwood on leave at the conclusion of this meeting and contacted the Child Protective Services Division of the Texas Department of Family and Protective Services, as well as the Ochiltree County Sheriff to report this matter. *Id*.; *see also* Appx. 331 (Brown Deposition Transcript at 37:15-22).

Although the District's actions were not successful in avoiding Underwood's unlawful conduct, the District has established it acted reasonably in light of the circumstances known at the time. *Doe v. Dallas Indep. Sch. Dist*., 153 F.3d 211, 218-19 (5th Cir. 1998).

### 3. Plaintiff cannot establish liability under Section 1983 as the result of negligent hiring practices.

Plaintiff also attempts to assert Section 1983 liability against the District for failing to take sufficient precautions in the hiring process, which Plaintiff alleges resulted in the circumstances that allowed the sexual abuse of N.J. to occur. Plaintiff cannot establish a policy of negligent hiring practices by the District as required under Section 1983. In *Doe v. Edgewood Independent School District*, 964 F.3d 351 (5th Cir. 2020), the Fifth Circuit responded to a similar claim with the following:

> Finally, Doe must prove that [the hiring] policy was the "moving force" behind the violation of her constitutional rights. Here, there's no dispute that the sexual abuse Hernandez perpetrated on Doe violated her constitutional rights. But [the causation element] proves fatal to Doe's argument. EISD's hiring policy was not the "moving force" behind Hernandez's unconstitutional actions.
>
> "Moving force" causation is more than "but for" causation. Doe must show that the final policymaker had the requisite degree of culpability and that EISD's policies were the actual cause of the constitutional violation. She has not. When it comes to the "moving force" behind the sexual abuse of Doe, we agree with the district court that Hernandez's misconduct was the actual cause of the violation. Arguably, the hiring administrator's choice to hire Hernandez without further investigation of his employment and criminal history was negligent. But EISD cannot be held liable for

an employee's negligence under a respondeat superior theory.

*Edgewood Indep. Sch. Dist.,* 964 F.3d at 365-366. Similar to the *Edgewood* case, Plaintiff alleges negligent conduct by District employees related to the hiring and supervision of Defendant Underwood. Although the District denies such negligence, even if proven to be true, negligent conduct in the hiring process is insufficient to support District liability under Fifth Circuit precedent. *Id.*

More importantly, the summary judgment evidence establishes the Complaint allegations related to Perryton ISD's failure to consider incidents that occurred while Underwood was employed at Amarillo ISD are unfounded. Plaintiff alleges that prior to his employment with Perryton ISD, Underwood was placed on administrative leave and investigated by Amarillo ISD for an inappropriate relationship with a female student. ECF No. 1 at 4. Based on evidence produced by Amarillo ISD, such allegations misrepresented the circumstances of the alleged incident. In a letter to the State Board of Education Certification dated August 22, 2024, Mr. Doug Loomis, who was superintendent of Amarillo ISD at the time, confirmed that during Underwood's employment at Amarillo ISD there were never any allegations or reports of abuse by Underwood involving any Amarillo ISD student. Appx. 121-259 (Amarillo ISD Subpoena Responses). Based on additional employment records produced by Amarillo ISD, the district investigated an incident in August 2018, which involved an inappropriate communication with students on social media platforms. Appx. 258-259 (*Id.*) Underwood was placed on leave during the investigation from August 7-10, 2018. Appx. 219 (*Id.*) The investigation revealed no evidence of abuse. Appx. 258-259 (*Id.*) Underwood received a reprimand regarding electronic communications with students and returned to duty. Appx. 198-199 (*Id.*) According to Amarillo ISD records, there were no further reports of inappropriate electronic communications for the remainder of his tenure with

Amarillo ISD. Appx. 258-259 (*Id*.) Underwood's contract was renewed multiple times, and he continued his employment with Amarillo ISD until he resigned to accept a position with Perryton ISD on June 30, 2022. Appx. 182-195 (*Id*.)

