**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS**

| | | |
|---|---|---|
| 1) | **S.J., as parent, Conservator, and Next Friend of N.J.,** | § § § |
| | **Plaintiff.** | § |
| **v.** | | § § |
| 2) | **PERRYTON INDEPENDENT SCHOOL DISTRICT, and** | § § § § |
| 3) | **COLE UNDERWOOD, individually and in his official capacity as Athletic Director of Perryton ISD,** | § § § § § § |
| | **Defendants.** | § § |

**Case No. 2:24-CV-00168-Z**

**PLAINTIFF'S REPLY TO DEFENDANT'S RESPONSE
TO PLAINTIFF'S MOTION FOR ADVERSE INFERENCE
<u>JURY INSTRUCTION BASED ON SPOILATION OF CRITICAL EVIDENCE</u>**

Plaintiff, S.J., as parent, Conservator, and Next Friend of N.J. ("Plaintiff" or "Victim"), and for its *Reply* to Defendant Perryton Intendent School District's ("PISD") *Response to Plaintiff's Motion for Adverse Inference Jury Instruction Based on Spoliation of Evidence* ("PISD's *Response*"), alleges and states:

**I.    PISD'S STATEMENT OF RELEVANT FACTS AND PROCEDURAL HISTORY CONTAINS BLATANTLY FALSE ALLEGATIONS**

First, at numbered paragraph 9 of Defendant's *Response*, PISD provides that "Wheeler had deleted ***some*** text messages with Underwood." (ECF 55 at p. 3, ¶ 9) (emphasis added). This could not be further from the truth and is provided with an intent to deceive this Court and downplay the sheer mass of text messages deleted by Sandi Wheeler ("Wheeler"), PISD Junior High Principal. As identified in Plaintiff's *Motion for Adverse Inference Jury Instruction Based on Spoliation of Evidence* ("Plaintiff's *Motion*"), Wheeler deleted *significant* periods of text messages, including,

*as a brief example*, all messages prior to December 3, 2023, December 6, 2023 through December 31, 2023, January 2, 2024 through January 7, 2024, January 9, 2024 through January 15, 2024, January 20, 2024 through February 20, 2024, February 23, 2024 through March 1, 2024, March 5, 2024 through March 8, 2024, etc. (ECF 46, p. 4, ⁋ 13(a); ECF 47, pp. 43-139). A review of the messages produced reveals that Wheeler and Defendant Cole Underwood ("Underwood") texted nearly *every* day and into the late hours of the day, and thus, much more than "some" were deleted.

Second, at numbered paragraph 15 of PISD's *Response*, PISD provides that "Plaintiff's counsel **made no inquiries or attempts** to initiate a conference with [PISD's] counsel to discuss any concerns about alleged spoilation of ESI." (ECF 55 at p. 5, ⁋ 15) (emphasis added). Candidly, this is a blatant misrepresentation by PISD's counsel. Once it was discovered by Plaintiff's counsel on September 24, 2025 that Wheeler deleted text messages with Underwood of her own volition and after being repeatedly instructed not to, PISD's counsel provided at the conclusion of Wheeler's deposition (when said issue was naturally discussed and Plaintiff's counsel indicated there was an obvious "spoilation" issue that would need to be addressed) that it would attempt to retrieve those messages and supplement if necessary.  These talks later included that text messages between Underwood and his then-wife Dacey Smith/Underwood were also not produced originally. This same discussion occurred several times over the next few months at subsequent depositions and Plaintiff's counsel was repeatedly given the same response, that PISD had not recovered the messages. And thus, there was and is nothing left to confer about as the deleted text messages are permanently gone.

## II.    FED. R. CIV. P. 37(E) DOES NOT ALTER THE APPLICABLE ANALYSIS

PISD's threshold argument is that Plaintiff's *Motion* should fail because it references the Court's inherent authority, *inter alia*, rather than relying exclusively on FED. R. CIV. P. 37(e). But

that framing does not meaningfully alter the analysis. Plaintiff does not dispute that Rule 37(e) governs spoliation of electronically stored information ("ESI"). Rather, the Rule simply formalizes the same underlying inquiry long applied in this Circuit and cited by Plaintiff in its *Motion*.

