**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF TEXAS**
**AMARILLO DIVISION**

| | | |
|---|---|---|
| **S.J., as Parent, Conservator,** <br> **and Next Friend of N.J.,** | § <br> § <br> § | |
| **Plaintiff,** | § <br> § | |
| **v.** | § <br> § | |
| **PERRYTON INDEPENDENT** <br> **SCHOOL DISTRICT, and** | § <br> § <br> § | **CASE NO. 2:24-cv-00168-Z** |
| **COLE UNDERWOOD,** <br> **Individually and in his official** <br> **capacity as Athletic Director of** <br> **Perryton ISD,** | § <br> § <br> § <br> § <br> § | |
| **Defendants.** | § <br> § | |

---

**REPLY IN SUPPORT OF DEFENDANT PERRYTON INDEPENDENT SCHOOL**
**DISTRICT'S MOTION FOR SUMMARY JUDGMENT**

---

Slater C. Elza
State Bar No. 24000747
slater.elza@uwlaw.com
Fred A. Stormer
State Bar No. 24013579
fred.stormer@uwlaw.com
**UNDERWOOD LAW FIRM P.C.**
P.O. Box 9158
Amarillo, TX 79105
Tel: (806) 376-5613
Fax: (806) 379-0316

Janet Sobey Bubert
State Bar No. 24036281
janet.bubert@uwlaw.com
**UNDERWOOD LAW FIRM, P.C.**
600 Bailey Avenue
Suite 200
Fort Worth, TX  76107
Tel: (817) 885-7529
Fax: (817) 439-9922

ATTORNEYS FOR DEFENDANT
PERRYTON INDEPENDENT SCHOOL DISTRICT

# TABLE OF CONTENTS

Table of Contents.................................................................................................................... i

Table of Authorities ............................................................................................................... ii

I.     Introduction ................................................................................................................ 1

II.    Reply to Plaintiff's Response to Facts Supporting Summary Judgment ............................ 2

III.   Plaintiff Has Failed to Raise a Triable Fact Issue as to Actual Notice and
       Deliberate Indifference Under Title IX................................................................................ 7

IV.    Plaintiff Has Failed to Raise a Triable Fact Issue as to Municipal Liability .................... 13

   A.   Perryton ISD Had Official Policies in Place Addressing Sexual Harassment and
        Abuse ............................................................................................................................. 13

   B.   Plaintiff Fails to Establish Perryton ISD had an Unofficial, Widespread Custom or
        Practice of Permitting the Sexual Abuse of Its Students by Employees.......................... 14

   C.   Plaintiff's Claims that N.J.'s Constitutional Violation Resulted from Perryton
        ISD's Custom of Failing to Adequately Hire, Train or Supervise its Employees, or
        Implement Perryton ISD Policy, Fail as a Matter of Law ............................................... 18

       i.    Adequacy of Hiring Procedures...................................................................................... 18

       ii.   Adequacy of Training and Supervision ......................................................................... 19

       iii.  Adequacy of Implementation or Enforcement.............................................................. 20

   D.   No Policy or Custom of the Perryton ISD Board of Trustees was a Moving Force
        behind N.J.'s Constitutional Harm as a Matter of Law ................................................... 21

   E.   Plaintiff's Equal Protection Claim.................................................................................... 24

   F.   Plaintiff Has No State Law Tort Claims Against Perryton ISD as a Matter of Law ........ 24

V.     Prayer ........................................................................................................................ 25

**TABLE OF AUTHORITIES**

Page(s)

Cases

*A.W. v. Humble Indep. Sch. Dist.*,
  25 F. Supp. 3d 973 (S.D. Tex. 2014) ................................................................................ 14, 24

*Bd. of Cnty. Comm'rs of Bryan Cnty., Okl. v. Brown*,
  520 U.S. 397 (1997) .................................................................................................................. 18

*Connick v. Thompson*,
  563 U.S. 51 (2011) .................................................................................................................... 20

*Davis v. Monroe Cnty. Bd. of Educ.*,
  526 U.S. 629 (1999) ................................................................................................................ 8, 11

*Doe v. Beaumont I.S.D.*,
  8 F. Supp. 2d 596 (E.D. Tex. 1998) ......................................................................................... 24

*Doe v. Dallas Indep. Sch. Dist*,
  153 F.3d 211 (5th Cir. 1998) ................................................................................................... 8, 14

*Doe v. Edgewood Indep. Sch. Dist.*,
  964 F.3d 351 (5th Cir. 2020) .................................................................................... 8, 13, 18, 21

*Doe v. Katy Indep. Sch. Dist.*,
  427 F. Supp. 3d 870 (S.D. Tex. 2019) ...................................................................................... 10

*Doe v. Kerrville Indep. Sch. Dist.*,
  No. 24-50394, 2025 WL 2238720 (5th Cir. Aug. 6, 2025) .......................................... 21, 22, 23

*Doe v. Taylor Indep. Sch. Dist.*,
  15 F.3d 443 (5th Cir. 1994) ...................................................................................................... 24

*Eugene v. Alief Indep. Sch. Dist.*,
  65 F.3d 1299 (5th Cir.1995) ................................................................................................. 14, 15

*Fennell v. Marion Indep. Sch. Dist.*,
  804 F.3d 398 (5th Cir. 2015) ................................................................................................. 11, 12

*Forsyth v. Barr*,
  19 F.3d 1527 (5th Cir.1994) ....................................................................................................... 2

*Fraire v. City of Arlington*,
  957 F.2d 1268 (5th Cir. 1992) ................................................................................................... 21

*Gagne v. City of Galveston*,
    671 F. Supp. 1130 (S.D. Tex. 1987) ........................................................................ 15

*Gebser v. Lago Vista Indep. Sch. Dist.*,
    524 U.S. 274 (1998) ................................................................................... 7, 8, 9

*Gros v. City of Grand Prairie*,
    209 F.3d 431 (5th Cir. 2000).................................................................................. 19

*Haywood v. City of El Paso, Tex*,
    761 F.Supp.3d 975 (2025)......................................................................................... 2

*J.T. v. Uplift Education*,
    679 F.Supp. 3d 540 (N.D. Tex. 2023).................................................................... 21

*J.T. v. Uplift Education*,
    No. 23-10773, 2024 WL 5118486 (5th Cir. 2024)...................................... 7, 10, 11, 12

*Johnson v. Deep E. Texas Reg'l Narcotics Trafficking Task Force*,
    379 F.3d 293 (5th Cir. 2004).................................................................................. 14

*M.E. v. Alvin Indep. Sch. Dist.*,
    840 F. App'x 773 (5th Cir. 2020) .......................................................................... 10

*Menzia v. Austin Indep. Sch. Dist.*,
    47 F.4th 354 (5th Cir. 2022)................................................................................... 11

*Munoz v. Orr*,
    200 F.3d 291 (5th Cir. 2000).................................................................................. 24

*Peterson v. City of Fort Worth*, Tex.,
    588 F.3d 838 (5th Cir. 2009)............................................................................ 15, 16

*Pineda v. City of Hou,*
    *ston*, 291 F.3d 325 (5th Cir. 2002) ............................................................ 14, 16, 17

*Porto v. Town of Tewksbury*,
    488 F.3d 67 (1st Cir. 2007) .................................................................................... 11