> **4.    Plaintiff cannot establish liability under Section 1983 based on the theory of state-created danger.**

Finally, it appears Plaintiff may be attempting to assert liability under Section 1983 based on a theory of state-created danger. In an abundance of caution, Defendant Perryton ISD asserts the Fifth Circuit has repeatedly declined to recognize the state-created danger doctrine. *Fisher v. Moore*, 73 F.4th 367 (5th Cir. 2023). In *Fisher*, the Fifth Circuit reaffirmed: "Even though we repeat today that the state-created danger doctrine is not clearly established in our circuit, we have not categorically ruled out the doctrine either; we have merely declined to adopt this particular theory of constitutional liability. *Id*. Absent a change in Fifth Circuit jurisprudence, Plaintiff's allegations of a state-created danger cannot create liability for the District.

**B.    Plaintiff's Title IX claim against Defendant Perryton ISD fails as a matter of law.**

Title IX states that no person, "shall on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving federal financial assistance." 20 U.S.C. § 1681(a). The primary purpose of this statute is to prevent entities that receive federal financial assistance from using the funds in a discriminatory manner. *Gebser v. Lago Vista Indep. Sch. Dist*., 524 U.S. 274, 286 (1998).

*Gebser* involved an adult teacher who engaged in sexual intercourse with a freshman student. The Supreme Court rejected both vicarious liability and constructive knowledge as liability standards. *Gebser*, 524 U.S. at 286-88. Rather, claimants must show "actual knowledge" of the harassment by an "official of the recipient entity with authority to take corrective action to end the discrimination." *Id*. at 290. The claimant further must show that the official responded

with "deliberate indifference." *Id*. at 290-91 (citing *Board of Comm'rs of Bryan County v. Brown*, 520 U.S. 397 (1997)). The premise "is an official decision by the recipient not to remedy the violation." *Id*. (emphasis added). This standard avoids the "risk that the recipient would be liable in damages not for its own official decision but instead for its employees' independent actions." *Id*. at 290. "When the school board accepted federal funds, it agreed not to discriminate on the basis of sex. We think it unlikely that it further agreed to suffer liability whenever its employees discriminate on the basis of sex." *Id*. at 288.

To recover damages from a school district for an employee's sexual abuse of a student, the plaintiff must allege and prove that "(1) a school district employee with supervisory power over the offending [employee] (2) had actual notice of the [abuse] and (3) responded with deliberate indifference." *King v. Conroe Indep. Sch. Dist*., 289 F. Appx. 1, 3 at n. 3 (citing *Gebser*, 524 U.S. at 290). A student who has been sexually abused by a school employee can recover from the school district under Title IX only if the school district actually knew that there was a substantial risk that sexual abuse would occur. *Rosa H v. San Elizario Indep. Sch. Dist*., 106 F.3d 648, 652-53(5th Cir.1997)).

### 1.    A District employee with supervisory authority.

In order to obtain damages under Title IX, Plaintiff must show that an official with Perryton ISD, who had authority to address the alleged sexual assault and institute corrective measures on behalf of the District, had actual knowledge of discrimination. *Gebser*, 524 U.S. at 290. In *Rosa H. v. San Elizario ISD*, the Fifth Circuit delineated which school officials may be considered an appropriate person for purposes of Title IX liability, holding:

> a school district can be liable for teacher-student sexual harassment under Title IX only if a school official who had actual knowledge of the abuse was invested by the school board with the duty to supervise the employee *and* the power to take action that would end such abuse and failed to do so.

*Rosa H. v. San Elizario Indep. Sch. Dist*., 106 F.3d 648, 660 (5th Cir. 1997)(emphasis added). This standard serves to "locate[] the acts of subordinates to the board at a point where the board's liability and practical control are sufficiently close to reflect its intentional discrimination." *Id*. The Court specifically held that the rule "omit[s] the bulk of employees, such as fellow teachers, coaches, and janitors, unless the district has assigned them both the duty to supervise the employee who has sexually abused a student and also the power to halt the abuse." *Id.*

Under this standard, even if Plaintiff is able to produce competent summary judgment evidence to support allegations in the Complaint that multiple District employees suspected or received information about a potential inappropriate sexual relationship between Underwood and N.J., the alleged knowledge of these unidentified employees about Underwood's misconduct cannot be imputed to the District for purposes of establishing Title IX liability.