The Advisory Committee Notes explain the 2015 Amendment was intended to prevent courts from authorizing adverse inference instructions based merely on negligence or gross negligence alone. Something that courts in the Fifth Circuit have already consistently barred. *See Russell v. Univ. of Tex. of Permian Basin*, 234 F. App'x 195, 208 (5th Cir. 2007) (stating "[m]ere negligence is not enough to warrant an instruction on spoliation").

Importantly, after the amendment, the Fifth Circuit still "has not clarified whether its prior spoliation jurisprudence has been abrogated or otherwise amended pursuant to the amendment of Rule 37(e)." *Jim S. Adler, P.C. v. McNeil Consultants, LLC*, 2023 WL 2699511, at \*11 (N.D. Tex. Feb. 15, 2023) (quoting *Balancecxi, Inc. v. Int'l Consulting*, 2020 WL 6886258, at \*12 n.8 (W.D. Tex. Nov. 24, 2020)); See also *Estate of Esquivel v. Brownsville Indep. Sch. Dist.*, 2018 WL 10150655, at \*8 (S.D. Tex. June 27, 2018).  This uncertainty is in large part because:

> [T]he Fifth Circuit's only decision citing or applying amended Rule 37(e) laid out the 'bad faith' and Rule 37(e)(2) 'intent to deprive' standards together, suggesting . . . for ESI spoliation, ***they overlap or even are interchangeable.***

*See Jim S. Adler,* at \*12 (quoting *Eagan v. Walgreen Co.*, 2022 WL 683636, at \*3 (5th Cir. Mar. 8, 2022)) (Emphasis added).

PISD admits these actions were intentional. *Plaintiff's Motion* clearly establishes the four predicate elements of Rule 37(e), and focused directly on the "bad-faith" or "intent to deprive" analysis for the elevated adverse-inference instruction.  Out of an abundance of caution, when applying the facts to the Rule 37(e) framework, Plaintiff easily shows that: (1) there is ESI that a party was obligated to preserved; (2) that ESI has been lost; (3) the ESI loss resulted from a party's

3

failure to take reasonable steps to preserve it; and (4) the evidence cannot be restored or replaced. *See Balancecxi, Inc*, at \*12; *BHI Energy I Power Servs. LLC v. KVP Holdings, LLC*, 730 F. Supp. 3d 308, 319–20 (N.D. Tex. 2024). To further establish the overlap, the Rule 37(e) elements echo the traditional spoliation framework: "A spoliation claim has three elements: (1) the spoliating party must have controlled the evidence and been under an obligation to preserve it at the time of destruction; (2) the evidence must have been intentionally destroyed; and (3) the moving party must show that the spoliating party acted in bad faith." *Coastal Bridge Co., L.L.C. v. Heatec, Inc.*, 833 Fed. Appx. 565, 574 (5th Cir. 2020).

### A. The Court Retains Broad Discretion Under Rule 37(e)

Once the predicate elements are satisfied, Rule 37(e) authorizes a range of remedies calibrated to the nature of the spoliation. Where a party establishes prejudice, the Court "may order measures no greater than necessary to cure the prejudice." *See* FED. R. CIV. P. 37(e)(1). Where the evidence shows that a party acted "with the intent to deprive another party of the information's use in the litigation," the Court may impose more severe sanctions, including an adverse inference instruction. *See* Fed. R. Civ. P. 37(e)(2). The Advisory Committee Notes make clear that even under subsection (e)(1), "much is entrusted to the court's discretion" and "[t]here is no all-purpose hierarchy of the severity of various measures." Courts may, among other things, permit the jury to hear evidence regarding the loss of information or provide instructions guiding the jury's evaluation of the missing evidence. Importantly, Rule 37(e)(2) "does not prohibit" a court from allowing the jury to consider the loss of evidence and its likely significance, even absent a formal adverse inference instruction.

### III. RULE 37(E)'S PREDICATE ELEMENTS HAVE BEEN SATISFIED

4

Before analyzing the "intent to deprive" or "bad-faith" element under 37(e)(2), PISD asserts that their actions fall entirely outside of spoliation, in specifically that Plaintiff failed to: "present evidence (1) that the unproduced ESI should have been retained because it was relevant to Plaintiff's claims; (2) that Perryton ISD failed to take reasonable steps to preserve relevant ESI; and (3) failed to prove that the ESI could not be replaced or restored through additional discovery." (ECF. 55, p. 8).  As shown below, PISD's claims are incorrect.