*Ramie v. City of Hedwig Vill., Tex.*,
    765 F.2d 490 (5th Cir. 1985).................................................................................. 15

*Rel. Doe v. Dallas Indep. Sch. Dist.,*
    220 F.3d 380 (2000) ............................................................................................... 12

*Rivera v. Bo,*
    *nner*, 952 F.3d 560 (5th Cir. 2017) ....................................................................... 19

*Rosa H. v. San Elizario Indep. Sch. Dist.*,
   106 F.3d 648 (5th Cir. 1997).................................................................................. 7, 10

*Sanches v. Carrollton-Farmers Branch Indep. Sch. Dist.*,
   647 F.3d 156 (5th Cir. 2011).................................................................................. 8, 11

*Stapleton v. Lozano*,
   125 F.4th 743 (5th Cir. 2025)................................................................................ 18, 20

*Valle v. City of Houston*,
   613 F.3d 536 (5th Cir. 2010).................................................................................. 18, 19

*Webster v. City of Houston*,
   735 F.2d 838 (5th Cir. 1984)....................................................................................... 21

*Zarnow v City of Wichita Falls Tex*,
   614 F.3d 161 (5th Cir. 2010)............................................................................ 2, 7, 9, 14

Statutes

18 U.S.C. Section 2251............................................................................................................ 1

42 U.S.C. Section 1983............................................................................................................ 1

Texas Civil Practice & Remedies Code Section 118.001............................................................ 24

Other Authorities

HB 4623................................................................................................................................ 24

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION

| | | |
|---|---|---|
| S.J., as Parent, Conservator, and Next Friend of N.J., | § § § | |
| **Plaintiff,** | § § | |
| v. | § § | |
| PERRYTON INDEPENDENT SCHOOL DISTRICT, and | § § § | CASE NO. 2:24-cv-00168-Z |
| COLE UNDERWOOD, Individually and in his official capacity as Athletic Director of Perryton ISD, | § § § § § | |
| **Defendants.** | § § | |

**REPLY IN SUPPORT OF DEFENDANT PERRYTON INDEPENDENT SCHOOL DISTRICT'S MOTION FOR SUMMARY JUDGMENT**

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW Defendant Perryton Independent School District ("Perryton ISD" or "District"), and files this Reply in Support of Perryton Independent School District's Motion for Summary Judgment, and in support thereof, would show the following:

## I. Introduction

This case requires the Court to determine whether Perryton ISD is liable under Title IX, 42 U.S.C. Section 1983, state law negligence claims, or a purported violation of 18 U.S.C. Section 2251 for the tragic abuse suffered by N.J. at the hands of a District employee, Defendant Cole Underwood ("Underwood). ECF No. 1 at 21-29. What happened to N.J. was tragic and unacceptable. But the legal standards for these claims create a high hurdle for recovery against the

District which Plaintiff is unable to clear.

Plaintiff has proffered facts that do not accurately represent the summary judgment evidence and has made conclusory statements, improbable inferences, and engaged in unsupported speculation. "Mere 'improbable inferences' and 'unsupported speculation' are not proper summary judgment evidence." *Zarnow v City of Wichita Falls Tex*, 614 F.3d 161, 169 (5th Cir. 2010) *citing Forsyth v. Barr*, 19 F.3d 1527, 1533 (5th Cir.1994). *See also Haywood v. City of El Paso, Tex*, 761 F.Supp.3d 975, 998-9 (2025) ("In federal court, it is black letter law that a plaintiff must provide more than "allegations" and "unsubstantiated assertions" to defeat summary judgment on a claim.") (internal citations omitted).

## II. Reply to Plaintiff's Response to Facts Supporting Summary Judgment

1.      Plaintiff's attempt to dispute the facts identified by Perryton ISD in support of the District's motion for summary judgment does not preclude a determination by the Court that Perryton ISD is entitled to judgment as a matter of law. First, Perryton ISD objects to a number of statements included in Plaintiff's "Response to Defendant's Factual Background" (*see* ECF 57 at 2-7) because the purported factual allegations do not accurately represent the evidence cited by Plaintiff. Rather, Plaintiff's purported "disputes" often embellish or misconstrue an individual's testimony or constitute unreasonable and unsupported speculation. Speculative or conclusory factual allegations cannot be relied upon to create a fact issue in an effort to avoid summary judgment. *Zarnow*, 614 F.3d at 169.

2.      Other "disputes" asserted by Plaintiff are not sufficiently relevant to establish a fact issue that would preclude summary judgment in favor of Perryton ISD. For example, at Paragraph 3, Plaintiff "disputes" he was friends with Underwood in deposition testimony, but he does not and cannot dispute that the two communicated frequently and socialized at school events and other

times. ECF No. 49 at 2-3. Neither can Plaintiff dispute that he repeatedly defended Underwood's actions related to N.J. in response to concerns reported by the District and others, and he expressed support for Underwood's relationship with N.J. until he was informed by Perryton ISD Superintendent Greg Brown ("Brown") the relationship had become sexual. Regardless of his feelings now, Plaintiff's support of Underwood at the time is relevant here because it provides critical context when evaluating the reasonableness of the District's actions. It is undisputed:

- In December 2023, Plaintiff told Perryton High School Principal Tori Little ("Little") that he was upset about the rumors he was hearing about Underwood and N.J., and he wanted them to stop. He confirmed to Little that Underwood was a family friend, and they had grown up together. Plaintiff confirmed to Little that Underwood was a confidant and provided support to N.J., and Plaintiff begged Little not to take that away from N.J. because she was struggling with the aftermath of custody issues.
(ECF No. 50 at 372)

- Plaintiff sent the following text message to Underwood on March 3, 2024:

  Please let [N.J.] leave early and ride with you home from the track meet so she can make it to watch her step sisters basketball game this evening.
  (ECF No. 50 at 27).

- Plaintiff sent the following email to Brown on March 4, 2024:

  I am reaching out because I am concerned that there is going to be some more people trying to spread lies and rumors of an inappropriate relationship because Coach Underwood brought [N.J.] home early from the track meet last week. I gave Mr. Underwood permission to bring her back to town so she could make it to watch her step sisters basketball game. I am sick and tired of hearing that there is something going on between my daughter and Mr. Underwood! Cole is a **friend** to me and did me a favor. I wholeheartedly trust in my daughter and Mr. Underwood, I just wanted to let everyone know and aware of the BS and squash it before it becomes a problem. I think coach Underwood is doing a hell of a job and he is the AD that Perryton has needed for years. He has helped my daughter so much and I can't thank him enough for that!
  (ECF No. 50 at 28)(emphasis added).

3.    At Paragraph 6, Plaintiff does not dispute that during his meeting with Principal Little in December 2023, they specifically discussed that reported rumors suggested an improper

relationship between Underwood and N.J., that Plaintiff acknowledged he was made aware of these rumors by another parent, and that Plaintiff wanted the rumors to stop. ECF No. 49 at 13-14; ECF No. 50 at 270-271; 372-373. Later, Plaintiff inaccurately states that he was only informed about a social media post by N.J. that included a collage of photos of Underwood and N.J. with the caption "Best Duo." ECF 57 at 18, ¶33. This statement misrepresents the deposition testimony of both Plaintiff and Little. ECF No. 50 at 270-271; 372-373.