Further, Defendant Underwood's knowledge of his own misconduct cannot be imputed to Perryton ISD.  The  Fifth Circuit has determined "Title IX does not impose liability on a school district when the only employee or representative of the district with actual knowledge of the molestation was the perpetrator himself, even if the perpetrator had authority to institute corrective measures on behalf of the district to end the discrimination by other individuals or in the schools programs." *Salazar v. S. San Antonio Indep. Sch. Dist*., 953 F.3d 273, 275 (5th Cir. 2017).

**2.    Actual notice of abuse.**

Despite numerous allegations in the Complaint related to notice of an inappropriate relationship between Defendant Underwood and N.J., the bulk of the unsupported allegations included in the Complaint refer to conduct that is not sexual in nature. Plaintiff cannot establish actual notice of an inappropriate relationship for Title IX liability based on other types of unprofessional behavior – "actual knowledge" means that an appropriate school official had

knowledge of specific sexual incidents by a specific offender. *See generally Davis v. Monroe County Sch. Bd.*, 526 U.S. 629, 646-647 (1999) (stating that recipients may be liable when they are deliberately indifferent to "known acts" of sexual harassment). An appropriate district official must have actual knowledge of facts demonstrating a substantial risk of serious harm. *See Alegria v. State of Texas*, Civ. A. No. G-06-0212, 2007 WL 3256586 at *9 (S.D. Tex., Nov. 2, 2007) (citing *Rosa H. v. San Elizario Sch. Dist.*, 106 F.3d 648, 658 (5th Cir. 1997)).

Vague concerns about "inappropriate" or possibly suggestive behavior are insufficient to show notice of sexual abuse. In *Gebser*, the Supreme Court held that the principal's prior knowledge of sexually suggestive comments by the teacher was "plainly insufficient" to alert the principal to the possibility of a sexual relationship between the teacher and the plaintiff. *Gebser*, 524 U.S. at 291; *see also Doe v. St. Francis Sch. Dist.*, 694 F.3d 869, 872 (7th Cir. 2012) (holding that there was no "actual knowledge" of a relationship between an 8th grade student and a teacher despite reports by other teachers that they suspected an "improper" relationship between the teacher and the student; "to know that someone suspects something is not to know the something and does not mean the something is obvious"); *Doe v. Northside Indep. Sch. Dist.*, 884 F.Supp.2d 485, 497 (W.D. Tex. 2012) (finding no actual knowledge of abuse despite allegations that teacher had "boundary" issues, hugged plaintiff, and gave chest bumps); *K.B. v. Daleville City Bd. of Educ*, 536 F. Appx. 959, 965 (11th Cir.) (allegation from students that school employee was continuously "undressing them with his eyes" was insufficient notice). Courts have also recognized that "[c]ommunications at odd hours, inappropriate counseling, unchaperoned off-campus activities, and inappropriate interactions with team members" do not provide notice that sexual harassment is occurring. *Campbell v. Dundee Community Sch.*, 661 F. Appx. 884, 888 (6th Cir. 2016).

It is undisputed that neither Plaintiff, nor N.J., reported any concerns to a District official

regarding sexual harassment or abuse by Underwood at any time prior to Underwood's arrest. In fact, Plaintiff supported Underwood and continued to commiserate with him that the rumors about Underwood and N.J. were unfounded up until the time Underwood was placed on administrative leave by the District. Appx. 272-320 (Text Messages between S.J. and Underwood).