### A.    The Deleted Text Messages Were Clearly Relevant

PISD asserts that because the contents of Wheeler and Underwood's messages are now unknown, Plaintiff cannot prove their relevance. That argument is circular. The contents are unknown precisely because Wheeler deleted them, and a party cannot create evidentiary uncertainty through spoliation and then rely on that uncertainty as a defense. As one court in this Circuit recognized when rejecting the same argument:

> Defendants claim that Plaintiffs cannot show that any relevant evidence has indeed been lost and thus there can be no showing of prejudice. ***But to allow such an argument would be to allow every spoliator to claim lack of evidence implies lack of relevance.***

*Owens v. Bd. of Supervisors of Louisiana State Univ. & Agric. & Mech. Coll.*, 695 F. Supp. 3d 750, 760–61 (M.D. La. 2023) (emphasis added).

Plaintiff's *Preservation Notice*, along with PISD's internal litigation hold, explicitly directed Wheeler to preserve "**<u>anything</u>** <u>that you have that is related to Cole and the minor student in the allegation (text messages, emails in your personal email account, notes, pictures, etc…) and</u> **<u>don't delete it</u>**." (ECF 47, p. 8) (emphasis added). Employees were further instructed to "upload everything that you have, **even if you wonder if it's relevant**." (ECF 47, p. 40) (emphasis added).

There is no dispute the text messages "should have been retained." These were the exact category of communications Plaintiff's *Preservation Notice* identified. PISD now attempts to

undercut the severity by claiming Wheeler's subsequent testimony provided no basis that "reasonably supports a determination that the deleted messages were relevant." Wheeler admitted these texts were bad for her "professionalism," and could "destroy her reputation" or have an "adverse effect on [her] employment." (ECF 47, p. 140; ECF 56, p. 19).  Most importantly, the period immediately following the March 4, 2024 Reprimand Letter issued by PISD to Underwood is ***MISSING*** (March 5 through March 8, 2024).  It is truly not believable to claim there are no relevant texts between Wheeler and Underwood in the days following the Reprimand for example.

Rule 37(e) asks whether the ESI "should have been preserved," not whether the spoliator later claims the ESI was irrelevant. That determination cannot be made post hoc by the individual who deliberately deleted the messages. If it could, this Court would establish a dangerous precedent, i.e., if a party is in possession of potentially negative evidence, all it needs to do is delete said evidence and then claim that what was deleted was not relevant.

**B.      PISD Failed to Take Reasonable Steps to Preserve the ESI**

**i.      PISD Relies on Unenforced Policies Instead of Actual Compliance**

PISD's argument reflects a consistent theme appearing throughout the entirety of this case and throughout PISD's defense: that the mere existence of a policy, without enforcement, oversight, or consequences, is enough to satisfy its legal obligations and absolve PISD of all liability. Put simply – we had policies in place, our employees just chose not to follow them – however, that alone is not a defense. That same failure is what brought PISD into this litigation, and it advances the same theory here by claiming that sending a litigation hold email, without more, satisfies Rule 37(e)'s "reasonableness." It does not.

In fact, Courts have directly rejected that position. "A party's discovery obligations do not end with the implementation of a 'litigation hold' – ***to the contrary, that's only the beginning***."

*Owens*, 695 F. Supp. 3d 750 at 758 (emphasis added). A party must oversee compliance and take affirmative steps to preserve relevant evidence. *Id.*  PISD did neither, instead, PISD left employees to decide for themselves what to preserve and what to delete. (ECF 47, p. 178).