4.      In Paragraph 7, Plaintiff again disputes he was informed of the reports made about Underwood and N.J. and alleges this insufficiency constitutes a violation of District policy. ECF 57 at 10-11. Plaintiff's alleged policy violation is another example of Plaintiff's conclusory statements that are not supported by the purported evidence he cites. In this instance, Plaintiff cites to Perryton ISD Board Policy FFF (LOCAL), which states the "District shall notify a parent of a student with whom an educator is alleged to have engaged in misconduct" and goes on to define "misconduct" as "abuse or commission of an otherwise unlawful act" or "involvement in a romantic relationship, or soliciting or engaging in sexual contact with the student." ECF No. 58 at 544. The reports identified in Plaintiff's Response prior to April 21, 2026, do not meet this definition. ECF No. 57 at 19-23. Regardless, the District still made efforts to share concerns with Plaintiff, which he dismissed. ECF No. 50 at 372-373.

5.      Paragraph 8 of Plaintiff's Response is another example of misrepresentation that is consistent throughout the Response. Plaintiff attempts to revise the District's facts by stating he admits Brown received a report of an "inappropriate relationship" between Underwood and N.J. from Kevin Cummings ("Cummings"). ECF No. 57 at 11. This misstates Cummings report, which was that the relationship appeared "too personal." ECF No. 50 at 5, 341. Cummings did not report allegations of a romantic or sexual relationship. *Id.* Plaintiff consistently refers to any report or

PAGE 4

comment about Underwood's interactions with N.J. as a report of an "inappropriate relationship" regardless of the nature of the conduct reported. ECF No. 57 at 10, 11, 14, 21, 22, 23, 24, 25, 26, 30, 37.  N.J. testified there was no unlawful sexual contact until March 1, 2024. ECF No. 50 at 445. Because the actual evidence refutes this generalization, Plaintiff's misrepresentation of the information available to the District attempts to undermine an accurate evaluation of the District's response to such reports. Plaintiff does not dispute N.J.'s testimony that at the time of Cummings report in December 2023, there had been no physical contact between Underwood and N.J., and Underwood had not engaged in any conduct that would be considered romantic or flirting. ECF No. 57 at 4, ¶ 9; ECF No. 50 at 445.

6.      In Paragraphs 10 and 11, Plaintiff misrepresents the deposition testimony cited. Plaintiff's allegation that Brown suspected Underwood was having an affair with N.J. is not a fair or accurate representation. ECF No. 58 at 143. Brown specifically testified that he suspected Underwood was having an affair with another adult. *Id.* The text message between Brown and Perryton ISD School Board Trustee Wes Beal ("Beal") cited by Plaintiff refers to Underwood having an affair – it does not mention N.J. ECF No. 58 at 257. Again, in Paragraph 12, Plaintiff cites deposition testimony that is unrelated to Plaintiff's alleged dispute about Little reporting a social media post to Brown. The deposition testimony cited represents Brown's statements about the scope of the District's efforts to protect N.J., his acknowledgment that, in hindsight, you can always think of additional actions that could have been taken, and his assurance that he was satisfied with the District's efforts based on what he knew at the time. ECF No. 58 at 63.

7.      In Paragraph 15, Plaintiff disputes the subject matter of a meeting between Brown, a student and his parents. Plaintiff's dispute of Brown's recollection of the meeting is wholly unsupported by any evidence.

8.      In Paragraph 17, Plaintiff's elaborate dispute of the facts surrounding Underwood driving N.J. home from a track meet around March 1, 2024, is nothing more than an attempt to distract from Plaintiff's specific request that Underwood do so. Plaintiff's attempt to describe his role in this event as "acquiescence" is contradicted by his written communications at the time. ECF No. 50 at 27. Although not a violation of Board Policy, Underwood transporting N.J. was a violation of the athletic policies and procedures developed by the administration. Perryton ISD has never stated otherwise. It is a mischaracterization for Plaintiff to suggest that Brown minimized this event -- Brown issued Underwood a written directive regarding his conduct despite Plaintiff's protest to the contrary at the time. ECF No. 50 at 28-30.

9.      Plaintiff's Paragraph 20 also misrepresents the evidence relied upon for Plaintiff's dispute regarding the reports received by Brown about N.J. and Underwood. Plaintiff alleges Brown "received numerous reports/complaints from March 4, 2024, to mid-April 2024. He cites reports by Spencer Dutcher and Casey Arruda, neither of which includes any evidence the report was directed to Brown, and a text message from School Board Trustee Sarah Tregallas, referring to the photo of students in an ice bath, which was not a new report and was addressed by Brown prior to March 4. ECF No. 58 at 145-146, 229-231, 270. Again, Plaintiff's purported dispute is wholly lacking any evidentiary support.

10.     Finally, in Paragraph 21, Plaintiff insinuates a connection between actions taken by the District related to Underwood and the status of another lawsuit that involved alleged sexual misconduct by students toward another student. Plaintiff attempts to attach significance to his allegation that the report that caused Perryton ISD to take action came three days after the District settled the other lawsuit. Plaintiff's allegation is purely speculative – Plaintiff does not even attempt to identify credible evidentiary support for this conclusory allegation that there is some

causal connection between the two matters. Plaintiff simply references the docket sheet from the other case, which acknowledges mediation was scheduled to occur no later than April 11, 2024, and identifies an Alternative Dispute Resolution Summary dated April 26, 2024, informing the Court the matter settled as a result of ADR. ECF No. 58 at 279. The docket sheet does not provide support of an improper motivation for the District's actions.

11.    Plaintiff's unsuccessful attempt to raise a fact issue for trial continues throughout the proposed Additional Material Facts alleged in Plaintiff's Response. Plaintiff cannot assert unsupported, conclusory allegations in an effort to avoid summary judgment. *See Zarnow*, 614 F.3d at 169. Further, Perryton ISD objects to such facts that misstate or are otherwise unsupported by the source cited by Plaintiff. Due to page limits, the District lacks the opportunity to identify for the Court each instance of Plaintiff's improper embellishment or the extent to which Plaintiff has failed to accurately represent the available evidence.

### III.  Plaintiff Has Failed to Raise a Triable Fact Issue as to Actual Notice and Deliberate Indifference Under Title IX

Recovery under Title IX requires Plaintiff to prove that "an official of [Perryton ISD] who at a minimum has authority to institute corrective measures ... has actual notice of, and is deliberately indifferent to, the teacher's misconduct." *J.T. v. Uplift Education*, No. 23-10773, 2024 WL 5118486 at 3 (5th Cir. 2024) (*citing Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274, 277 (1998)).  "Only when an appropriate person possesses actual knowledge can a Title IX recipient be liable." *Id.* (citing *Rosa H. v. San Elizario Indep. Sch. Dist.*, 106 F.3d 648, 660 (5th Cir. 1997)). The purpose for the appropriate person designation is that "When [a] school board [accepts] federal funds, it agree[s] not to discriminate on the basis of sex;" it does not agree to incur "liability whenever its employees discriminate on the basis of sex." [internal citation omitted]. Title IX recipients, in other words, "are liable only for [their own] intentional sex discrimination." *Uplift*

*Education*, 2024 WL 5118486 at 3 (citing *Doe v. Edgewood Indep. Sch. Dist.*, 964 F.3d 351, 358 (5th Cir. 2020)).