The first instance of inappropriate contact between Defendant Underwood and N.J. occurred on March 3, 2024. Appx. 266 (S.J. Deposition Transcript at 69:4-14). That is when Defendant Underwood drove N.J. home from an out-of-town track meet at Plaintiff's request despite it being a violation of the District's verbal directive for Defendant Underwood not to be alone with N.J. Appx. 005 (Brown Affidavit at ¶¶ 15-16). N. J.'s testimony is that Underwood initiated a sexual contact with her during the ride home from the tract meet in March 2024. Appx. 442 (N.J. Deposition Transcript at 25:14-18). The District's superintendent was made aware of the possibility of a sexual relationship in April 2024, when Duce Cooper reported that N.J. and Defendant Underwood's vehicles were in the school parking lot and video evidence showed N.J. alone in Defendant Underwood's office on a Saturday. Appx. 006 (Brown Affidavit at ¶18). The superintendent responded by immediately placing Defendant Underwood on leave, contacting law enforcement and CPS, and notifying the Texas Education Agency. Appx. 006 and 028, 029 (*Id.* at ¶19; Affidavit Exhibits 8, 9)

The District was aware that Underwood violated District policy by giving N.J. a ride home from a track meet on or around March 3, 2024. Notably, this policy violation occurred at Plaintiff's direction. Appx 024 (Text message from S.J. to Underwood). Despite Plaintiff advocating for Underwood's policy violation, the District still took disciplinary action against Underwood in response to his violation of District policy and the Superintendent's verbal directive not to be alone with N.J. Appx. 005 and 026 (Brown Affidavit at ¶¶15-16 and Affidavit Exhibit 7) Specifically,

Superintendent Brown issued Underwood a written directive on March 4, 2024, "not to be alone with a female student at any time or in any situation." Appx. 026 (Affidavit Exhibit 7). A few weeks later, when the superintendent was made aware Underwood had violated the written directive, the Superintendent initiated another investigation, placed Underwood on administrative leave, and notified law enforcement and DFPS. Appx. 006 (Brown Affidavit at ₱19).

### 3.    Perryton ISD did not act with deliberate indifference.

Even if Plaintiff could establish the requisite actual notice, which it cannot, Perryton ISD was not deliberately indifferent. The Fifth Circuit has consistently held that the "deliberate indifference standard is a high one," and "[a]ctions by officials that are merely inept, erroneous, ineffective, or negligent do not amount to deliberate indifference…." *Doe on Behalf of Doe v. Dallas Indep. Sch. Dist.*, 153 F.3d 211, 219 (5th Cir. 1998). Deliberate indifference is found only where there is "an official decision by the [district] not to remedy the violation." *Gebser*, 524 U.S. 290. Even "a tragic error in judgment does not create a genuine issue of material fact as to whether [an official] acted with deliberate indifference." *Doe*, 153 F.3d at 219.

Upon receiving information that Defendant Underwood had violated Superintendent Brown's written directive that he was not to be alone with N.J., the District's superintendent responded swiftly and appropriately.  On Sunday April 21, 2024, Superintendent Brown was notified by Duce Cooper that the day before, N.J.'s car and Underwood's car were at the school at the same time. Appx. 006 (Brown Affidavit at ₱18). That same day, Brown reviewed security video footage that showed Underwood propping open an entrance to the gym, N.J. entering through that door, walking through a locker room, the gym, and the weight room and then walking up the stairs to where Underwood's office was located.  *Id.* On April 22, 2024, Brown confronted Underwood about being alone with N.J. in his office.  Underwood initially denied being with N.J. After being

confronted with the fact that Brown had a video recording of N.J. entering the building and making her way to his office, Underwood eventually admitted to being alone with N.J. in his office. Appx. *Id.* Superintendent Brown immediately placed Underwood on paid administrative leave. Brown also reported Underwood to the Ochiltree County Sheriff's Office and notified DFPS-Texas Child Protective Services.