Most notably, PISD asks this Court to accept that sending an email – and then taking no further action for seven months, until only "a few days" before the production deadline – constitutes "reasonable steps." During that time, PISD did not monitor the production, did not attempt to back up or preserve the production, and took no other measures. This is yet another example of PISD employing passive noncompliance. PISD's position would allow any litigant to avoid spoliation consequences by simply pointing to an unenforced email. In no Circuit, and certainly not the Fifth, is that the standard.

        ii.        **PISD Left Preservation to Underwood's Closest Ally and Known "Confidant," Who Also Conspired with Underwood to Delete Messages**

PISD's failure is particularly egregious because Wheeler is not an immaterial witness. Wheeler admitted she was Underwood's "confidant," a fact Superintendent Greg Brown likewise confirmed, and that she and underwood regularly exchanged sensitive information, including allegations against Underwood involving N.J. (ECF 47, pp. 155, 160, 163, 173-74, 182). PISD knew, well before any deletion occurred, that Wheeler was a key witness with unique, highly relevant information. In addition to Underwood's confidant, she was also a PISD administrator and policy maker who had received a plethora of reports regarding Underwood and N.J.

The Fifth Circuit provides that a party's duty to preserve affirmatively requires the preservation of evidence from "employees likely to have relevant information—the ***'key players'*** in the case," and applies to "unique, relevant evidence that might be useful to the adversary." *Owens*, at 757 (quoting *Zubulake v. UBS Warburg, LLC,* 220 F.R.D. 212, 217 (S.D.N.Y.2003)) (emphasis added); See also *In re Ethicon, Inc. Pelvic Repair Sys. Prod. Liab. Litig.*, 299 F.R.D. 502, 517 (S.D.W. Va. 2014). If anyone in this matter qualifies as a ***"key player,"*** it is certainly

7

Wheeler. Yet, PISD allowed Wheeler to review and produce her own text messages without any supervision, thereby allowing her to determine what is and is not relevant to Plaintiff's case, a clearly self-serving action for someone who PISD admits did so to protect herself. (ECF 47, pp. 170, 178). Astonishingly, PISD entrusted preservation to the very person who was "always going to take [Underwood's] side." (ECF 47, p. 124). This is yet another example of PISD's deliberate indifference in this matter.

### iii.    PISD Admitted the ESI Cannot be Replaced or Restored

In a bizarre argument, PISD argues that Plaintiff failed to prove the deleted messages could not be restored or replaced. That position cannot be reconciled with PISD's own admissions. Both Wheeler and PISD have acknowledged that ***the text messages are permanently irrecoverable***, a fact which Plaintiff already knew. (ECF 55, p. 4, ¶¶ 10-12). PISD admitted that Verizon and Apple both confirmed the messages could not be restored once deleted from the device. (*Id*.).  Having taken that position, PISD cannot attempt to fault Plaintiff for not pursuing efforts to recover something that everyone agrees cannot be recovered. Further, it is not Plaintiff's burden to recover evidence PISD had a duty to preserve. Defendant cannot shift its preservation failure onto Plaintiff and then argue that Plaintiff should have done more to retrieve what PISD allowed to be destroyed.

Defendant's suggestion that the information could be "replaced" through depositions also misunderstands Rule 37(e). "[A]llowing a deposition of a witness is *not* what Rule 37(e) meant by restored or replaced through additional discovery. The question is whether the *electronically stored information* can be restored or replaced." *DR Distributors, LLC v. 21 Century Smoking, Inc.*, 513 F. Supp. 3d 839, 980 (N.D. Ill. 2021)(emphasis in original); See also *Jim S. Adler*, at n.9.  Such substitutes are "neither reliable nor fair to the party who did not destroy the missing evidence." *Ringers Techs. LLC v. Harmer*, 2020 WL 6385813, at *6 (S.D. Tex. Aug. 17, 2020).

### III.    WHEELER ACTED WITH AN INTENT TO DEPRIVE

Courts have "substantial leeway to determine intent" based on circumstantial evidence, witness credibility, motives, and other facts because "direct evidence of intent rarely exists." *Lou v. Lopinto*, 2022 WL 16685539, at *7 (E.D. La. Nov. 2, 2022). Accordingly, since courts cannot "examine [a party's] head," courts examine factors such as: (1) the timing of the destruction, (2) the method of deletion, (3) selective preservation, and (4) whether the conduct violated known preservation obligations. *See Bistrian v. Levi*, 448 F. Supp. 3d 454, 475–76 (E.D. Pa. 2020). However, sometimes the intent inquiry becomes largely academic. Where a party "knowingly and intentionally destroyed evidence they were obligated to preserve," courts have recognized there is "no question that the Defendants' actions were taken in bad faith.". *Balancecxi, Inc. v. Int'l Consulting*, 2020 WL 6886258, at *12 n.8. This is precisely that situation.