Plaintiff's Title IX claim arising from teacher-student sexual harassment requires Plaintiff to establish a genuine issue of material fact as to deliberate indifference by a Perryton ISD official with authority to take corrective action to end the discrimination in response to actual notice of conduct constituting sexual harassment. *Id.*; *Gebser*, 524 U.S. 274, 290-91. Deliberate indifference requires the District's response to be "clearly unreasonable in light of the known circumstances." *Sanches v. Carrollton-Farmers Branch Indep. Sch. Dist.*, 647 F.3d 156, 167 (5th Cir. 2011). "Actions by officials that are merely inept, erroneous, ineffective, or negligent do not amount to deliberate indifference…." *Doe v. Dallas Indep. Sch. Dist*, 153 F.3d 211, 219 (5th Cir. 1998). Schools need not actually succeed in remedying the harassment to prevent liability under Title IX. *Sanches*, 647 F.3d at 167–168. Only when there is "an official decision by the [school district] not to remedy the violation" such that its deliberate indifference "caus[es] the discrimination," does a school commit a Title IX violation. *Gebser*, 524 U.S. at 290–91; *Davis v. Monroe Cnty. Bd. of Educ.*, 526 U.S. 629, 642–43 (1999). Even "a tragic error in judgment does not create a genuine issue of material fact as to whether [an official] acted with deliberate indifference." *Dallas Indep. Sch. Dist*, 153 F.3d at 219.

Plaintiff frequently asserts that Perryton ISD had knowledge of an "inappropriate relationship" and "inappropriate behavior" (s*ee e.g.* ECF No. 57 at 15, 21-26) to infer that this is the same as knowledge of sexual harassment or sexual abuse under Title IX.  It is not.  An educator, such as Defendant Underwood, shall maintain appropriate professional educator-student relationships and boundaries based on a reasonably prudent educator standard.  ECF No. 50 at 49 (Educator Code of Ethics Standard 3.8).  Although failure to maintain professional boundaries

could mean sexual abuse, it is not synonymous. In the context of employee communications with students, there is a specific exception for family and social relationships outside of the school setting. ECF No. 50 at 43. Plaintiff has only provided inferences and conclusory allegations that the District knew or should have known of N.J.'s inevitable sexual abuse. *See* ECF No. 57 at 15, 21-26. This is insufficient to survive summary judgment. *Zarnow*, 614 F.3d at 169. In this case, Perryton ISD does not dispute that there is competent summary judgment evidence that Defendant Underwood did not maintain professional boundaries. But there is no evidence of actual notice of possible sexual abuse/sexual harassment until April 21, 2024, when Duce Cooper reported N.J. and Underwood's cars were at school at the same time, outside of school hours, and after Underwood had been directed to not be alone with N.J. With that knowledge, Brown placed Underwood on leave and law enforcement was notified. ECF No. 50 at 9.

The fact that Plaintiff can produce evidence of 53[1] "reports" that Underwood and N.J. were too close, alone in his office, suspected something was not right, or the like, are not reports of conduct of a sexual nature. The nature of the conduct reported was consistent with Plaintiff's explanation that Underwood was a confidant to N.J. and was providing her support in response to family conflicts. Likewise, a student calling Underwood a "perv" to a teacher, or a parent who referred to Underwood as "pedophile" to a coach, cannot impute knowledge of sexual harassment to an "appropriate" person to raise a triable fact. *Gebser*, 524 U.S. at 291. As Perryton ISD pointed out in its brief, even a principal's prior knowledge of sexually suggestive comments by a teacher was "plainly insufficient" to alert the principal to the possibility of a sexual relationship between the teacher and the plaintiff. *Gebser*, 524 U.S. at 291. Most recently, the Fifth Circuit noted,

"[v]ague allegations that do not include sexual harassment do not put a school district

---

[1] A close reading of the "reports" also reflects the duplicative nature of the descriptions and illustrates Plaintiff's attempt to overstate the frequency of reports.

> on notice of that risk." *Doe v. Katy Indep. Sch. Dist.*, 427 F. Supp. 3d 870, 880 (S.D.
> Tex. 2019). Nor can plaintiffs circumvent Title IX's exacting standards by pointing
> to an official's constructive knowledge of "red flags."

*Uplift Education*, 2024 WL 5118486 at 4[2]. Therefore, only reports to Perryton ISD's Board of

Trustees, or its designee, of conduct constituting sexual harassment related to the targeted student

will create a fact issue to defeat summary judgment.

The type of conduct described by Plaintiff closely resembles the facts in *M.E. v. Alvin*

*Independent School District*, wherein a middle school student was repeatedly abused by a teacher

when it was known by administrators that there was evidence of an inappropriately close

relationship between them.  *M.E. v. Alvin Indep. Sch. Dist.*, 840 F. App'x 773, 774-76 (5th Cir.

2020) (per curiam). Unlike Plaintiff in this case who conveyed his full support of Underwood's

relationship with N.J. (ECF No. 50 at 28), the mother in *M.E.* conveyed her concerns about the

relationship with the teacher.  But the notice of the teacher's conduct was insufficient to

demonstrate actual knowledge that "anything of a sexual nature might be occurring." *Alvin Indep.*

*Sch. Dist.*, 840 F. App'x at 776.  Moreover, the court held that while "red flags" were present that

should have alerted the district of a substantial risk, "the law requires that the district actually knew

of the risk, not just that it should have known." *Id*. (*citing Rosa H*., 106 F.3d at 652–653, 656); *see*

*also Alvin Indep. Sch. Dist.*, 840 F. App'x at 776 (Title IX's actual knowledge requirement "cannot

be satisfied by showing that the school district should have known there was a substantial risk of

abuse"). Plaintiff fails to raise a triable fact issue as to Title IX's requirement that an appropriate

person must have actual notice. *Alvin Independent School District*, 840 F. App'x at 774-776

Plaintiff also cannot raise a triable fact issue as to deliberate indifference, which requires

---

[2] Perryton ISD's Board Policy of what constitutes "actual knowledge" is consistent with the Fifth Circuit in *Uplift*.
ECF 50 at 68.

more than just evidence of negligence or ineffectiveness. *Uplift Education*, 2024 WL 5118486 at

5. In *Uplift Education*, the Fifth Circuit synthesized its jurisprudence on the deliberate indifference

standard in Title IX cases as follows:

> Title IX mandates neither "flawless investigations [n]or perfect solutions."
> *Sanches*, 647 F.3d at 170. Deliberate indifference instead lies only where a school
> district completely "fail[s] to act" or "fail[s] to take additional reasonable measures
> after [a school] learned that its initial remedies were ineffective." *Menzia v. Austin
> Indep. Sch. Dist.*, 47 F.4th 354, 362-63 (5th Cir. 2022) (quoting *Porto v. Town of
> Tewksbury*, 488 F.3d 67, 74 (1st Cir. 2007)). So, rather than "second-guessing the
> ... decisions made by school administrators," *Davis v. Monroe Cnty. Bd. of Educ.*,
> 526 U.S. 629, 648 (1999), this inquiry focuses on whether a defendant's acts or
> omissions were "tantamount" to the district "intentionally 'subject[ing] its students
> to harassment.' " *Fennell v. Marion Indep. Sch. Dist.*, 804 F.3d 398, 411 (5th Cir.
> 2015) (*quoting Davis*, 526 U.S. at 644).