Plaintiff may attempt to argue that the District should have acted sooner in response to reports of unprofessional conduct to other District employees. But, that is not the standard to establish deliberate indifference. A district does not act with deliberate indifference unless its response is "clearly unreasonable in light of the known circumstances." *Davis v. Monroe Cty. Bd. of Educ.*, 526 U.S. 629, 648 (1999). Courts interpret this standard to require more than a showing that the school or institution failed to respond or act reasonably. *See, e.g., Sanches v. Carrollton-Farmers Branch Indep. Sch. Dist.*, 647 F.3d 156, 167 (5th Cir. 2011) (to show deliberate indifference in a Title IX private right of action, "neither negligence nor mere unreasonableness is enough"). Even "heightened negligence" is insufficient. *Rost ex. rel. K.C. v. Steamboat Springs RE-2 Sch. Dist.*, 511 F.3d 1114, 1122 (10th Cir. 2008) (citing *Bd. of Cnty. Comm'rs v. Brown*, 520 U.S. 397, 407 (1997)). "Title IX does not require flawless investigations or perfect solutions." *Sanches,* 647 F.3d at 170; *Doe v. Dallas Indep. Sch. Dist.*, 153 F.3d 211, 218-19 (5th Cir. 1998) (negligence and ineptitude are not enough). Perryton ISD's response was far from deliberate indifference.

## C.    Defendant Perryton ISD is entitled to summary judgment on Plaintiff's claim for damages.

Plaintiff seeks unspecified actual damages as well as punitive and exemplary damages against Defendant Perryton ISD. Plaintiff has no expert testimony to support a finding of actual damages.  The discovery period for this case has expired, and Plaintiff has produced no evidence

describing an economic loss or identifying any type or amount of actual damages incurred related to any alleged harm caused by Perryton ISD.

      **1.     As a matter of law, Plaintiff cannot recover punitive or exemplary damages from Defendant Perryton ISD.**

It is well settled that Plaintiff cannot recover punitive damages, also known as exemplary damages, from Defendant Perryton ISD. Under Section 1983, the U.S. Supreme Court has held that exemplary damages cannot be recovered from a governmental entity. *City of Newport v. Fact Concerts*, 453 U.S. 247, 267 (1981); *see also Stern v. Hinds County, Miss.*, 436 F. Appx. 381 (5th Cir.2011) ("Stern cannot recover punitive damages from Hinds County under § 1983. Although punitive damages can be assessed against an individual defendant sued in his individual capacity, Stern cannot recover punitive damages from Hinds County."). Additionally, punitive damages are unavailable under Title IX. *See McGowan v. S. Methodist Univ.*, 715 F. Supp. 3d 937, 954 (N.D. Tex. 2024); *Doe v. Katy Indep. Sch. Dist.*, 427 F. Supp. 3d 870, 882 (S.D. Tex. 2019). Therefore, although Plaintiff may pursue an award of punitive damages against Defendant Underwood, no such damages are recoverable from Defendant Perryton ISD as a matter of law.

      **2.     As a matter of law, Plaintiff cannot recover any damages from Defendant Perryton ISD related to emotional distress under Title IX.**

The availability of damages for a private action under Title IX are further limited. A plaintiff may recover monetary damages or equitable relief only for intentional violations of Title IX. *Franklin v. Gwinnett County Public Schools*, 112 S. Ct. 1028, 1038 (1992). Because Title IX invokes Congress's power to place conditions on the grant of federal funds provided by the Spending Clause, U.S. Const., Art. I, § 8, cl. 1, the Court has characterized Title IX and other Spending Clause statutes as "much in the nature of a contract: in return for federal funds, the [recipients] agree to comply with federally imposed conditions." *Davis v. Monroe County Board*

*of Education*, 119 S. Ct. 1661, 1670 (1999). The Court has also held that "Title IX's contractual nature has implications for ... the scope of available remedies." *Gebser*, 118 S. Ct. at 1998. More recently, in *Cummings v. Premier Rehab Keller, P.L.L.C.*, 596 U.S. 212, 222 (2022), the U.S. Supreme Court precluded the recovery of emotional distress damages under Spending Clause statutes. District courts in this circuit apply *Cummings* to Title IX claims. *See e.g., McGowan v. Southern Methodist University*, 715 F. Supp. 3d 937, 955 (N.D. Tex. 2024). "Because emotional distress damages are not available under Title IX, Plaintiffs cannot recover damages related to pain and suffering, emotional and psychological harm, or loss of quality of life." *Id.*