Wheeler admitted she intentionally deleted text messages she was obligated to preserve. (ECF 47, p. 147). In fact, she conspired with Underwood in writing during the relevant time period to delete text messages because they would be harmful. (ECF 47, pp. 123-124). That alone satisfies Rule 37(e)(2)'s "intent to deprive" standard. The Fifth Circuit has made clear that an adverse inference is appropriate where a party "intentionally destroy[ed] important evidence in bad faith" because it was unfavorable. *Whitt v. Stephens County*, 529 F.3d 278, 284 (5th Cir. 2008)(quoting *Russell*, at 207). The surrounding facts only reinforce. Wheeler was not a peripheral employee and she repeatedly assured Underwood that she was "in [his] corner" and "always [had his] back," and, most telling, on the eve of his arrest, told him: "***I'm always going to take your side. If we don't protect each other, we don't have anything.***" (ECF 47, pp. 86, 118, 123-24). These are not accidental deletions. They are coordinated, purposeful acts to shield damaging communications.

Defendant's reliance on *Owens* is misplaced. There, the court declined to find intent because it was unknown ***who*** deleted the data or ***when***, and the loss was attributed to "ineffective

communication with [IT] personnel" who, effectively under a theory of *res ipsa loquitor*, must have accidentally wiped the phones data. *Owens*, at 758-59. Here, there is no uncertainty. Wheeler admitted she deleted the messages, knew she had a duty to preserve them, and did so anyway. This case involves targeted deletions by the "confidant" during the most critical period.

## IV.    PLAINTIFF HAS CLEARLY SHOWN PREJUDICE

Defendant's prejudice argument mirrors its relevance argument: Plaintiff cannot establish prejudice because the contents of the deleted messages are unknown. That argument fails for the same reason. The contents are unknown because they were destroyed. Accepting PISD's position would permit a party to intentionally destroy evidence and then escape consequences by arguing the opposing party cannot prove what was deleted. Rule 37(e) does not permit that result.

Again, as *Owens* explained:

> "***There is no doubt that Plaintiffs are prejudiced by the loss of the text messages***. **Prejudice exists when spoliation prohibits a party from presenting evidence that is relevant to its underlying case**… Defendants claim that Plaintiffs cannot show that any relevant evidence has indeed been lost and thus there can be no showing of prejudice. But to allow such an argument would be to allow every spoliator to claim lack of evidence implies lack of relevance."

*See Owens, at* 760–61. See also *See Jim S. Adler*, at *10 (quoting *Hollis v. CEVA Logistics U.S., Inc.*, 603 F. Supp. 3d 611, 622 (N.D. Ill. 2022) ("[i]f intent is established, then prejudice is presumed" or "inferred.).

That reasoning applies directly here. Plaintiff is left with an incomplete record of communications between Underwood and his known confidant, the very person PISD understood to be exchanging sensitive information with him. Neither Plaintiff nor the Court can know what was deleted, how much was destroyed, or how damaging those communications would have been. That uncertainty in itself is prejudice.

Respectfully submitted,

/s/ *Tyler. L. Gentry*
Tyler L. Gentry, OBA No. 32400
Kyle Goodwin, OBA No. 17036 and
SBN 24117975
GOODWIN / LEWIS / CASON / GENTRY
420 NW 6th St., 2nd FL
Oklahoma City, OK 73102
P: (405) 900-5700
tgentry@goodwinlewis.com
kgoodwin@goodwinlewis.com

and

MAYFIELD HEINRICH RAHLFS
WEABER & PARSONS, LLP
Brian P. Heinrich, SBN 09382320
320 S. Polk, Suite 1000
Amarillo, Texas 79101
(806) 242-0152 – Telephone
(806) 242-0159 – Fax
brian@mhrwp.com

***Attorneys for Plaintiff***

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the above and foregoing document was served on all parties of record via the Court's Electronic Filing System on the 1st day of May 2026.

/s/ *Tyler. L. Gentry*
Tyler L. Gentry