*Uplift Education*, 2024 WL 5118486 at 6 (emphasis added). Further, whether a school district

acted unreasonably must be evaluated "in light of the known circumstances" at the time. *Id* at 5

(citations omitted).

Viewing Perryton ISD's actions in light of the "known circumstances," it is clear that it

was far from deliberately indifferent. The first instance of prohibited sexual contact between

Defendant Underwood and N.J. occurred on March 1, 2024. ECF No. 50 at 269. N. J.'s testimony

is that Underwood initiated sexual contact with her during the ride home from the track meet in

March 2024. ECF No. 50 at 445. Prior to this time, Brown responded reasonably to the various

reports of interactions between N.J. and Underwood – none of which were sexual or harassing

conduct. ECF No. 50 at 5-9, 29-30. Further, District personnel met with Plaintiff in December of

2023 to address the "rumors" about the relationship between Underwood and N.J. and encouraged

him to address how much time N.J. was spending with Underwood. ECF No. 50 at 372-373. But

Plaintiff reported that Underwood was supporting N.J., and Underwood was N.J.'s confidant. *Id*.

N.J. acknowledged that around this time, Perryton's counselor also met with her to discuss her

relationship with Underwood, and she told the counselor there had been no inappropriate contact between her and Underwood.  *Id.* at 443-444, 448-449.

Plaintiff even acknowledges responsive action by Brown: "Brown orally reprimanded and instructed Underwood to stay away from N.J." ECF No. 57 at 21-22; "Plaintiff admits that Underwood drove N.J. home from a track meet in Canyon, Texas in his personal vehicle after being repeatedly directed by Brown not to be alone with her . . .." *Id.* at 12; and "Superintendent [Brown] gave a written reprimand to Underwood on March 4, 2024, …" ECF No. 57 at 9.  Further, the fact that Brown did not suspend Underwood after he drove N.J. home from the track meet in March 2024, must be tempered against Plaintiff's unwavering support of Underwood.  ECF No. 50 at 28.  In fact, Plaintiff supported Underwood and continued to commiserate with him that the rumors about Underwood and N.J. were unfounded up until the time Underwood was placed on administrative leave by the District. *Id.* at 275-323.  Despite his admitted knowledge of rumors about the relationship between his daughter and Underwood, Plaintiff actually directed the District to "squash" them.  *Id.* at 28[3].

The evidence demonstrates District administrators took responsive action, and the actions by Brown escalated in response to his knowledge, culminating in Underwood's suspension, report to law enforcement, and resignation from the District – despite resistance from Plaintiff. ECF No. 50 at 9, 28. The Fifth Circuit has made clear that even where an official's response is ultimately ineffective, it does not constitute deliberate indifference under Title IX. *Doe ex. Rel. Doe v. Dallas Indep. Sch. Dist.,* 220 F.3d 380, 388 (2000). A reasonable jury could not find that Perryton ISD's response to the "known circumstances" was clearly unreasonable.  *Uplift Education*, 2024 WL

---

[3] "Cole is a friend to me and did me a favor. I wholeheartedly trust in my daughter and Mr. Underwood, I just wanted to let everyone know and aware of the BS and squash it before it becomes a problem."

5118486 at 6 (citations omitted).

### IV. Plaintiff Has Failed to Raise a Triable Fact Issue as to Municipal Liability

Under any theory of Section 1983 liability, Plaintiff must adduce a genuine issue of material fact as to municipal liability. Municipal liability under Section 1983 requires proof of three elements: a policymaker; an official policy; and a violation of constitutional rights whose 'moving force' is the policy or custom. *Edgewood Indep. Sch. Dist.*, 964 F.3d at 364–65 (internal citation omitted). "The 'official policy' requirement was intended to distinguish acts of the municipality from acts of employees of the municipality, and thereby make clear that municipal liability is limited to action for which the municipality is actually responsible." *Id.* "To that end, § 1983, like Title IX, does not impose liability on school districts for an employee's tort under a *respondeat superior* liability theory—but only for 'their own illegal acts.'" *Id.* (internal citation omitted). "So to prevail against a public school district, a plaintiff must show that the district's final policymaker acted with deliberate indifference in maintaining an unconstitutional policy that caused the plaintiff's injury." *Id.* Perryton ISD's Board of Trustees is the final policymaker in this case. ECF No. 28 at 6, *citing Doe*, 964 F.3d at 364-5.

### A. Perryton ISD Had Official Policies in Place Addressing Sexual Harassment and Abuse

The District's summary judgment evidence unequivocally establishes, and Plaintiff does not dispute, that the District had official policies in place during the relevant time period prohibiting sexual harassment and child abuse along with applicable reporting requirements. ECF No. 50 at 42-109. Plaintiff's contention that the District's "actual policy is to protect the reputation of the school and the sexual predator, rather than the well-being of the student," and such policy is "in writing" and "establishes an unconstitutional policy as a matter of law," is a mere conclusory statement, unsupportable by the summary judgment evidence and unworthy of creating a triable

fact. ECF No. 57 at 41; *see Zarnow,* 614 F.3d 161, 169. Plaintiff (1) cites to no summary judgment evidence to support this contention[4], and is (2) presumably referring to the written reprimand that Superintendent Brown gave to Underwood on March 4, 2024 (the "Written Reprimand"). ECF No. 50 at 29.  Plaintiff's inference ignores the fact that the Written Reprimand was from Superintendent Brown and not promulgated by the District's Board of Trustees, and it mischaracterizes the Written Reprimand and its purpose. *See Id.*; *Pineda v. City of Houston*, 291 F.3d 325, 328 (5th Cir. 2002); *Dallas Indep. Sch. Dist*, 153 F.3d at 211.

**B.      Plaintiff Fails to Establish Perryton ISD had an Unofficial, Widespread Custom or Practice of Permitting the Sexual Abuse of Its Students by Employees**

Plaintiff contends that to survive the District's *Motion for Summary Judgment* related to the non-existence of an unwritten District policy permitting sexual abuse, he need only "establish at trial facts 'sufficient to allow a reasonable inference that there was a pattern of misconduct involving similar acts.'" ECF No. 57 at 41 (citing *A.W. v. Humble Indep. Sch. Dist.*, 25 F. Supp. 3d 973, 1001 (S.D. Tex. 2014)).[5] Plaintiff is mistaken and must instead identify in his Response "specific evidence in the record and articulate the manner in which that evidence supports [his] claim." *Johnson v. Deep E. Texas Reg'l Narcotics Trafficking Task Force*, 379 F.3d 293, 301 (5th Cir. 2004). Specifically, Plaintiff must identify evidence to show there was a "persistent, widespread practice" of the District permitting, tolerating, or condoning the sexual abuse of its students by District employees, that is "so common and well settled" that it "fairly represents" the District's official policy. *See Pineda*, 291 F.3d at 328; *Eugene v. Alief Indep. Sch. Dist*., 65 F.3d

---

[4] Nowhere in Plaintiff's Arguments and Authorities section of Plaintiff's Response does Plaintiff cite summary judgment evidence, making it difficult to determine what evidence, if any, support the elements of his claims.