Plaintiff is seeking compensatory damages for "physical/mental pain and suffering, mental anguish and emotional distress, sleeplessness, anxiety, humiliation, embarrassment, inconvenience, loss of enjoyment of life, and other non-pecuniary losses," and actual damages for "costs of counseling/therapy." Appx. 383-391 (Plaintiff's Initial Disclosures). Following *Cummings*, none of the alleged damages sought by Plaintiff are recoverable under Title IX against Defendant Perryton ISD as a matter of law. *See McGowan*, 715 F. Supp. 3d at 955.

**3.    An award of compensatory damages under Section 1983 must be based on concrete evidence.**

Although compensatory damages are available to a Section 1983 plaintiff, the U.S. Supreme Court has expressly rejected the notion that Section 1983 authorizes an award of compensatory damages based on the fact-finder's assessment of the value or importance of the substantive constitutional right which has been violated. *Memphis Cmty. Sch. Dist. v. Stachura*, 477 U.S. 299, 308 (1986). Rather, compensatory damages may be awarded only in response to proof of actual injury. *Id.*   Compensatory damages must be grounded in "concrete" damages and must be proven with some certainty. *Id.*   Unless a plaintiff can prove actual damages, a successful plaintiff is entitled to receive only nominal damages.  *Carey v. Piphus*, 435 U.S. 247, 264 (1978).

Plaintiff has produced only minimal evidence of out-of-pocket expenses or documentation of compensatory damages. In response to Defendant Perryton ISD's discovery request for information in support of Plaintiff's claim for damages, Plaintiff produced an invoice for counseling services in the amount of $260.00; otherwise, Plaintiff refers only to the non-specific general categories of damages identified in Plaintiff's initial disclosures. Appx. 390 and 400. (Plaintiff's Initial Disclosures and Interrogatory Resp. No. 17).  Further, N.J. testified that except for missing out on socializing with her friends, she has not been deprived of participation in any school activity or program, and Defendant Underwood's sexual abuse did not impact her grades. Appx. 449 (N.J. Deposition Transcript at 48:3-25). Because Plaintiff has provided evidence of only minimal actual damages, Plaintiff cannot recover actual or compensatory damages against Defendant Perryton ISD in an amount that exceeds $260.00.

**D.      Plaintiff's claims against Defendant Underwood in his official capacity are actions against the District and fail as a matter of law.**

Plaintiff's Complaint expressly raises causes of action against Defendant Perryton ISD under Section 1983 and Title IX. The Complaint also includes various causes of action against Defendant Underwood. The style of the Complaint indicates Defendant Underwood is being sued individually and in his official capacity as Athletic Director of Perryton ISD.[2] In identifying each cause of action raised against Underwood, the Complaint does not specify whether the action is brought in Underwood's individual or official capacity. The causes of action identified for Defendant Underwood include violation of 18 U.S.C. 2251(a), as well as claims for gross negligence and intentional infliction of emotional distress.

---

[2] At the time the Complaint was filed, Defendant Underwood was not employed by Perryton ISD. Underwood resigned from his position soon after the District placed him on administrative leave in April 2024. Appx. 006 (Brown Affidavit at ₱20).

"Actions for damages against a party in his official capacity are, in essence, actions against the governmental entity of which the officer is an agent." *Familias Unidas v. Briscoe*, 619 F.2d 391, 403 (5th Cir.1980). The Supreme Court has recognized that "[o]fficial-capacity suits ... 'generally represent only another way of pleading an action against an entity of which the officer is an agent.'" *Kentucky v. Graham*, 473 U.S. 159, 165 (1985) "As long as the government entity receives notice and an opportunity to respond, an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity." *Id*. at 166.