[5] *A.W. v. Humble Indep. Sch. Dist.*, 25 F. Supp. 3d at 1001 provides the standard for surviving a 12(b)(6) pre-discovery *Motion to Dismiss* with respect to this element of Plaintiff's § 1983 claim and is not the correct standard for assessing a summary judgment.

1299, 1304 (5th Cir.1995). Actual or constructive knowledge of such custom must be attributable to Perryton's Board of Trustees or to an official to whom that Board had delegated policy-making authority. *Id.*

Isolated events are not sufficient to establish custom. *Ramie v. City of Hedwig Vill., Tex.*, 765 F.2d 490, 494 (5th Cir. 1985); *Gagne v. City of Galveston*, 671 F. Supp. 1130, 1135 (S.D. Tex. 1987). Instead, Plaintiff must show a pattern of ignoring sexual abuse by District employees against students that has been occurring for so long or occurs so frequently that such sexual abuse is "*expected*" and "*accepted*" by the District of its employees. *Peterson v. City of Fort Worth*, Tex., 588 F.3d 838, 850 (5th Cir. 2009)(emphasis added). The constitutional violations that make up the pattern must be that "sufficiently numerous" and similar to the specific constitutional violations complained of. *Id.* at 851.

The Fifth Circuit clarified in *Peterson* that even 27 allegations of excessive force by police officers over a four-year period do not show an official policy of a municipality or permitting constitutional violations without an additional showing of the factual contexts of those incidents. *Id.* Even taking the 27 allegations as true, the court was unconvinced that a reasonable jury could find that the 27 prior, similar violations, meant that the City (the policy maker) "maintained an official policy *of condoning* excessive force." *Id.* (emphasis added). The Court reasoned that the "failure of the evidence is that the plaintiffs have failed to provide context that would show a pattern of establishing a municipal policy." *Id.* Plaintiff in this case has failed to pass this bar as well. Plaintiff's alleged facts are insufficient to establish a policy:

*The First Incident*: Plaintiff alleges that in October 2017, Perryton ISD Superintendent, Robert Hall, and Assistant Superintendent, Keith Langfitt, both resigned following a sexual harassment complaint filed by another district employee. ECF No. 58 at 339-344. Plaintiff fails to

acknowledge the complaint was filed on or about October 2, 2017 – seven years before the current matter – and the administrators were already on paid administrative leave at the time the Board accepted their resignation on October 17, 2017. *Id*. The evidence cited by Plaintiff, shows this incident was resolved within two weeks of the date the District received notice of the complaint. This alleged incident is clearly dissimilar to the specific constitutional violations complained of against Perryton ISD – or even that this alleged incident involved a constitutional violation at all. *See Peterson,* 588 F.3d at 851. Plaintiff objects to this evidence to the extent that it contains hearsay. Plaintiff cannot show that this incident of alleged employee on employee sexual harassment is similar to the harm complained of in the present case. There is no evidence that this incident was tolerated, permitted, or condoned, and thus, cannot be reasonably found to be part of a pattern of tolerating unconstitutional conduct. *See Pineda,* 291 F.3d at 328.

*The Second Incident*: Plaintiff alleges that in 2022, Perryton ISD employed a woodshop teacher named David Alexander Drew who reportedly had a romantic relationship with a female minor student. Again, Plaintiff fails to provide evidence that Perryton ISD tolerated any asserted sexual abuse between a District employee and a student or that tolerating the sexual abuse of a minor "fairly represents" the District's official policy. *See Pineda,* 291 F.3d at 328. For example, Plaintiff does not provide any evidence showing *any* duration between the unlawful relationship's discovery and Drew's termination. To the contrary, Plaintiff cites to evidence that Drew was immediately suspended and then terminated. ECF No. 58 at 303. Plaintiff's evidence of this incident is no proof that Perryton ISD's Board acted with a deliberate indifference of a student's constitutional rights or that Perryton ISD expected or accepted its employee's sexual abuse of children. *See Peterson*, 588 F.3d at 850.

*The Third Incident*: Plaintiff asserts that in 2023-2024, Perryton ISD employed a special

education teacher named Victor Hackney ("Hackney") and that Hackney allegedly sent a lewd photograph via Snapchat to a minor child at Perryton ISD. ECF No. 57 at 15, ¶ 5. Plaintiff's cited evidence does not show that Hackney actually sent a lewd photograph to a minor student. *See* ECF No. 58 at 73–75. It shows that law enforcement notified Brown that a lewd picture was sent via Snapchat "from the IP address that . . . is associated with [Hackney's] house," but ultimately, law enforcement "could not identify who at that IP address had sent the picture," and Hackney was "not the only male that reside[d] at the [sic] address." *Id.* Such evidence is equivocal of constitutional compliance and "little more than [a] suspicion" of a constitutional violation. *Pineda,* 291 F.3d at 329.  Brown immediately started an investigation, placed him on leave, informed the Texas State Board of Educator Certification (SBEC) and Hackney's contract was not renewed. ECF No. 58 at 73–75. This incident cannot support a pattern of illegality as a matter of law. *Pineda,* 291 F.3d at 329. Even if the asserted constitutional violation was supported by unequivocal evidence, in light of Superintendent Brown's swift action, no reasonable jury could find that the District's Board expected, accepted, or tolerated employees sending lewd photos to students such that it could fairly represent the Perryton ISD Board's policy. *See Id*.

The Fourth Incident: Plaintiff asserts that evidence of a separate lawsuit (the "*D.K.* Lawsuit") supports that Perryton ISD maintained an official policy of permissive sexual misconduct by employees against students while conceding that the D.K. Lawsuit did not involve sexual misconduct or abuse by an employee against a student. ECF No. 57 at 41. This matter involved allegations of sexual assault by a student against another student. ECF. No. 50 at 404. The allegations by themselves do not involve a similar constitutional violation to those complained of in this case, and no evidence is provided by the Plaintiff showing any constitutional violation actually occurred by anyone involved in the *D.K.* Lawsuit. Therefore, the *D.K.* Lawsuit cannot be

evidence of a widespread custom of permitting the sexual abuse of students by employees because it fails to show how the District's Board acted with deliberate indifference in maintaining an unconstitutional policy that caused the plaintiff's injury. *Edgewood Indep. Sch. Dist.*, 964 F.3d at 364–65.

**C.    Plaintiff's Claims that N.J.'s Constitutional Violation Resulted from Perryton ISD's Custom of Failing to Adequately Hire, Train or Supervise its Employees, or Implement Perryton ISD Policy, Fail as a Matter of Law**

The Plaintiff must show (1) Perryton ISD failed to adequately hire, train, supervise, or implement its policy with respect to Underwood; (2) that the failure was the moving force behind the violation of N.J.'s constitutional rights; and, (3) the failure was due to Perryton ISD's deliberate indifference  with respect to hiring, training, supervising, or implementing its policy. *Stapleton v. Lozano*, 125 F.4th 743, 754 (5th Cir. 2025) (failure to train and supervise); *Valle v. City of Houston*, 613 F.3d 536, 544 (5th Cir. 2010)(failure to train and implement); *Bd. of Cnty. Comm'rs of Bryan Cnty., Okl. v. Brown*, 520 U.S. 397, 398 (1997)(failure to hire). A pattern of similar constitutional violations that result from the alleged failure is "ordinarily necessary to demonstrate deliberate indifference for purposes of [the alleged failure]. *Id*. "Without notice that a course of training is deficient in a particular respect, decisionmakers can hardly be said to have deliberately chosen a [] program that will cause violations of constitutional rights." *Id*. In extremely narrow circumstances where deprivations of constitutional rights are plainly obvious to result from policy failure,  a single incident of a constitutional violation can be enough to show a policymaker acted with deliberate indifference. *Edgewood Indep. Sch. Dist.*, 964 F.3d 351, 366 (5th Cir. 2020).