### 1.   Plaintiff cannot establish any element of 18 U.S.C. 2251(a) against Perryton ISD as a matter of law.

Without specifying if the claim is raised against Defendant Underwood in his official or individual capacity, Plaintiff's third cause of action alleges Underwood violated 18 U.S.C. Section 2251(a), which states:

> Any person who employs, uses, persuades, induces, entices, or coerces any minor to engage in, or who has a minor assist any other person to engage in, or who transports any minor in or affecting interstate or foreign commerce, or in any Territory or Possession of the United States, with the intent that such minor engage in, any sexually explicit conduct for the purpose of producing any visual depiction of such conduct or for the purpose of transmitting a live visual depiction of such conduct, shall be punished as provided under subsection (e) …

*United States v. Rider*, 94 F.4th 445, 450 (5th Cir. 2024). "[S]exually explicit conduct" includes the "lascivious exhibition of the anus, genitals, or pubic area of any person," which the Fifth Circuit defines as "a depiction which displays or brings forth to view in order to attract notice to the genitals or pubic area of children, in order to excite lustfulness or sexual stimulation in the viewer."

A defendant attempting to hold a school district liable for a violation of federal law by bringing a suit against an employee in his official capacity must do so under Section 1983, which creates a private right of action for redressing violations of federal law by those acting under color of state law. *See Migra v. Warren City Sch. Dist. Bd. of Educ.*, 465 U.S. 75, 82 (1984). Plaintiff

did not include this federal crime in the Section 1983 claim against the District. Arguably, Plaintiff intends to pursue this allegation against Underwood in his individual capacity. Regardless, in an abundance of caution, Defendant Perryton ISD asserts that Plaintiff can provide no evidence of an official policy adopted by Perryton ISD, nor a custom or practice of tolerating the unlawful conduct that is the subject of 18 U.S.C. Section 2251(a). *See Pineda*, 291 F.3d at 328. Similarly, Plaintiff can provide no evidence of any other required element to succeed on a claim against the District on this issue. Therefore, Defendant Perryton ISD is entitled to judgment as a matter of law to the extent that such a claim is asserted against Defendant Underwood in his official capacity.

**2.      Perryton ISD is immune from tort claims against Defendant Underwood in his official capacity as a matter of law.**

Governmental immunity deprives the court of subject matter jurisdiction. *Walker v. Beaumont Indep. Sch. Dist.*, 938 F.3d 724, 734 (5th Cir. 2019); *Iraheta v. Linebarger Goggan Blair & Sampson, L.L.P.*, 734 F. Appx. 216, 219 (5th Cir. 2018); *Springboards to Education, Inc. v. Houston Indep. Sch. Dist.*, No. H-16-2625, 2017 WL 7201938, at *2 (S.D. Tex. 2017). Defendant Perryton ISD asserts its governmental immunity under state law precludes the state tort claims asserted in the Complaint against Underwood in his official capacity. The Complaint asserts allegations of gross negligence and intentional infliction of emotional distress. Such claims are barred by governmental immunity and may not be raised against a school district absent legislative action.

It is well established that governmental units of the state are immune from suits based on negligence. *LeLeaux v. Hampshire-Fannett Indep. School Dist.*, 835 S.W.2d 49, 51 (Tex. 1992); *Barr v. Bernhard*, 562 S.W.2d 844, 846 (Tex. 1978); *see also Hatcher v. City of Grand Prairie*, No. 3:14-cv-432-M, 2014 WL 3893907, at *7 (N.D. Tex. Aug. 6, 2014) (citations omitted); *Kings v. Texas*, 3:10-CV-2114-K-BE, 2011 WL 271923, at *4 (N.D. Tex.) (quoting *Dallas Cnty. Mental*

*Health & Mental Retardation v. Bossley,* 968 S.W.2d 339, 341 (Tex.1998)); *Brown v. Houston Indep. Sch. Dist.*, 763 F.Supp. 905, 908 (S.D. Tex. 1991). This immunity cannot be waived unless expressly agreed to by the legislature. The only waiver of governmental immunity enacted by the Texas legislature for acts of negligence is found in the Texas Tort Claims Act ("TTCA"). Tex. Civ. Prac. & Rem. Code §101.021. The "governmental units" covered by the TTCA include school districts, which are political subdivisions of the State. *See Tooke v. City of Mexia*, 197 S.W.3d 325, 331 (Tex. 2006).