### i.    *Adequacy of Hiring Procedures*

"Plaintiff[] cannot succeed in defeating summary judgment merely because there was a probability that a poorly-screened [employee] would violate [N.J.'s]  protected rights; instead,

[Plaintiff] must show that the hired [employee] was highly likely to inflict the particular type of injury suffered by [N.J.]. *Gros v. City of Grand Prairie*, 209 F.3d 431, 434 (5th Cir. 2000). Plaintiff has provided no evidence showing how additional hiring procedures, including a review of the AISD personnel file, would reveal that Underwood had ever abused a child in the past or that he was otherwise "highly likely" to do so.[6] *See* ECF No. 58 at 421. Therefore, any constitutional violation related to child abuse cannot be the "plainly obvious" consequence of the District hiring him under clear Fifth Circuit precedent. *See Id.*; *Rivera v. Bonner*, 952 F.3d 560, 565 (5th Cir. 2017).

### ii.  *Adequacy of Training and Supervision*

Plaintiff must show that "in light of the duties assigned to specific officers or employees the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the [District] can reasonably be said to have been deliberately indifferent to the need." *Valle v. City of Houston*, 613 F.3d 536, 547 (5th Cir. 2010). Plaintiff must show either a pattern of similar constitutional violations caused by its training policy or, under the narrow, "single incident" exception, show that the "highly predictable consequence of a failure to train would result in the specific injury suffered, and that the failure to train represented the moving force behind the constitutional violation." *Id.* at 549.

Here, it is undisputed that Underwood and other District employees were trained by the

---

[6] Plaintiff's alleged facts related to Underwood's employment at Amarillo ISD also include inaccurate and incomplete descriptions of the evidence. Plaintiff states it was alleged that Underwood was communicating with Amarillo ISD students on social media and other applications in an attempt to build inappropriate relationships with students. ECF No. 57 at 15-16. That is not an accurate representation of the evidence, which states that Amarillo ISD investigated an alleged relationship with a former student and the investigation concluded that, although Underwood communicated with student's electronically, there was no improper romantic or sexual relationship. Plaintiff also alleges Underwood was the subject of two additional complaints while employed at Amarillo ISD, ECF No. 57 at 16, but fails to provide an accurate description of the allegations – which focused on whether Underwood was present while underage students were drinking. ECF 58 at 421-422, 427. More importantly, Plaintiff fails to acknowledge that both complaints were unsubstantiated. *Id.*

District related to *inter alia* sexual harassment, discrimination, improper communications with students, and relationships with students. ECF No. 50 at 5; ECF No. 50 at 42-44. Plaintiff cannot show that the District's alleged failure to train or supervise constituted "deliberate indifference to the plaintiff's constitutional rights" because there must be a pattern of similar acts concerning *untrained* [7] *employees*." *See Stapleton v. Lozano*, 125 F.4th 743, 754 (5th Cir. 2025)(emphasis added); *Connick v. Thompson*, 563 U.S. 51, 62 (2011). Plaintiff has generally asserted that there were four prior instances of sexual misconduct by employees but fails to provide evidence showing that any of these alleged incidents were caused by the inadequate training or supervision of employees. *See* § V(B)*, supra*, incorporated here, analyzing the four alleged incidents. *Id*.

### iii. Adequacy of Implementation or Enforcement

Plaintiff cannot show any violation of N.J.'s constitutional rights that resulted from Perryton ISD's "failure to implement or execute its policy." Plaintiff's arguments appear to turn on employee obligations to report certain conduct. However, the observations and conduct that are the subject of Plaintiff's 53 purported "reports" do not constitute actual notice of a sexual or romantic relationship. There is no duty to report a student and a teacher talking or spending time alone, generally, if there is no reasonable cause to believe a child was the subject of sexual harassment or abuse. There is no genuine issue of material fact as to sexual abuse or that sexual abuse was reasonably likely to occur until it was discovered on April 21, 2024, that N.J. and Underwood were alone in Underwood's office on a weekend after Brown expressly prohibited Underwood from engaging in such conduct. ECF 50 at 29-30. There is no evidence that a single case of child abuse has been witnessed or even believed to have occurred by a Perryton ISD employee without being reported. Moreover, even if an employee had actually witnessed

---

[7] Or interchangeably, *unsupervised*.

Underwood abusing a student, that still does not establish that the District had actual or constructive knowledge of the abuse, which is required to hold the District liable. *See J.T. v. Uplift Education*, 679 F.Supp. 3d 540, 562 (N.D. Tex. 2023), *citing Webster v. City of Houston*, 735 F.2d 838, 841 (5th Cir. 1984).

**D.      No Policy or Custom of the Perryton ISD Board of Trustees was a Moving Force behind N.J.'s Constitutional Harm as a Matter of Law**

"[A] direct causal connection must exist between the policy and the alleged constitutional deprivation. This connection must be more than a mere 'but for' coupling between cause and effect . . . a municipal policy must be affirmatively linked to the constitutional violation and be the moving force behind it." *Fraire v. City of Arlington*, 957 F.2d 1268, 1281 (5th Cir. 1992). For all of Plaintiff's claims under Section 1983, Plaintiff must provide evidence demonstrating a genuine issue of material fact as to whether the District's policy– official or implied from any custom–was the "moving force" behind the violation of N.J.'s constitutional rights. *Id.*; *Stapleton*, 125 F.4th at754. Plaintiff "must show that the final policymaker had the requisite degree of culpability and that [Perryton] ISD's policies were the actual cause of the constitutional violation." *Doe*, 964 F.3d at 365-55. He has not.

In *Doe v. Kerrville Indep. Sch. Dist.*, the Fifth Circuit held the district, Kerrville ISD (KISD), was not the moving force of sexual abuse committed by an employee against a student, as a matter of law, when KISD administrators actively supervised the employee, investigated reports of impropriety, and attempted to set boundaries between the student and the teacher. *Doe v. Kerrville Indep. Sch. Dist.*, No. 24-50394, 2025 WL 2238720, at *7 (5th Cir. Aug. 6, 2025). The facts in Kerrville are remarkably similar to the case at bar, and the Fifth Circuit again upheld a dismissal of that plaintiff's lawsuit. *Id.*

Like the student in the *Kerrville* case, N.J. looked to an educator for a confidant during a

stressful time in her life. ECF No. 50 at 439–441. As in *Kerrville*, High School Principal, Tori Little, and the Perryton High School Counselor, Randy Cunningham, met with Plaintiff to address rumors of an unprofessional relationship between Underwood and N.J. and to discuss Plaintiff's frustration about what he believed were "bs rumors." ECF No. 50 at 372-373; ECF No. 50 at 278. As in *Kerrville*, Plaintiff was supportive of Underwood and N.J.'s mentor-mentee relationship because he believed that it was good for N.J. in the wake of a stressful time. ECF No. 50 at 372-373; *see* ECF. No. 50 at 28; ECF No. 50 at 275–276. As in *Kerrville,* Cunningham, the school counselor, met with N.J. to discuss her relationship with Underwood, and Superintendent Brown met with Underwood to discuss the same. ECF No. 50 at 444; ECF No. 50 at 6. Like *Kerrville*, despite Plaintiff's support for Underwood and Underwood's denial of an inappropriate relationship, Brown directed Underwood not to be alone with N.J. ECF No. 50 at 6.