Under the TTCA in effect at the time of the events giving rise to Plaintiff's Complaint, Texas school districts are only exposed to limited liability for injuries or damages resulting from the negligent operation or use of a motor vehicle. Tex. Civ. Prac. & Rem. Code §101.051 ("Except as to motor vehicles, this chapter does not apply to a school district...."); *see also Bates v. Dallas Indep. Sch. Dist.*, 952 S.W.2d 543, 551 (Tex. App.—Dallas 1997, writ denied). Beyond this limited exception, the common law Doctrine of Sovereign Immunity continues to preclude negligence suits against a school district defendant. *See City of Gladewater v. Pike*, 727 S.W.2d 514, 519 (Tex. 1987).

The TTCA waives immunity for a school district for personal injury proximately caused by the wrongful act or omission or the negligence of an employee acting within his scope of employment *if* the personal injury arises from the operation or use of a motor-driven vehicle. *See Los Fresnos Consol. ISD v. Rivas*, No. 13-04-168-CV, 2005 WL 1981494, at *6 (Tex. App.—Corpus Christi, Aug. 18, 2005, pet. denied). Otherwise, a school district retains its immunity from suit for any tort action that does not constitute the use of a motor vehicle. *See id.* (no waiver of immunity for negligent hiring, negligent retention, or negligent entrustment claims); *Travis v. City of Grand Prairie,* 654 F. Appx. 161, 166 (5th Cir. 2016) (no immunity waiver for assault, battery,

false imprisonment, or any other intentional tort); *Umoren v. Plano Ind. Sch. Dist.*, 457 F. Appx. 422, 425 (5th Cir. 2012) (no waiver of immunity for negligent or intentional infliction of emotional distress claims).

Plaintiff has not alleged and cannot produce any evidence that she was injured as the result of the negligent operation or use of a District motor vehicle. Defendant Perryton ISD takes no position on the viability of Plaintiff's tort claims against Defendant Underwood in his individual capacity; however, Plaintiffs' claims of negligence, or any other tort-based action against Perryton ISD are precluded by governmental immunity, thereby depriving the Court of subject matter jurisdiction for these claims. Defendant Perryton ISD is entitled to judgment as a matter of law to the extent such tort claims are asserted against Defendant Underwood in his official capacity.

## **PRAYER**

WHEREORE, PREMISES CONSIDERED, Defendant Perryton ISD prays that the Court grant its Motion for Summary Judgment, dismiss all of Plaintiff's claims against Perryton ISD, enter a take-nothing judgment in favor of Perryton ISD, dismiss Perryton ISD with its costs, and for such other and further relief to which Defendant Perryton ISD may show itself to be justly entitled, either at law or in equity, general, or special.

Respectfully submitted,

/s/ *Slater C. Elza*

Slater C. Elza
State Bar No. 24000747
slater.elza@uwlaw.com
Fred A. Stormer
State Bar No. 24013579
fred.stormer@uwlaw.com
**UNDERWOOD LAW FIRM P.C.**
P.O. Box 9158
Amarillo, TX 79105
Tel:  (806) 376-5613
Fax:  (806) 379-0316

Janet Sobey Bubert
State Bar No. 24036281
janet.bubert@uwlaw.com
**UNDERWOOD LAW FIRM, P.C.**
600 Bailey Avenue, Suite 200
Fort Worth, TX  76107
Tel: (817) 885-7529
Fax: (817) 439-9922

ATTORNEYS FOR DEFENDANT,
PERRYTON INDEPENDENT SCHOOL DISTRICT

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the above and foregoing document was served on all parties of record via the Court's Electronic Filing System on the 27th day of March, 2026.

/s/ *Slater C. Elza*
Slater C. Elza