Similar to the student and teacher attending a car show in *Kerrville*, N.J. riding home from the track meet with Underwood raised more concern for Superintendent Brown. ECF No. 50 at 8. In the case at bar, Plaintiff emailed Principle Little and Superintendent Brown and confirmed not only that he gave permission to Underwood to drive N.J. home, but also described Underwood as a friend, expressed his frustration about the rumors of an inappropriate relationship (that the school needed to squash), and expressed further support of the relationship between Underwood and N.J. ECF No. 50 at 28. Like the administrator in *Kerrville*, Brown issued a written directive to Underwood to not be alone with any female student, particularly N.J. *See* ECF No. 50 at 8; ECF No. 50 at 29–30. Just as the parents and administration were unaware of a sexual relationship between the student and her teacher in the *Kerrville* case, neither Plaintiff nor anyone from Perryton ISD knew that any sexual conduct occurred on the drive home from the track meet. *See* ECF No. 50 at 7–8; ECF No. 50 at 28.

Once Superintendent Brown was informed that N.J. and Underwood's vehicles were seen parked at the school on a weekend, Superintendent Brown reviewed security footage to investigate the report the same day he received the information. ECF No. 50 at 9. Brown confronted Underwood the next day and placed him on administrative leave. ECF No. 50 at 9. Superintendent Brown then reported to the Texas Department of Protective Services, Child Protective Services, and the Ochiltree County Sherriff's office. *Id.*

The *Kerrville* Court concluded by holding that the student could not prove either that the absence of KISD policy, its failure to have a more robust policy, or any "reckless indifference" on the part of KISD  was the "moving force" of the constitutional violation there because the KISD "school administrators actively supervised [the teacher], investigated reports of impropriety, and attempted to set boundaries between [the student and teacher]." *Kerrville Indep. Sch. Dist.*, 2025 WL 2238720, at *7. The Court also emphasized that "[t]he relationship between [the teacher and the student's] family also may unfortunately have somewhat impeded KISD's response."

Given the nearly identical undisputed factual similarities between this case and those of *Kerrville*, Plaintiff, as a matter of law, simply cannot show that any failure of policy or deliberate indifference by Perryton ISD—whether it be from a failure to train, to implement or execute Perryton ISD policy, or supervise its employees—was the "moving force" of the constitutional harm suffered by N.J. *See Kerrville Indep. Sch. Dist.*, 2025 WL 2238720, at *7 (5th Cir. Aug. 6, 2025). When it comes to the "moving force" behind  the harm suffered by N.J., Underwood alone was the actual cause of the violation. *See id*. While Plaintiff has clearly alleged serious and tragic violations of N.J.'s constitutional rights, he has failed to raise a triable issue of fact as to the District's liability under Section 1983.

**E.    Plaintiff's Equal Protection Claim**

Regardless of the nature of the alleged constitutional violation under Section 1983, Plaintiff must be able to establish the existence of a policy that resulted in constitutional harm. Defendant has raised in its Motion for Summary Judgement and throughout its briefing that Plaintiff cannot establish District Section 1983 liability. It is not necessary for the District to brief every element of Plaintiff's equal protection claim to explain why the District is not liable for a violation of N.J.'s Fourteenth Amendment rights, because Plaintiff cannot establish the policy element as previously briefed by Perryton ISD. [8] *Munoz v. Orr*, 200 F.3d 291, 307 (5th Cir. 2000) ("a complete failure of proof as to one element requires summary judgment against the entirety of the claim"). Regardless, no evidence exists to show a material question of fact on any equal protection claim, and summary judgment should be granted. *Doe v. Beaumont I.S.D.*, 8 F. Supp. 2d 596, 613 (E.D. Tex. 1998)(citing *Doe v. Taylor Indep. Sch. Dist.*, 15 F.3d 443, 458 (5th Cir. 1994)).

**F.    Plaintiff Has No State Law Tort Claims Against Perryton ISD as a Matter of Law**

Plaintiff asserts allegations of gross negligence and intentional infliction of emotional distress and argues that such claims are plausible because the Texas legislature, pursuant to HB 4623, recently enacted Texas Civil Practice & Remedies Code Section 118.001, *et seq*. which waived school district governmental immunity for suits of sexual misconduct involving an educator. Plaintiff is wrong. HB 4623, Section 2, states, "Chapter 118, Civil Practice and Remedies Code, as added by this Act, applies only to a cause of action that accrues on or after the effective date of this Act." Section 3 states, "This Act takes effect September 1, 2025." Therefore, Perryton ISD's governmental immunity remains intact, as Underwood's actions all occurred

---

[8] As this Court noted, "Nor does Plaintiff explain how the Equal Protection claim would substantively change the *Monell* analysis for the school district's liability." ECF No. 28 at 5.

before September 1, 2025. *See also A.W.*, 25 F.Supp.3d at 1007 (holding that when dance teacher sexually abused a student, district was entitled to sovereign immunity for common law claims for failure to train, supervise, and discipline, and for sexual assault and battery, negligence and gross negligence, bystander recovery, and infliction of emotional distress).

## V. Prayer

WHEREORE, PREMISES CONSIDERED, Defendant Perryton ISD prays that the Court grant its Motion for Summary Judgment, dismiss all of Plaintiff's claims against Perryton ISD, enter a take-nothing judgment in favor of Perryton ISD, dismiss Perryton ISD with its costs, and for such other and further relief to which Defendant Perryton ISD may show itself to be justly entitled, either at law or in equity, general, or special.

Dated: May 1, 2026

Respectfully submitted,

/s/ *Slater C. Elza*
Slater C. Elza
State Bar No. 24000747
slater.elza@uwlaw.com
Fred A. Stormer
State Bar No. 24013579
fred.stormer@uwlaw.com
**UNDERWOOD LAW FIRM P.C.**
P.O. Box 9158
Amarillo, TX 79105
Tel: (806) 376-5613
Fax: (806) 379-0316

Janet Sobey Bubert
State Bar No. 24036281
janet.bubert@uwlaw.com
**UNDERWOOD LAW FIRM, P.C.**
600 Bailey Avenue, Suite 200
Fort Worth, TX 76107
Tel: (817) 885-7529
Fax: (817) 439-9922

ATTORNEYS FOR DEFENDANT,
PERRYTON INDEPENDENT SCHOOL DISTRICT

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the above and foregoing document was served on all parties of record via the Court's Electronic Filing System on the 1st day of May, 2026.

/s/ *Slater C. Elza*
Slater C. Elza